Mark A. Harris No. E#46844
High Desert State Prison (HDSP)
Post Office Box 3030
Susanville, California 96127-3030

Petitioner, in propria persona





UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

Imperial Division

Mark A. HARRIS,

                    Petitioner,

            v.

Tommy FELKER, Warden-HDSP,

                    Respondent.

_____/

'07CV 2216 . JAH BLM

No.

LODGMENT OF EXHIBITS AND
INDEX THEREWITH IN SUPPORT OF
PETITIONER'S PETITION

(28 U.S.C. §2254)

Petitioner hereby lodges with the Court in support of his habeas application   the attached Exhibits A-U concurrently with the petition for their consideration with these proceedings.

Because the exhibits are copies, Petitioner does not require that they be returned.

DATED: 10/25/07

Respectfully submitted,

MARK A. HARRIS

Counsel of record pro se

LODGMENT OF EXHIBITS AND INDEX IN SUPPORT OF PETITION - Harris v. Felker

1.

## PETITIONER'S INDEX TO LODGED EXHIBITS

| | Exhibit Letter | Description of Lodged Exhibit | Page Amount |
|---|---|---|---|
| 1 | EXHIBIT A: | Imperial Superior Court Order Denying Petition | [4 - pp.] |
| 2 | EXHIBIT B: | Court of Appeal Fourth District Order Denying Petition | [2 - pp.] |
| 3 | EXHIBIT C: | Court of Appeal Ruling on Motion for Reconsideration | [1 - p.] |
| 4 | EXHIBIT D: | Supreme Court Order Denying Petition | [1 - p.] |
| 5 | EXHIBIT E: | Charge I Disciplinary Hearing Adjudication | [10 - pp.] |
| 6 | EXHIBIT F: | Disciplinary Misconduct Complaint | [2 - pp.] |
| 7 | EXHIBIT G: | Confidential Information Notice | [1 - p.] |
| 8 | EXHIBIT H: | California Code of Regulations, Title 15 Excerpt | [1 - p.] |
| 9 | EXHIBIT I: | Bishop/Goffney Disciplinary Notice Excerpts | [2 - pp.] |
| 10 | EXHIBIT J: | Charge II Disciplinary Hearing Adjudication | [5 - pp.] |
| 11 | EXHIBIT K: | Punitive Segregation Assessment/Imposition | [1 - p.] |
| 12 | EXHIBIT L: | Investigative Employee Report | [9 - pp.] |
| 13 | EXHIBIT M: | Investigatory Task Package | [6 - pp.] |
| 14 | EXHIBIT N: | Vocational Electronics Time Card | [1 - p.] |
| 15 | EXHIBIT O: | Crime Scene Schematic Report | [1 - p.] |
| 16 | EXHIBIT P: | Adjudication Postponement Request | [2 - pp.] |
| 17 | EXHIBIT Q: | Blood Print/Stains Report | [2 - pp.] |
| 18 | EXHIBIT R: | Staff Blood Observation Reports | [9 - pp.] |
| 19 | EXHIBIT S: | Staff Body Search Report | [1 - p.] |
| 20 | EXHIBIT T: | Crime/Incident Report | [4 - pp.] |
| 21 | EXHIBIT U: | Davis Exculpatory Testimony | [2 - pp.] |

# Exhibit Cover Sheet

DESCRIPTION OF EXHIBIT:     Superior Court Order of Denial

NUMBER OF EXHIBIT PAGES:     4 Pages

# EXHIBIT   A



1

2

3

4

5

6

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                 IN AND FOR THE COUNTY OF IMPERIAL

10

11   In re:                                    Case No.: EHC00647

12          MARK A. HARRIS,                     ORDER DENYING PETITION FOR WRIT OF
                                                HABEAS CORPUS
13              On Habeas Corpus.

14

15       The instant petition for writ of habeas corpus was filed on June 22, 2005.  An order to

16   show cause issued on July 29, 2005, and counsel was appointed for petitioner on August 26,

17   2005.  The court granted respondent an extension of time for its return, and the return was filed

18   on October 6, 2005.  Thereafter, petitioner requested, and was granted, two extensions for the

19   filing of a denial; the denial was filed on April 10, 2006.

20       Petitioner requested an evidentiary hearing in his denial.  Therefore, on June 7, 2006 the

21   court ordered petitioner to file a statement of facts in dispute, and a statement substantially in

22   compliance with CRC 323.  These statements were filed on June 20, 2006.  The court now issues

23   its ruling.

24   I.      EVIDENTIARY HEARING.

25       The court has reviewed petitioner's statements filed June 20, 2006.  The statement of

26   facts in dispute does not identify evidentiary facts for determination by the court, but instead

27   identifies legal issues or conclusions.  The court has scoured the file in an attempt to identify

28   disputed material evidentiary facts pertinent to the issues presented, but has been unsuccessful.

1    Further, the CRC 323 statement fails to identify witnesses, and does not give the substance of

2    their testimony.  Finally, the CRC 323 statement does not give a time estimate for the proposed

3    testimony.

4         For the above reasons, the court finds that there are no material facts to be resolved at an

5    evidentiary hearing.

6    II.      SUBSTANTIVE ANALYSIS.

7         Petitioner seeks review of an administrative decision finding him guilty of a serious rule

8    violation.  Generally, where a challenge is made to a decision of an administrative tribunal after a

9    legally required hearing, the petitioner must show that either (1) the findings are not supported

10   by the evidence, or (2) the decision is not supported by the findings, or (3) there has been a

11   prejudicial failure to proceed as required by law.  C.C.P. §1094.5.

12        The gravamen of the petition is that petitioner was denied due process rights, on a

13   number of grounds, regarding his disciplinary hearing of August 19, 2003. The hearing was

14   based upon a rules violation report of June 16, 2003.  The Department granted petitioner a re-

15   hearing of his case on August 7, 2004 so that petitioner could review non-confidential evidence

16   24 hours prior to the hearing.

17        The charge concerned petitioner's alleged involvement in the stabbing of inmate Davis

18   by inmate Bishop in building C-3, cell 3-149 of Centinela State Prison just after 3:00 PM in the

19   afternoon of June 6, 2003.

20        Petition was charged with participating in a stabbing battery on an inmate within the

21   meaning of Title 15 C.C.R. 3005( c)

22

23         "(c) Force or Violence. Inmates shall not willfully commit or assist another

24         person in the commission of a violent injury to any person or persons, including self

25         mutilation or attempted suicide, nor attempt or threaten the use of force or violence upon

26         another person. Inmates shall not willfully attempt to incite others, either verbally or in

27         writing, or by other deliberate action, to use force or violence upon another person.

28         (Emphasis added.)"

2

After the hearing and re-hearing, petitioner was found guilty by preponderance evidence based upon confidential and non-confidential information, to the effect that that petitioner planned, orchestrated and participated in the stabbing.

In summary, at the time of the stabbing, the cell held inmates Bishop, Gaffney, Dabney and Davis. The hearing officer determined from all the evidence that petitioner was at the cell door of C-3-149 when cell furniture was moved just prior to the stabbing by inmate Davis to protect it from the planned encounter. Petitioner remained at the cell door during the stabbing and, after the stabbing, petitioner initially prevented the then wounded inmate from leaving the cell by pushing fleeing inmates back into the cell. Confidential information also implicated petitioner in the planning and directing of the stabbing.

The factual findings are supported by the evidence, and support a full range of accomplice liability for several criminal charges – battery among them. There is no merit to any of petitioner claims that 15 C.C.R. 3005( c) was misapplied, legally or factually, as to his involvement even if, as petitioner correctly points out, there was no evidence at the hearings that petitioner himself stabbed, touched or restrained the victim.

As to whether the offense was properly classified as A-1 or "...as a serious prison offense (in prison parlance, an 'A-1 offense,' after Pen. Code, § 2932, subd. (a)(1); see Cal. Code Regs., tit. 15, § 3323, subd. (b)(8)..." (*In re Mikhail* (1999) 70 Cal.App.4th 333, 337.), the findings clearly support the classification.

As to the adequacies or alleged bias of the investigating officer, the Court finds no prejudicial due process violations. Even if petitioner had an inadequate opportunity to contest confidential evidence that petitioner planned or orchestrated the stabbing via conversations with inmate Bishop, or was or was not the then most influential "Crip" in facility C, and that evidence is stricken, there remains more than sufficient evidence of accomplice liability at the time of the stabbing itself.

///

///

1    As to whether the hearing officer made the required determination of truthfulness and
2    reliability of the confidential information used by Respondent at the hearing under 15 C.C.R.
3    3321(b)(1):

4

5        "(1) No decision shall be based upon information from a confidential source,
6        unless other documentation corroborates information from the source, or unless
7        the circumstances surrounding the event and the documented reliability of the
8        source satisfies the decision maker(s) that the information is true. . ."

9

10    This was done at petitioner's initial hearing of August 19, 2003 by Lt. Daubenspeck at p.
11    7 of 9 of the hearing report (Petitioner's exhibit B) and, again, at the second hearing conducted
12    by Lt. White on August 7, 2004, at p. 4 of 4 of the hearing report. (Petitioner's exhibit F.)
13    As the record supplied by the petitioner and respondent indicate more than some
14    evidence sufficient for the Department to impose this discipline on petitioner (*In re Powell*
15    (1988) 45 Cal.3d 894, 902, 904.) the petition is denied.
16    Dated: August 14, 2006

17

18                    Hon. Jeffrey B. Jones, Judge
                       of the Superior Court

19
20
21
22
23
24
25
26
27
28

# Exhibit Cover Sheet

DESCRIPTION OF EXHIBIT:    Court of Appeal Order of Denial

NUMBER OF EXHIBIT PAGES:    2 Pages

# EXHIBIT    B

COURT OF APPEAL - FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

F I L E D
Stephen M. Kelly, Clerk
JAN 2 6 2007
Court of Appeal Fourth District

| | |
|---|---|
| In re MARK A. HARRIS | D049548 |
| on | (San Diego County Super. Ct. No. EHC 00647) |
| Habeas Corpus. | |

THE COURT:

The petition for a writ of habeas corpus has been read and considered by Justices Benke, Aaron and Irion. We take judicial notice of the prior petition, D047381.

On August 7, 2004, life prisoner Mark A. Harris was found guilty of a serious rules violation at Centinela State Prison. The violation arose from Harris's participation in a stabbing battery on inmate Davis on June 6, 2003. Harris raises 12 claims he was denied due process at the disciplinary hearing, and one claim he was denied his "state-created liberty interest in freedom from disciplinary segregation" relating to his placement in an administrative segregation unit as a result of the violation.

Harris challenged the sufficiency of the evidence supporting the guilt finding and his placement in his prior petition, D047381. This court summarily denied the petition on December 19, 2005. The record shows Harris pursued a second administrative appeal regarding the disciplinary finding and/or placement. Harris did not include the second level decision, which the director's level appeal decision describes as follows:

"The [second level] reviewer found that the appellant's due process rights were provided and that a preponderance of the evidence presented supported the finding of guilt in this matter. The reviewer also found that the appellant failed to provide any information that would warrant a modification of the original findings. The reviewer went to great lengths to respond to each of the appellant's issues concerning his RVR."

Harris also petitioned a second time in the Imperial County Superior Court. That court issued an order to show cause and appointed counsel for Harris. The matter was fully briefed and the petition was denied on August 17, 2006. Harris has not provided the record of that proceeding except for the order denying the petition.

Harris's second petition challenging the guilty finding is duplicative and incomplete. He has not established he is entitled to relief on habeas corpus and this court determined the decision was supported by some evidence in D047381.

The petition is denied.

IRION, Acting P. J.

Copies to: All parties

2

# Exhibit Cover Sheet

DESCRIPTION OF EXHIBIT:     Court of Appeal Denial of Reconsideration

NUMBER OF EXHIBIT PAGES:     1 Page

# EXHIBIT   C

COURT OF APPEAL - STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION ONE



In re MARK A. HARRIS on Habeas Corpus
**D049548**
Imperial County No. EHC00647

THE COURT:

The petition for reconsideration has been read and considered by Justices Benke, Huffman and Irion.

The denial of a petition for a writ within the appellate court's original jurisdiction without issuance of an alternative writ or order to show cause is final immediately. (Cal. Rules of Court, rule 8.264(b)(2)(A).) Mark A. Harris's petition for a writ of habeas corpus was summarily denied on January 26, 2007. This court has no jurisdiction to reconsider or rehear the matter.

The petition is denied.

_____
Acting Presiding Justice

cc: All Parties

# Exhibit Cover Sheet

DESCRIPTION OF EXHIBIT:    Supreme Court Order of Denial

NUMBER OF EXHIBIT PAGES:    1 Page

# EXHIBIT  D

S151472

# IN THE SUPREME COURT OF CALIFORNIA

## En Banc

---

In re MARK A. HARRIS III on Habeas Corpus

---

The petition for writ of habeas corpus is denied.

SUPREME COURT
**FILED**

MAY − **9** 2007

Frederick K. Ohlrich Clerk

_____
Deputy

_____
**GEORGE**
Chief Justice

# Exhibit Cover Sheet

**DESCRIPTION OF EXHIBIT:**    Charge I Disciplinary Hearing Adjudication

NUMBER OF EXHIBIT PAGES:    10 Pages

# EXHIBIT  E

STATE OF CALIFORNIA                                                      DEPARTMENT OF CORRECTIONS

# RULES VIOLATION REPORT

| CDC NUMBER | INMATE'S NAME | RELEASE/BOARD DATE | INST. | HOUSING NO. | LOG NO. |
|---|---|---|---|---|---|
| E-46844 | HARRIS | | CEN IV | C4-135 | FC-03-06-026 |

| VIOLATED RULE NO(S). | SPECIFIC ACTS | LOCATION | DATE | TIME |
|---|---|---|---|---|
| 3005 (c) FORCE AND VIOLENCE | PARTICIPATION IN A STABBING BATTERY ON AN INMATE WITH SERIOUS INJURY | FACILITY "C" | JUNE 16, 2003 | 1100 HOURS |

CIRCUMSTANCES

On Monday, June 16, 2003, the Investigative Services Unit (ISU) at Centinela State Prison concluded the investigation into the stabbing assault of inmate Davis, P-93441, C3-150, that occurred on June 6, 2003, in Building C3. The investigation, crime scene evidence, building schematic of inmates located on the dayroom floor and information provided through confidential inmate interviews has identified you as a suspect in the stabbing assault. Cell C3-149, was discovered with large amounts of blood splatter on the walls and floors. Additionally, the personal property, televisions and other appliances were placed in the upper bunk area of the cell, making this suspicious in that this area is not a designated area for these types of appliances. Confidential information developed through inmate interviews, specifically reflect that you were observed initially at the cell door while inmates Bishop, K-27260, C3-112, Gaffney J-71938, C3-112, Dabney K-55294, C3-146 and Davis, P-93441, C3-150, were in the cell. While you were at the cell door, you observed inmate Dabney initially arranging or placing personal property (appliance, television) on the upper bunk of his cell, removing the personal properties from their designated areas of the cell, preventing damage to the property. Dabney's actions reflect you and the other inmates in the cellblock of the planned assault. The confidential source(s) have specifically identified you as the person who initially stood in the cell door of cell C3-149 and watched inmate Bishop K-27260, C3-112 walk up behind inmate Dabney who was already in the cell. The sources relate you observed

| REPORTING EMPLOYEE (Typed Name and Signature) | DATE | ASSIGNMENT | RDO'S |
|---|---|---|---|
| N.S. RODRIGUEZ | JUNE 16, 2003 | ISU SERGEANT | SAT-SUN-HOL |

| REVIEWING SUPERVISOR'S SIGNATURE | DATE | ☑ INMATE SEGREGATED PENDING HEARING | |
|---|---|---|---|
| LT. PARIS | | DATE | LOC. |

| CLASSIFIED | OFFENSE DIVISION: | DATE | CLASSIFIED BY (Typed Name and Signature) | HEARING REFERRED TO |
|---|---|---|---|---|
| ☐ ADMINISTRATIVE ☑ SERIOUS | | | | ☐ HO ☐ SHO ☐ SC ☐ FC |

## COPIES GIVEN INMATE BEFORE HEARING

| ☐ CDC 115 | BY: (STAFF'S SIGNATURE) | DATE 7/24/03 | TIME 1015 | TITLE OF SUPPLEMENT 1030 CONFIDENTIAL |
|---|---|---|---|---|
| ☑ INCIDENT REPORT LOG NUMBER: FC03 135 | BY: (STAFF'S SIGNATURE) | DATE 7/24/03 | TIME 2000 | BY: (STAFF'S SIGNATURE) DATE 8/7/03 TIME 1015 HRS |

## HEARING

This hearing convened on 8/19/03, at 1120 hours, I introduced myself to Inmate HARRIS as the Senior Hearing Officer, Lt. B.E. DAUBENSPECK. This Inmate is not a participant in the Mental Health Services Delivery System at the CCCMS/EOP/MHCB level of care, Inmate was not assigned a Staff Assistant. Inmate HARRIS stated that his health was good, hearing/vision is not impaired. Inmate HARRIS acknowledged receipt of this CDC-115 RVR, and the following associated documents: CDC-115A, CDC-115 PART C, INVESTIGATIVE EMPLOYEE'S REPORT, CDC FORM 1030 CONFIDENTIAL DISCLOSURE STATEMENT, 837-CRIME/INCIDENT REPORT, more than twenty four (24) hours prior to the start of this hearing. These reports as well as the disciplinary charge of PARTICIPATION IN A STABBING BATTERY ON AN INMATE WITH SERIOUS INJURY were reviewed with Inmate HARRIS at this hearing. Inmate HARRIS stated that he understood all documentation and was prepared to begin.

**DISTRICT ATTORNEY:** This matter was referred for felony prosecution. On 6/24/03, Inmate HARRIS did request this hearing be postponed pending outcome of the referral. On 7/22/03, Inmate HARRIS revoked postponement.

**DUE PROCESS:** This disciplinary was served on Inmate HARRIS within 15 days of discovery and the hearing was held within 30 days of service. Time constraints have been met. There are no due process issues.

REFERRED TO ☐ CLASSIFICATION   ☐ BPT/NAEA        (Continued on CDC-115 part C)

| ACTION BY: (TYPED NAME) | SIGNATURE | DATE | TIME |
|---|---|---|---|
| Lt. B.E. DAUBENSPECK, Senior Hearing Officer | | | |

| REVIEWED BY: (SIGNATURE) | DATE | CHIEF DISCIPLINARY OFFICER'S SIGNATURE | DATE |
|---|---|---|---|
| D. DEXTER, Facility 'C' Captain | | J. SALAZAR, Chief Disciplinary Officer | |

| ☐ COPY OF CDC 115 GIVEN INMATE AFTER HEARING | BY: (STAFF'S SIGNATURE) | DATE 10-14-03 | TIME 1515 |

CDC 115 (7/88)

STATE OF CALIFORNIA                                                      DEPARTMENT OF CORRECTIONS

**RULES VIOLATION REPORT - PART C**                                      PAGE _1_ OF _7_

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|------------|---------------|------------|-------------|--------------|
| E-46844 | HARRIS | FC-03-06-026 | CENTINELA | 8/19/03 |

| ☐ SUPPLEMENTAL | ☒ CONTINUATION OF: | ☐ 115 CIRCUMSTANCES | ☒ HEARING | ☐ IE REPORT | ☐ OTHER_____ |

**STAFF ASSISTANT:** Was not assigned. Inmate **HARRIS** is not illiterate, claims High School Graduate, can read and write, is English speaking, the issues are not complex, is not a participant in the Mental Health Services Delivery System, and did not require a confidential relationship in preparing his defense.

**INVESTIGATIVE EMPLOYEE:** Was assigned, the issues are not complex, the inmate's housing status did preclude his gathering evidence; additional information was not necessary for a fair hearing. Inmate **HARRIS** received a copy of the I.E. Report and had no objections to the report.

**PLEA:** Inmate **HARRIS** plead **NOT GUILTY,** and gave the following testimony as his defense: "I did not participate in the stabbing of Davis. I was in C3 at time of incident and not involved. I Did not order anyone to do anything on June 5 or 6. I did not ask for the SHO manual just page 113 to 115. SHO information is not the SHO manual has nothing to do with this offense but guide lines for Lieutenant. Elements of offense is not in title 15. I want copies of Dispo record from C-File to prove that Harris has never done anything like this before. I want statements from Inmates Dabney and Smith. I was MAC Executive Body had access to all Buildings until 4:00. I was picking up food sales slips. I worked Vocational on 6/2/03, RDO S/S. I plead not guilty as charged additionally. I object to elements of the entire disciplinary process up to this stage of the proceedings, due to multiple instances of irregularities during the charging, disclosure and pre-hearing investigative phases I can not receive a fair hearing. Although the 837 incident report reflect I was within Housing Unit C-3 on June 6, 2003. I deny the allegation of my participation in an assault against inmate Davis, P-93441, on this date. As an inmate assigned to Facility "C", I was a member of the Men's Advisory Counsel, Executive Body, as a ranking MAC member, I was allowed access to all the Facility's Housing Units up to 1600 hours and including 2045 hours with the exception of the evening institutional count. During the week of June 2, 2003 the institution conducted a pizza and beverage food sale, myself, the MAC Chairman, and Vice Chairman inmate Brooks, K-16234, facilitated the distribution of the sale applications, thereafter until the forms were collected, I toured the housing units answering questions concerning the applications and retrieving those which were completed. Within this capacity on June 6, 2003, I entered unit C3 and proceeded to the "C" side bench area awaiting staff to secure the building before informing them of what I was there to do. Immediately afterwards, I heard the unit alarm activated and while looking around I observed inmate Davis walking towards the podium bleeding. Responding staff immediately arrived and assisted in covering the building until ISU determined a crime scene. Myself and two other inmates also residing in other housing units after being searched were then escorted to our assigned living quarters. The following week, I was placed in the prison's Segregation Unit for Investigation. To this end, prior to observing Davis I had no knowledge of any unlawful activity occurring on June 6, 2003."

**WITNESSES:** Inmate **HARRIS** did request witnesses. C/O V. BACH, Inmate Davis, P-94331, and Incident Commander Lieutenant P. Falconer (A), Witnesses granted.

**The following** questions were asked of Witness C/O BACH by Inmate HARRIS:
Witness C/O Bach, present at hearing.
Q. During the course of your yard observations, did you often come into contact/receive information that implicated me in some form of misconduct, conspiracy, or planning activity against another inmate?
A. This incident occurred on 3/W. I'm assigned to 2/W. I have no knowledge of you being targeted for assault.

LT. B.E. DAUBENSPECK, Senior Hearing Officer

| SIGNATURE OF WRITER | | | DATE SIGNED |
|---|---|---|---|
| *[signature]* | | | 9/8-03 |
| | GIVEN BY: (Staff's Signature) | DATE SIGNED | TIME SIGNED |
| ☒ COPY OF CDC 115-C GIVEN TO INMATE | *[signature]* | 10-14-03 | 1515 |

CDC 115-C (5/95)                                                    OSP 99 25082

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS
PAGE ___ OF ___

**RULES VIOLATION REPORT - PART C**

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| E-46844 | HARRIS | FC-03-06-026 | CENTINELA | 8/19/03 |

☐ SUPPLEMENTAL  ☐ CONTINUATION OF:  ☐ 115 CIRCUMSTANCES  ☐ HEARING  ☐ IE REPORT  ☐ OTHER_____

(WITNESS C/O BACH CONTINUED)

**The following** questions were asked of Witness C/O BACH by **Inmate** HARRIS:
Witness C/O Bach, present at hearing.
Q. After considering this information, what was the usual outcome of these kites or allegations once allowed to run their course?
A. This incident occurred on 3/W. I'm assigned to 2/W. I have no knowledge of you being targeted for assault.
Q. During my stay at Centinela within the several months proceeding my segregational placement, was I occasionally targeted with allegations of one nature or another?
A. This incident occurred on 3/W. I'm assigned to 2/W. I have no knowledge of you being targeted for assault.
Q. Through your own research would you say that the allegations were of the most part an ongoing effort to get me removed from the yard, considering nothing was ever corroborated, how so or in what way?
A. This incident occurred on 3/W. I'm assigned to 2/W. I have no knowledge of you being targeted for assault.

**The following** questions were asked of Witness Inmate Davis, P-93441, by **Inmate** HARRIS:
Witness Davis, was questioned via speaker telephone, Inmate Harris stated this was acceptable. Inmate Davis is currently at LAC.
Q. What is the nature of my relationship with you?
A. None.
Q. For the time period that we have known each other have we ever had any dispute, misunderstanding or problems with one another?
A. A couple of times.
Q. On June 6, 2003, did I ever force or threaten you to fight another inmate?
A. No.
Q. Did I become aware that you had a dispute with another inmate when I got off of work on June 6?
A. No
Q. Based on your personal knowledge of the assault, did I order, participate and orchestrate the stabbing against you?
A. No
Q. At yard recall on June the 6th, did you ever see me at the cell door of cell 149, witnessing preparations for a fight or stabbing?
A. No.
Q. The 115 issued to me states. I stood at cell 149 and observed inmate Dabney move property. Is this what you observed?
A. Yes, Harris witnessed all.
Q. The 115 also states, that I stood in the cell door and watched you get stabbed in the chest, is this correct?
A. No.
Q. Did you ever see me push other inmates into you to keep you from getting out of cell 149?
A. No.
Q. Did I have any reason or desire to see you hurt or stabbed?
A. No.
Q. Did I have anything whatsoever to do with you being stabbed?
A. No.

LT. B.E. DAUBENSPECK, Senior Hearing Officer

| SIGNATURE OF WRITER | | DATE SIGNED |
|---|---|---|
| | | 9-18-03 |
| GIVEN BY: (Staff's Signature) | DATE SIGNED | TIME SIGNED |
| | 10-14-03 | 1515 |

☑ COPY OF CDC 115-C GIVEN TO INMATE

OSP 99 25082

STATE OF CALIFORNIA                                                          DEPARTMENT OF CORRECTIONS
**RULES VIOLATION REPORT - PART C**                                          PAGE 3 OF 1

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| E-46844 | HARRIS | FC-03-06-026 | CENTINELA | 8/19/03 |

☐ SUPPLEMENTAL  ☒ CONTINUATION OF:  ☐ 115 CIRCUMSTANCES  ☒ HEARING  ☐ IE REPORT  ☐ OTHER_____

### (CONTINUATION OF WITNESS DAVIS) ✓

**The following** questions were asked of Witness Inmate Davis, P-93441, by **Inmate** HARRIS:

Witness Davis, was questioned via speaker telephone, Inmate Harris stated this was acceptable. Inmate Davis is currently at LAC.

Q. Do you consider me as your enemy?
A. No.

Q. Did any Prison staff tell you that I ordered, planned and orchestrated a stabbing against you, If so who?
A. ISU told me in here.

Q. What interest do I have in you or any of your immediate associates?
A. None.

Q. Is it in your personal knowledge that if I was aware of any bodily harm about to come to you, I would do anything to prevent it?
A. No.

**The following** questions were asked of Witness Lieutenant (A) P. Falconer, Incident Commander.

Witness Lieutenant P. Falconer, present at hearing.

Q. If the surveillance video depicts the ingress and egress into a crime scene before it's occurrence, would this be considered relevant evidence?
A. If the camera showed or recorded the incident it would be evidence. I checked with Control the tape of 6/6/03 has been recorded over. The tape would only show ingress and regress, not the crime scene.

Q. Why wasn't the video additionally secured into evidence locker which could unequivocally depict the sequence time of each inmate who specifically entered the housing unit before or after or with inmate Davis?
A. The camera wasn't positioned towards Building C 3 and no relevant evidence was recorded.

Q. When acting as an incident commander, is it protocol for you to consider whether the facility surveillance tape is to be collected as evidence, where inmates are entering into and out of a potential crime scene or where a assailant is not detained?
A. It is my decision to consider the surveillance tape if only tape of the crime scene is placed in evidence, if it was pointed in the direction of the incident and shows anything relevant.

Q. What does the procedure require for evidence of this of this nature which could exonerate or implicate a charged inmate, relative to it's removal and storage?
A. If it shows any evidence it is to be removed from recorder labeled with time, date, and log # of incident, logged into evidence and secured in an evidence locker.

Q. How was the determination arrived at that the surveillance video of the Facility 'C' yard recall was not to be collected, where it's contents could possibly exonerate or implicate any inmate during the inception of the investigation?
A. The contents of the video did not show anything relevant to the incident. I viewed the video before a decision was made.

Q. Was there a determination made whether the source who had given information in the past did so, so it would be believed when the opportunity arose in the future to make allegations directed towards me?
A. Yes.

Q. Was there a determination made whether the source had a grudge against me or possibly wanted to shift blame for his involvement in the incident, if involved?
A. Yes

LT. B.E. DAUBENSPECK, SENIOR HEARING OFFICER

| SIGNATURE OF WRITER | | DATE SIGNED |
|---|---|---|
| *[signature]* | | 9-18-03 |
| GIVEN BY: (Staff's Signature) | DATE SIGNED | TIME SIGNED |
| *[signature]* | 10.14.03 | 1815 |

☒ COPY OF CDC 115-C GIVEN TO INMATE

CDC 115-C (5/95)                                                        OSP 99 25082

STATE OF CALIFORNIA                                                     DEPARTMENT OF CORRECTIONS
**RULES VIOLATION REPORT - PART C**                                    PAGE 4 OF 7

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| E-46844 | HARRIS | FC-03-06-026 | CENTINELA | 8/19/03 |

☐ SUPPLEMENTAL  ☑ CONTINUATION OF:  ☐ 115 CIRCUMSTANCES  ☑ HEARING  ☐ IE REPORT  ☐ OTHER_____

### (CONTINUATION OF WITNESS P. FALCONER)

**The following** questions were asked of Witness Lieutenant (A) P. Falconer, Incident Commander.
Witness Lieutenant P. Falconer, present at hearing.

Q. The 1030 issued to me relate that more than one source provided the same information. What was the exact and specific same information provided?

A. Read the CDC-1030 form issued to you on 6/24/03.

Q. Was the information from each source first hand accounts?

A. I can not reveal any more information about the source without jeopardizing the identity of the sources.

Q. And in relation to this, was it determined that the source from his vantage point/cell location was able to witness the allegations as documented in the reported 115 language circumstances?

A. Read your CDC-1030 form.

Q. Was a determination made whether the source had a need to clear himself from some other misconduct, if so what was the outcome?

A. A determination was made read your 1030 form.

Q. Upon your arrival to housing unit C3 did you discern at some time that the victim lived in C3-150?

A. Unlock shows housing N/A.

**FINDINGS:** Inmate **HARRIS** was found **GUILTY** of violating CCR Section 3005 (C), a Division **"A1"** offense; the specific charge of **PARTICIPATION IN A STABBING BATTERY ON AN INMATE WITH SERIOUS INJURY.** The preponderance of evidence submitted and considered in reaching a finding substantiates the charge and supports the factors in aggravation. The finding is based upon the following:

**The RVR by:** ISU, Sergeant N.S. RODRIGUEZ, stating in part, On Monday, June 16, 2003, The Investigative Services Unit, (ISU) at Centinela State Prison concluded the investigation into the Stabbing assault of inmate DAVIS, P-93441, C3-150, that occurred on June 6, 2003, in building C3. The investigation, crime scene evidence, building schematic of inmates located on the dayroom floor and information provided through confidential inmate interviews has identified you as a suspect in the stabbing assault. Cell C3-149, was discovered with large amounts of blood splatter on the walls and floors. Additionally, the personal property, televisions and other appliances were placed in the upper bunk area of the cell, making this suspicious in that this area is not a designated area for these types of appliances. Confidential information developed through inmate interviews, specifically reflect that you were observed initially at the cell door while inmates Bishop, K-27260, C3-112, Goffney, J-71938, C3-112, Dabney, K-55204, C3-146 and Davis, P-93441, C3-150, were in the cell. While you were at the cell door, you observed inmate Dabney initially arranging or placing personal property (appliance, television) on the upper bunk of his cell, removing the personal properties from their designated areas of the cell, preventing damage to the property. Dabney's actions reflect you and the other inmates in the cell knew of the planned assault. The confidential source(s) have specifically identified you as the person who initially stood in the cell door of cell C3-149 and watched inmate Bishop, K-27260, C3-112 walk up behind inmate Dabney who was already in the cell. The sources relate you observed Bishop stab inmate Davis in the chest. The Confidential sources observed you observe Bishop attempt to strike Davis with the weapon again. The sources have related Davis fought or pushed his way out of the cell, while you pushed inmate Goffney, Bishop and Dabney back into the cell, preventing Davis from exiting the cell.

LT. B.E. DAUBENSPECK, SENIOR HEARING OFFICER

| SIGNATURE OF WRITER | | DATE SIGNED |
|---|---|---|
| _(signature)_ | | 9-1-03 |
| GIVEN BY: (Staff's Signature) | DATE SIGNED | TIME SIGNED |
| ☑ COPY OF CDC 115-C GIVEN TO INMATE    _(signature)_ | 10-14-03 | 1500 |

CDC 115-C (5/95)

OSP 99 25082

STATE OF CALIFORNIA                                                    DEPARTMENT OF CORRECTIONS
**RULES VIOLATION REPORT - PART C**                                            PAGE 5 OF 7

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|------------|---------------|------------|-------------|--------------|
| E-46844 | HARRIS | FC-03-06-026 | CENTINELA | 6/19/03 |

| ☐ SUPPLEMENTAL | ☒ CONTINUATION OF: | ☐ 115 CIRCUMSTANCES | ☒ HEARING | ☐ IE REPORT | ☐ OTHER |

### (CONTINUATION OF RVR)

**CONTINUATION OF RVR by: ISU, Sergeant N.S. RODRIGUEZ:**
This can be confirmed by the blood splatter and blood stains discovered on the cell floor by ISU, Crime Scene
Investigators. Davis was later observed bloodied and staggering to the Officer's Podium, where Custody Staff
activated their personal alarms. You were later discovered in a building schematic developed by custody staff sitting
near the computer area of the "C" section dayroom floor. Additional information provided by the sources have related
you orchestrated the battery between Davis, C3-150 and inmate Bishop, K-27260, C3-112 and Goffney, J-71938, C3-112.
The information has disclosed that the battery was suppose to have happened on the yard between inmate Davis and
Bishop, per your instructions. Sources have specifically stated that your influence on the yard, military discipline,
pretension and prior participation in gang and staff assaults throughout the state institutions has inmates
intimidated and fearful of not refusing your request to participate in violent acts or behavior.

The CDC-837 Crime/Incident Report Log # FC-03-06-0135, which states: On Friday, June 6, 2003, at about 1528 hours,
while monitoring yard recall, Correctional Officer Huerta, C3 Floor Officer # 1, observed inmate Davis, P-93441
walking from the lower "C" section of building C-3, toward the sally port with his right hand pressing the left
side of his chest, with what looked like blood on his right hand and chest area. Officer Huerta then advised the
Control Booth Officer, Valenzuela to activate the alarm, and put the building down. After activating his alarm,
Officer Valenzuela announced over his state issued radio that there was a medical emergency in building C-3. Inmate
Davis who was now in the building sally port was then ordered to get down by responding staff Officer Zamora, C
Yard S & E # 2, and Sergeant Thompson, C Yard Sergeant. Once Davis was down, Officer Zamora and Sergeant Thompson
continued in the building to secure the area.

Supplemental CDC-837 Crime/Incident Report Log # FC-03-06-0135, by MTA BANKS, which states: I assisted the Doctor
with emergency room care by stabilizing inmate Davis for a stab wound to the upper left chest. Inmate Davis was
stabilized and transported Code 3 at approximately 1555 hours to El Centro Regional Hospital.

Supplemental CDC-837 Crime/Incident Report Log # FC-03-06-0135, by Central Health R.N. A. COMBS, which states:
I assisted the Doctor with emergency room care by stabilizing inmate Davis for a stab wound to the upper left chest.

Supplemental CDC-837 Crime/Incident Report Log # FC-03-06-0135, by MTA Phettepiace, which states: I assisted the
Doctor with emergency room care by stabilizing inmate Davis for a stab wound to the upper left chest. Inmate Davis
was stabilized and transported Code 3 at approximately 1555 hours to El Centro Regional Hospital.

Supplemental CDC-837 Crime/Incident Report Log # FC-03-06-0135, by Sergeant N. Rodriguez, (ISU) Sergeant, which
states: Officers Romero and Holt were directed to conduct a cell search of cell, C3-112, assigned to inmate Bishop,
K-27260. The search resulted in the findings of "FILA," tennis shoes stained with blood droplets inside of Bishops
cell underneath his assigned bunk. The tennis shoes were photographed by F. Holt and placed into a evidence locker.
Subsequent facts provided in this investigation resulted in the placement of inmate Smith, P-47555, C3-149U, Dabney,
K-55204, C3-149L, and Bishop, K-27260, C3-112L, in the Administrative Segregation Unit for their suspected
participation in the serious battery of inmate Davis, P-93441, C3-150. All three inmates were interviewed prior
to their placement in ASU. The inmates were not charged with any crime at this time therefore were not provided
"Miranda," due to the on going investigation by the Investigative Services Unit.


                    Lt. B.E. DAUBENSPECK, SENIOR HEARING OFFICER

| | SIGNATURE OF WRITER | | DATE SIGNED |
|---|---|---|---|
| | | | |
| | GIVEN BY: (Staff's Signature) | DATE SIGNED | TIME SIGNED |
| ☐ COPY OF CDC 115-C GIVEN TO INMATE | | 10-14-03 | 1615 |

CDC 115-C (5/95)                                                    OSP 99 25082

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

**RULES VIOLATION REPORT - PART C**

PAGE ___ OF ___

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| E-46844 | HARRIS | FC-03-06-026 | CENTINELA | 8/19/03 |

☐ SUPPLEMENTAL  ☑ CONTINUATION OF:  ☐ 115 CIRCUMSTANCES  ☑ HEARING  ☐ IE REPORT  ☐ OTHER ____

Supplemental CDC-837 Crime/Incident Report Log # FC3-03-06-0135, by C/O C. ROMERO, (ISU # 6), which states: While entering C3 Housing Unit, there were red stains suspected to be blood in the sally port leading through the C section dayroom into cell C3-149, occupied by Dabney, K-55204, and Smith, P-47555. I photographed watered down blood stains in C section dayroom infront of the computer. Blood stains were also located on the drinking fountain in C section dayroom. Officer F. Holt and I searched cell C3-12 occupied by inmates Goffney, J-71938, and Bishop, K-27260. Upon entering the cell, I discovered a plastic bag on the lower bunk with Bishop's property in it, letters with Bishop's name, clothing and personal hygiene were inside the bag. I photographed the bag on the bed and a pair of FILA tennis shoes belonging to Bishop. The FILA's had blood stains on the right shoe.

Supplemental CDC-837 Crime/Incident Report Log # FC3-03-06-0135, by C/O F. HOLT, (ISU # 3), which states: While conducting a unclothed body search on inmate Bishop, K-27260, who was located underneath the inmate television set approximately thirty-five feet away from cell 149, I instructed Bishop to place his hands straight out in front of him with his palms down. As I inspected his knuckles for any injuries I noticed Bishop's hands shaking uncontrollably. I then instructed Bishop to place his palms up to check for any injuries. I observed the palms of his hands to be extremely dampened. At approximately 2118 hours, with the assistance of Security Squad Office C/O Romero, I conducted a cell search of cell 112. Cell C3-112 is occupied/assigned to inmates Bishop and Goffney, J-71938, (verified by housing unit roster). During the course of the cell search I observed a pair of white tennis shoes (Fila) located underneath the desk against the south wall. As I examined the shoes, I noticed two spots of blood on the right shoe (refer to Officer Romero's photographs). I asked Goffney who the shoes belonged to? Goffney stated, "Those are not mine." At approximately 2130 hours, I conducted a "Hemident" test on the spots of suspected blood. The test proved positive for blood.

Supplemental CDC-837 Crime/Incident Report Log # FC3-03-06-0135, by C/O E. MONTELANO, which states: I began a schematic of the crime scene, which was on "C" section dayroom floor. The schematic shows inmates Goffney, J-71938, C3-112U, as # 2, Bishop, K-27260, C3-112U, as # 4 and Smith, P-47555, C3-149U, as # 5, sitting on the "C" section Dayroom floor the inmate telephones and inmate television sets in the dayroom.

Supplemental CDC-837 Crime/Incident Report Log # FC3-03-06-0135, by Relief MTA J. HOUSTON, which states: I saw an Officer standing over inmate Davis, P-93441, holding a plastic bag on the L side of his chest. Upon closer examination I noticed the inmate had blood on his chest and abdominal area. I began to evaluate the inmate noticing an elliptical wound about 1 inch in length on his anterior C chest wall. The inmate was conscious but breathing labored, the wound was bleeding minimally, a plastic bag was removed from the wound and dressed c/x 4 Gauze.

Supplemental CDC-837 Crime/Incident Report Log # FC3-03-06-0135, by C/O L. CHAVEZ, which states: After receiving medical treatment in El Centro Regional Hospital, Inmate Davis was air lifted to UESD Hospital were I released inmate Davis to R.J. DONOVAN Correctional Sergeant for further medical evaluation.

Inmates statement at the hearing does not exonerate him of the charge as he is aware of the rules governing: PARTICIPATION IN A STABBING BATTERY ON AN INMATE WITH SERIOUS INJURY.

Lt. R.E. DAUBENSPECK, Senior Hearing Officer

| SIGNATURE OF WRITER | | DATE SIGNED |
|---|---|---|
| | | 7-15-3 |
| GIVEN BY: (Staff's Signature) | DATE SIGNED | TIME SIGNED |
| ☑ COPY OF CDC 115-C GIVEN TO INMATE | 10-14-03 | 1515 |

CDC 115-C (5/95)

OSP 99 25082

STATE OF CALIFORNIA                                                                    DEPARTMENT OF CORRECTIONS

**RULES VIOLATION REPORT - PART C**                                                    PAGE 7 OF 7

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|------------|---------------|------------|-------------|--------------|
| B-46844 | HARRIS | FC-03-06-026 | CENTINELA | 8/19/03 |

| ☐ SUPPLEMENTAL | ☑ CONTINUATION OF: | ☐ 115 CIRCUMSTANCES | ☒ HEARING | ☐ IE REPORT | ☐ OTHER _____ |

Inmate HARRIS's denial of guilt or (statements made) at the Hearing including: I did not participate in the stabbing of Davis. I was in C3 at time of incident and not involved. Did not order anyone to do anything on June 5 or 6. I did not ask for the SHD manual just page 113 to 115. SHD information is not the SHD manual has nothing to do with this offense but guide lines for Lieutenant. Elements of offense is not in title 15. I want copies of Dispo record from C-File to prove that Harris has never done anything like this before. I want statements from Inmates Dabney and Smith. I was MAC Executive Body had access to all Buildings until 4:00. I was picking up food sales slips. I worked Vocational on 6/2/03, RDO S/S. I plead not guilty as charged additionally. I object to elements of the entire disciplinary process up to this stage of the proceedings, due to multiple instances of irregularities during the charging, disclosure and pre-hearing investigative phases I can not receive a fair hearing. Although the 837 incident report reflect I was within Housing Unit C-3 on June 6, 2003. I deny the allegation of my participation in an assault against inmate Davis, P-93441, on this date. As an inmate assigned to Facility "C", I was a member of the Men's Advisory Counsel, Executive Body, as a ranking MAC member, I was allowed access to all the Facility's Housing Units up to 1600 hours and including 2045 hours with the exception of the evening institutional count. During the week of June 2, 2003 the institution conducted a pizza and beverage food sale, myself, the MAC Chairman, and Vice Chairman inmate Brooks, K-16234, facilitated the distribution of the sale applications, thereafter until the forms were collected, I toured the housing units answering questions concerning the applications and retrieving those which were completed. Within this capacity on June 6, 2003, I entered unit C3 and proceeded to the "C" side bench area awaiting staff to secure the building before informing them of what I was there to do. Immediately afterwards, I heard the unit alarm activated and while looking around I observed inmate Davis walking towards the podium bleeding. Responding staff immediately arrived and assisted in covering the building until ISU determined a crime scene. Myself and two other inmates also residing in other housing units after being searched were then escorted to our assigned living quarters. The following week, I was placed in the prison's Segregation Unit for Investigation. To this end, prior to observing Davis I had no knowledge of any unlawful activity occurring on June 6, 2003.

Inmate HARRIS was informed confidential information was going to be considered via confidential information disclosure CDC form 1030's and that the SHD reviewed the information provided. This confidential information does meet the criteria established in CCR 3321, and finds that the information has substantive evidence to support the charge. Testimony of a confidential witness Per CCR 3321 (a) (1), the identity of the informant must remain confidential because disclosure, if known to this inmate, would endanger the safety of a person. Per CCR 3321 (c) (4), this source is considered reliable because part of the information has already proven true. Per this confidential informant, the informant witnessed the Stabbing Battery.

Supplemental reports by: 1030's.

CDC-1030 dated June 16, 2003, authored by Sergeant N.S. Rodriguez ISU Sergeant, stating, On Monday June 16, 2003, ISU concluded the investigation into the stabbing assault of inmate Davis, P-93441, which occurred on June 6, 2003. Confidential information disclosed that you specifically were identified as the person who ordered, participated, and witnessed the stabbing of inmate Davis. (Additional information is explained on the attached copy of the RVR-115, FC-03-06-026).


LT. B.E. DAURENSPECK, Senior Hearing Officer

| SIGNATURE OF WRITER | | DATE SIGNED |
|---------------------|--|-------------|
| | | 10-14-03 |

| | GIVEN BY: (Staff's Signature) | DATE SIGNED | TIME SIGNED |
|--|-------------------------------|-------------|-------------|
| ☐ COPY OF CDC 115-C GIVEN TO INMATE | | 10-14-03 | 1815 |

CDC 115-C (5/95)                                                                        OSP 99 25082

STATE OF CALIFORNIA                                                                 DEPARTMENT OF CORRECTIONS

**RULES VIOLATION REPORT - PART C**                                             PAGE __ OF __

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| E-46844 | HARRIS | FC-03-06-026 | CENTINELA | 8/19/03 |

| ☐ SUPPLEMENTAL | ☐ CONTINUATION OF: | ☐ 115 CIRCUMSTANCES | ☑ HEARING | ☐ IE REPORT | ☐ OTHER_____ |
|---|---|---|---|---|---|

Confidential Memorandum authored by N.S. Rodriguez, ISU Sergeant, dated June 6, 2003 and June 16, 2003, located in the confidential section of the C-File.

SHO: Believes the confidential memo to be true as per CCR 3321 Confidential Reliability of Sources (2) (A) (C) (E).

Identified inmate HARRIS, E-46844,

(A) This source has previously provided information which has proven to be true.

(C) More than one source independently provided the same information. Identified inmate HARRIS, E-46844, as

(E) Part of the information provided by the source has already proven to be true.

SHO NOTES: SHO believes the CDC Form 1030 to be true to establish Confidential and Support the charges per CCR 3321 (a). The sources has previously provided confidential information which has proven to be true, (c) more than one source independently provided the same information (e) part of the information by the same sources has already proven to be true.

SHO NOTES: That the 1030 notes Confidential Memorandum authored by N.S. Rodriguez, ISU Sergeant, dated June 6, 2003 and June 16, 2003, located in the Confidential section of the C File. A review of the C File shows two confidential memo's authored by Sergeant N.S. Rodriguez, ISU, each confidential memo is dated June 11, 2003, SHO explained to the inmate HARRIS this would not have any effect as to the charge and outcome of the hearing. Confidential Memo # 1, dated June 11, 2003 authored by Sergeant N.S. Rodriguez placed in the confidential section of inmate HARRIS central file.
Inmate Davis, P-93441, C3-150, was observed walking out of cell C3-149, on 6/6/03, holding his chest. Blood was observed on Davis. Inmate Bishop, K-27260, C3-112, walked out of cell C3-149 just behind Davis and sat down in the C section dayroom by the inmate telephone. Bishop was wiping his hands and body with a T-shirt. Bishop placed the T-shirt against the wall. Harris, E-46844, was sitting next to the inmate Computer in the C section dayroom. Harris had told/ordered Bishop to fight Davis. Inmates use cells 101, 102 and 149, 150 to fight because the Officers can not see into the cells from the podium. Goffney, Harris and other inmates watched what was going on in the cell, they were sitting by the computer and ran to where staff later observed them. Goffney was sitting next to Bishop. Confidential Memo # 2, dated June 11, 2003, authored by N.S. Rodriguez, ISU, placed in inmate HARRIS, E-46844, confidential section of his Central File. Harris and Bishop were observed talking to each other on the yard on June 3, 2003, and later that evening Bishop was observed at Davis's cell. Harris and Bishop were observed again talking to each other on the yard on June 6, 2003, prior to the incident occurring in building C3. Bishop was observed inside cell C3-149 with inmates Dabney and Davis. Bishop was seen sticking Davis in the chest with a weapon as inmates Harris and Goffney stood in the doorway of the cell. Goffney was then seen entering the cell and attempting to assist Bishop in a continued assault on Davis, while Harris remained in the doorway. Davis was then seen pushing his way out of the cell while holding his chest. Goffney was seen with a white T-shirt which was used to wrap the weapon and was later discovered by staff near Bishop with blood stains.

LT. B.E. DAUBENSPECK, SENIOR HEARING OFFICER

| | SIGNATURE OF WRITER | | DATE SIGNED |
|---|---|---|---|
| | | | 9-19-3 |
| ☐ COPY OF CDC 115-C GIVEN TO INMATE | GIVEN BY: (Staff's Signature) | DATE SIGNED 10-14-03 | TIME SIGNED 1515 |

CDC 115-C (5/95)                                                                        OSP 99 25082

STATE OF CALIFORNIA                                                          DEPARTMENT OF CORRECTIONS

**RULES VIOLATION REPORT - PART C**                                          PAGE __1__ OF __1__

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| E-46844 | HARRIS | FC-03-06-026 | CENTINELA | 8/19/03 |

☐ SUPPLEMENTAL   ☐ CONTINUATION OF:   ☐ 115 CIRCUMSTANCES   ☒ HEARING   ☐ IE REPORT   ☐ OTHER_____

Inmate Harris was informed confidential information was going to be considered via confidential information disclosure form, CDC-Form 1030, and that the SHO reviewed the information provided. This information does meet the criteria established in CCR 3321 and finds that the information has substantive evidence to support the charge in that, on June 16, 2003, ISU received confidential information specifically, On Monday June 16, 2003, ISU concluded the investigation into the stabbing assault of inmate Davis, P-93441, which occurred on June 6, 2003. Confidential information disclosed that you specifically were identified as the person who ordered, participated and witnessed the stabbing of inmate Davis.

**SHO NOTES:** After statements at the hearing and review of all the reports, Inmate DAVIS received a stab wound approximately 1 inch to the upper left chest area on the anterial chest wall, loosing a large quantity of blood. Davis was taken code 3 to ECRM. Davis received a blood transfusion and stabilized due to a significant amount of blood loss. Davis was then transferred to UCSD Medical Center via Medical Air Flight and placed in Intensive care. SHO believes that because Davis was stabbed once in the upper anterial chest wall and that a blood transfusion had to be completed to stabilize Davis and Davis placed in ICU the injuries was serious in nature.

**DISPOSITION:** Assessed 360 days forfeiture of behavioral credits consistent with a Division "A1" offense (refer to CCR 3323). PARTICIPATION IN A STABBING BATTERY ON AN INMATE WITH SERIOUS INJURY.

~~Assessed 0 Days Loss of Privileges.~~ ⟍/01 8 (03

**Referred** to ICC for Program Review. Consideration of a SHU Term.

Inmate Harris, E-46844, to be noted on inmate Davis's P-93441, CDC-812 File as an enemy.

Inmate HARRIS was informed that the disposition of this Rules Violation Report would not become final until reviewed and approved by the Chief Disciplinary Officer. Inmate HARRIS was informed that he would receive a final copy upon approval of the Chief Disciplinary Officer. Inmate HARRIS was advised of his rights to appeal the findings of this hearing, and that the first level of appeal has been eliminated on disciplinary issues. Inmate HARRIS was informed that Division A, B, and C credit losses are not restorable.

LT. B.E. DAUBENSPECK, SENIOR HEARING OFFICER

| SIGNATURE OF WRITER | | DATE SIGNED |
|---|---|---|
| *(signature)* | | 9-18-03 |
| GIVEN BY: (Staff's Signature) | DATE SIGNED | TIME SIGNED |
| *(signature)* | 10·14·03 | 1315 |

☒ COPY OF CDC 115-C GIVEN TO INMATE

CDC 115-C (5/95)                                                        OSP 99 25082

# Exhibit Cover Sheet

**DESCRIPTION OF EXHIBIT:**    Disciplinary Misconduct Complaint

**NUMBER OF EXHIBIT PAGES:**    2 Pages

# EXHIBIT    F

COPY OF RVR AND CDC    SENT TO RECORDS ON:

STATE OF CALIFORNIA

# RULES VIOLATION REPORT

FC 9/28/04

DEPARTMENT OF CORRECTIONS

| CDC NUMBER | INMATE'S NAME | RELEASE/BOARD DATE | INST. | HOUSING NO. | LOG NO. |
|---|---|---|---|---|---|
| E-46844 | HARRIS | C'PER | CEN-IV | C4-135L | FC-03-06-026F |

| VIOLATED RULE NO(S). | SPECIFIC ACTS | LOCATION | DATE | TIME |
|---|---|---|---|---|
| 3005 (c) FORCE AND VIOLENCE | PARTICIPATION IN A STABBING, BATTERY ON A INMATE WITH SERIOUS INJURY | FAC 'C' | 6/16/03 | 1100 HOURS |

CIRCUMSTANCES

On Monday, June 16, 2003, the Investigative Services Unit (ISU) at Centinela State Prison concluded the investigation into the stabbing assault of inmate Davis, P-93441, C3-150, that occurred on June 6, 2003, in Building C3. The investigation, crime scene evidence, building schematic of inmates located on the dayroom floor and information provided through confidential inmate interviews has identified you as a suspect in the stabbing assault. Cell C3-149, was discovered with large amounts of blood splatter on the walls and floors. Additionally, the personal property, televisions and other appliances were placed in the upper bunk area of the cell making this suspicious in that this area is not a designated area for these types of appliances. Confidential information developed through inmate interviews, specifically reflect that you were observed initially at the cell door while inmates Bishop, K-27260, C3-112, Goffney, J-71398, C3-112, Dabney, K-55204, C3-146, and Davis, P-93441, C3-150, were in the cell. While you were at the cell door, you observed inmate Dabney initially arranging or placing personal property (appliance, television) on the upper bunk of his cell, removing the personal properties from their designated areas of the cell, preventing damage to the property.

CONTINUED ON PART C

| REPORTING EMPLOYEE (Typed Name and Signature) | DATE | ASSIGNMENT | RDO'S |
|---|---|---|---|
| ▶ N.S. RODRIGUEZ Correctional Sergeant | 12/24/03 | ISU SERGEANT | S/S/H |

| REVIEWING SUPERVISOR'S SIGNATURE | DATE | ☑ INMATE SEGREGATED PENDING HEARING | DATE | LOC. |
|---|---|---|---|---|
| ▶ C. PARKS, Lieutenant | 12-29-03 | | 6/13/03 | C6-135 |

| CLASSIFIED | OFFENSE DIVISION: | DATE | CLASSIFIED BY (Typed Name and Signature) | HEARING REFERRED TO: |
|---|---|---|---|---|
| ☐ ADMINISTRATIVE | A-360 K-1 | 12/02/03 | ▶ D. DEXTER, Facility "C" Captain | ☐ HO   ☒ SHO   ☐ SC   ☐ FC |
| ☒ SERIOUS | | | | |

COPIES GIVEN INMATE BEFORE HEARING

| ☒ CDC 115 | BY: (STAFF'S SIGNATURE) | DATE | TIME | TITLE OF SUPPLEMENT |
|---|---|---|---|---|
| | ▶ | 12/05 | 1000 | 1030 FORM |
| ☒ INCIDENT REPORT LOG NUMBER: FC3-03-06-035 | BY: (STAFF'S SIGNATURE) DA READ ▶ | DATE 7/6/04 | TIME 1120 | BY: (STAFF'S SIGNATURE) ▶ | DATE 7/25/04 | TIME 1030 |

HEARING

REFERRED TO ☐ CLASSIFICATION   ☐ BPT/NAEA

| ACTION BY: (TYPED NAME) | SIGNATURE ▶ | DATE | TIME |
|---|---|---|---|
| REVIEWED BY: (SIGNATURE) ▶ | DATE | CHIEF DISCIPLINARY OFFICER'S SIGNATURE ▶ | DATE |
| ☐ COPY OF CDC 115 GIVEN INMATE AFTER HEARING | BY: (STAFF'S SIGNATURE) ▶ | DATE | TIME |

CDC 115 (7/88)

STATE OF CALIFORNIA                                                          DEPARTMENT OF CORRECTIONS

**RULES VIOLATION REPORT - PART C**                                         PAGE____OF____

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| E-46844 | HARRIS | FC-03-06-026R | CENTINELA | 6/16/03 |

☐ SUPPLEMENTAL  ☒ CONTINUATION OF:  ☒ 115 CIRCUMSTANCES  ☐ HEARING  ☐ IE REPORT  ☐ OTHER_____

Dabney's actions reflect you and the other inmates in the cell knew of the planned assault. The confidential source(s) have specifically identified you as the person who initially stood in the cell door of cell C3-149 and watched inmate Bishop, K-27260, C3-112, walk up behind inmate Dabney who was already in the cell. The sources relate you observed Bishop stab inmate Davis in the chest. The confidential sources observed you observe Bishop attempt to strike Davis with the weapon again. The sources have related that Davis fought or pushed his way out of the cell, while you pushed inmates Goffney, Bishop and Dabney back into the cell, preventing Davis from exiting the cell. This can be confirmed by the blood splatter and blood stains discovered on the cell floor by ISU, Crime Scene Investigators. Davis was later observed bloodied and staggering to the Officer's Podium, wherein Custody Staff activated their personal alarms. You were later discovered in a building schematic developed by custody staff sitting near the computer area of the "C" section dayroom floor. Additional information provided by the sources have related you orchestrated the battery between Davis, C3-150 and inmate Bishop, K-27260, C3-112, and Goffney, J-71938, C3-, 112. The information has disclosed that the battery was supposed to have happened on the yard between inmate Davis and Bishop, per your instructions. Sources have specifically stated that your influence on the yard, military discipline, pretension and prior participation in gang and staff assaults throughout the state institutions has inmates intimidated and fearful of not refusing your request to participate in violent acts or behavior. The Confidential Information meets the criteria of California Code of Regulations, Section 3321, "Confidential Information," (1), (2) and (c), (1), (2) and (4). The identity of the Confidential Source(s), and the Safety and Security of the Institution, Centinela State Prison.

**NOTE:** This RVR CDC-115 Log # FC-03-06-026, was ordered Reissue/Rehear on December 08, 2003, by J. Salazar, Associate Warden-Complex II.

Inmate HARRIS is aware of this report.
Inmate HARRIS is not a participant in the Mental Health Delivery System.

N.S. RODRIGUEZ, Correctional Sergeant, ISU

| SIGNATURE OF WRITER | DATE SIGNED |
|---|---|
| | 12/22/03 |

| | GIVEN BY: (Staff's Signature) | DATE SIGNED | TIME SIGNED |
|---|---|---|---|
| ☒ COPY OF CDC 115-C GIVEN TO INMATE | | 12-22-03 | 2000 |

CDC 115-C (5/95)                                                            OSP 99 25082

# Exhibit Cover Sheet

**DESCRIPTION OF EXHIBIT:**   Confidential Information Notice

NUMBER OF EXHIBIT PAGES:   1 Page

# EXHIBIT   G

STATE OF CALIFORNIA                                          DEPARTMENT OF CORRECTIONS
CDC 1030 (12/86)

# CONFIDENTIAL INFORMATION DISCLOSURE FORM

INMATE NUMBER: ___E-46844___          INMATE NAME: ___HARRIS___

1)  Use of Confidential Information.

    Information received from a confidential source(s) has been considered in the:

    a)  CDC-115, Disciplinary Report dated ___6/16/03___ submitted by

    ___N. S. RODRIGUEZ, ISU SERGEANT___
                          STAFF NAME, TITLE

    b)  CDC-114-D, Order and Hearing for Placement in Segregated Housing dated _____

2)  Reliability of Source.

    The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of the institution.
    This information is considered reliable because:

    a)  ☒  This source has previously provided confidential information which has proven to be true.

    b)  ☐  This source participated in and successfully completed a Polygraph examination.

    c)  ☒  More than one source independently provided the same information.

    d)  ☐  This source incriminated himself/herself in a criminal activity at the time of providing the information.

    e)  ☒  Part of the information provided by the source(s) has already proven to be true.

    f)  ☐  Other (EXPLAIN) _____

3)  Disclosure of information received.

    The information received indicated the following: On Monday, June 16, 2003, ISU conducted its investigation
    into the stabbing assault of inmate Davis, P39441, which occurred on June 6, 2003. Confidential information
    disclosed that you specifically were identified as the person who ordered, participated and witnessed the
    stabbing of inmate Davis. Additional information specifically reveals that you were seen speaking with
    inmate Bishop on June 3, 2003 and June 6, 2003. The source(s) state your conversation consisted of
    having Bishop, harass, challenge and eventually stab inmate Davis. See attached RVR CEN-03-06-026.

                          (If additional space needed, attach another sheet.)

4)  Type and current location of documentation. (for example: CDC-128-B of 5-15-86 in the confidential material
    folder).     Confidential Memorandum authored by N. S. Rodriguez, ISU Sergeant, dated June 6, 2003
    and June 11, 2003, located in the confidential section of this inmates C-file.

    _____                          ___2/25/04___
         STAFF SIGNATURE, TITLE                          DATE DISCLOSED

# Exhibit Cover Sheet

**DESCRIPTION OF EXHIBIT:**    Code of Regulations, Title 15 Excerpt

NUMBER OF EXHIBIT PAGES:    1 Page

# EXHIBIT   H

**3323.  Disciplinary Credit Forfeiture Schedule.**

(a)  Upon a finding of guilt of a serious rule violation, a credit forfeiture against any determinate term of imprisonment or any minimum eligible parole date for an inmate sentenced to a term of either 15 or 25-years-to-life shall be assessed within the ranges specified in (b) through (h) below.

(b)  Division "A-1" offenses; credit forfeiture of 181–360 days.

(1)  Murder, attempted murder, and solicitation of murder. Solicitation of murder shall be proven by the testimony of two witnesses, or of one witness and corroborating circumstances.

(2)  Manslaughter.

(3)  Battery causing serious injury.

(4)  Attempted battery or battery with a deadly weapon or caustic substance.

(5)  Rape, attempted rape, sodomy, attempted sodomy, oral copulation, and attempted oral copulation against the victim's will.

(6)  Taking a hostage.

(7)  Escape with force or violence.

(8)  Possession or manufacture of a deadly weapon or explosive device.

(c)  Division "A-2" offenses; credit forfeiture of 151–180 days

(1)  Arson involving damage to a structure.

(2)  Possession of flammable, explosive, or combustible material with intent to burn any structure or property.

(3)  Solicitation of battery with a deadly weapon or battery by means of force likely to produce serious injury, arson, or a forcible sex act.

(4)  Destruction of state property valued in excess of $400 during a riot or disturbance.

(5)  Any other felony involving violence or injury to a victim not specifically listed in this schedule.

(6)  Attempted escape with force or violence.

(7)  Distribution of any controlled substance in an institution/facility or contract health facility.

(8)  Conspiracy to commit any Division "A-1" or "A-2" offense.

(d)  Division "B" Offenses; credit forfeiture of 121–150 days

(1)  Attempted battery or battery on a peace officer not involving the use of a weapon.

(2)  Attempted battery or battery on a non-prisoner.

(3)  Threat of force or violence against a public official.

(4)  Escape from any institution or community correctional facility other than a camp or community-access facility.

(5)  Theft, embezzlement, destruction, misuse, alteration, damage, unauthorized acquisition, or exchange of personal property, state funds, or state property valued in excess of $400.

(6)  Unauthorized possession or control of any controlled substance, including marijuana, or controlled medication in an institution/facility or contract health facility.

(A)  Progressive disciplinary credit forfeiture for violations described in (6) above are as follows:

1.  Credit forfeiture of 121–130 days for the first offense.

2.  Credit forfeiture of 131–140 days for the second offense.

3.  Credit forfeiture of 141–150 days for the third offense.

(7)  Any felony not involving violence or the use of a weapon not listed in this schedule.

(8)  Conspiracy to commit any Division "B" offense.

(e)  Division "C" offenses; credit forfeiture of 91–120 days.

(1)  Escape without force from a camp or community-access facility.

(2)  Attempted escape without force from an institution or community correctional facility other than a camp or community-access facility.

(3)  Unauthorized possession of materials or substances altered from their original manufactured state or purpose and which can be made into a weapon, explosive or explosive-making material, poison, caustic substance, or any destructive device. Examples include but are not limited to metal, paper, plastic, wood, and wire.

(4)  Furnishing equipment for or aiding and abetting an escape or escape attempt.

(5)  Extortion.

(6)  Bribery.

(7)  Solicitation of extortion, bribery, or forgery.

(8)  Arson.

(9)  Forgery, falsification, or alteration of any official record or document prepared or maintained by the department which could affect a term of imprisonment.

(10)  Possession of any narcotic, drug, or controlled substance in a community-access facility.

(11)  The fermentation or distillation of materials in a manner consistent with the production of alcohol or the physical possession of alcohol in an institution/facility or contract health facility.

(12)  Conspiracy to commit any Division "C" offense.

(f)  Division "D" offenses; credit forfeiture of 61–90 days.

(1)  Being under the influence of alcohol or other intoxicant not defined as a controlled substance in an institution/facility or contract health facility; or refusing to provide a urine specimen for the purpose of testing for the presence of controlled substance(s).

(2)  Possession of any container, device, contrivance, instrument, or paraphernalia intended for unlawful injection or consumption of narcotics, drugs, or alcoholic beverages.

(3)  Participating in a riot, rout, or unlawful assembly.

(4)  Inciting a riot.

(5)  Indecent exposure.

(6)  Willfully resisting, delaying, or obstructing any peace officer in the performance of duty.

(7)  Late return from a temporary community leave.

(8)  Attempted battery or battery on a prisoner with no serious injury.

(9)  Mutual combat with no serious injury where the aggressor cannot be determined.

(10)  Conspiracy to commit any Division "D" offense.

(g)  Division "E" offenses; credit forfeiture of 31–60 days.

(1)  Theft, embezzlement, destruction, misuse, alteration, damage, unauthorized acquisition or exchange of personal property, state funds or state property valued at more than $50 but less than $400.

(2)  Possession or manufacture of alcoholic beverages or intoxicating substances in a community-access facility.

(3)  Consensual participation in sodomy or oral copulation.

(4)  Forgery or falsification or alteration of any government document or record not affecting an inmate's term of imprisonment.

(5)  Gambling in an institution, community correctional facility, or camp other than a community-access facility.

(6)  Refusal to provide blood specimens, a saliva sample, or palm and thumb print impressions pursuant to Penal Code sections 295 through 300.3, after receiving written notification in accordance with PC section 298.1 that they must be provided.

# Exhibit Cover Sheet

DESCRIPTION OF EXHIBIT:    BISHOP/GOFFNEY Disciplinary Notice Excerpts

NUMBER OF EXHIBIT PAGES:    2 Pages

# EXHIBIT   I

STATE OF CALIFORNIA                                                            DEPARTMENT OF CORRECTIONS
                                                                               PAGE____ OF____
RULES VIOLATION REPORT - PART C

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| K27260 | BISHOP | FC-03-06-023 | CEN IV | 05/16/03 |

| ☐ SUPPLEMENTAL | ☐ CONTINUATION OF: | ☐ 115 CIRCUMSTANCES | ☐ HEARING | ☐ IE REPORT | ☐ OTHER_____ |

continuing to place personal property on the upper bunk and stabbed inmate Davis in the chest. The sources have
related that you specifically stabbed Davis one time in the chest area and made two additional attempts to stab
Davis. As a result, of your attempts, sources state Dabney grabbed your hand that held the stabbing weapon. This
information was consistent when Custody Staff discovered Dabney on the dayroom floor with an injury to his lower
back area. The confidential informants observed you trying to pull the weapon away from inmate Dabney's hand.
The sources have related Davis fought or pushed his way out of the cell, while you and inmate Harris, Goffney were push-
ing or blocking his exit from the cell. Davis was stabbed and staggered out of the cell. Davis was later observed
bloodied and staggering towards the Officer's Podium, where in Custody Staff activated their personal alarms. You
were later discovered in a building schematic developed by custody staff sitting near the "C" section dayroom floor area.
Subsequently, ISU staff conducted unclothed body searches of the inmates on the dayroom. It was ISU Officer F. Holt
observations; you appeared extremely nervous and shaking profusely while being questioned by ISU staff. A search
of your cell later that evening, resulted in the discovery of one blood stained "Fila," brand of tennis shoe.in your
cell. A review of your C.A. 160 Inmate Property Card reflected that you owned that type of brand of tennis shoe.
Additional information developed in the investigation revealed that you knew and were directed to assist inmate
Goffney in physically/assaulting inmate Davis on the orders of Inmate Harris I-46844, C4-135 the day before this
incident. Inmate Confidential Information meets the criteria of California Code of Regulations, Section 3321,
"Confidential Information," (1), (2) and (c), (1), (2) and (4). The identity of the Confidential Source(s),
inmates cannot be disclosed to you without jeopardizing and endangering the safety of the inmate(s) and the
Safety and Security of the Institution, Centinela State Prison.

| SIGNATURE OF WRITER | | DATE SIGNED |
|---|---|---|
| GIVEN BY: (Staff's Signature) | DATE SIGNED | TIME SIGNED |
| ☐ COPY OF CDC 115-C GIVEN TO INMATE | | 6/3/03 | 1000HRS |

CDC 115-C (5/95)                                                              OSP 99 2508

STATE OF CALIFORNIA                                                                                    DEPARTMENT OF CORRECTIONS

                                                                                                            PAGE____OF____
**RULES VIOLATION REPORT - PART C**

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| J-71938 | GOFFNEY | FC-03-06-027 | CEN IV | June 16, 2003 |

☐ SUPPLEMENTAL  ☒ CONTINUATION OF:  ☒ 115 CIRCUMSTANCES  ☐ HEARING  ☐ IE REPORT  ☐ OTHER_____

and inmates Harris, Bishop were pushing or blocking Davis from exiting the cell. As a result Davis was stabbed and staggered our of the cell. Davis was later observed bloodied and staggering to the Officer's Podium, where in Custody Staff pressed their personal alarms. You were later discovered in a building schematic developed in the Investigation revealed that you knew and were directed to assist inmate Bishop in physically/assaulting inmate Davis on the orders of inmate Harris E-46844, C4-135, the day before this incident. The Confidential Information meets the criteria of California Code of Regulations, Section 3321, "Confidential Information," (1), (2) and (c), (1), (2) and (4). The identity of the Confidential Source(s), inmates cannot be disclosed to you without jeopardizing and endangering the safety of the inmate(s) and the Safety and Security of the Institution, Centinela State Prison.

| SIGNATURE OF WRITER | | DATE SIGNED |
|---|---|---|
| | | 6-23-03 |
| GIVEN BY: (Staff's Signature) | DATE SIGNED | TIME SIGNED |
| | 6/24/03 | 1315 HRS |

☐ COPY OF CDC 115-C GIVEN TO INMATE

CDC 115-C (5/95)                                                                          OSP 99 25082

# Exhibit Cover Sheet

**DESCRIPTION OF EXHIBIT:**    Charge II Disciplinary Hearing Adjudication

**NUMBER OF EXHIBIT PAGES:**    5 Pages

# EXHIBIT   J

STATE OF CALIFORNIA

# RULES VIOLATION REPORT   FC 9/28/04   Life

DEPARTMENT OF CORRECTIONS

| CDC NUMBER | INMATE'S NAME | | RELEASE/BOARD DATE | INST. | HOUSING NO. | LOG NO. |
|---|---|---|---|---|---|---|
| E-46844 | HARRIS | | LIFER | CEN-IV | C4-135L | FC-03-06-026R |

| VIOLATED RULE NO(S). | SPECIFIC ACTS | LOCATION | DATE | TIME |
|---|---|---|---|---|
| 3005 (c) FORCE AND VIOLENCE | PARTICIPATION IN A STABBING / BATTERY ON A INMATE WITH SERIOUS INJURY | FAC 'C' | 6/16/03 | 1100 HOURS |

CIRCUMSTANCES

On Monday, June 16, 2003, the Investigative Services Unit (ISU) at Centinela State Prison concluded the investigation into the stabbing assault of inmate Davis, P-93441, C3-150, that occurred on June 6, 2003, in Building C3. The investigation, crime scene evidence, building schematic of inmates located on the dayroom floor and information provided through confidential inmate interviews has identified you as a suspect in the stabbing assault. Cell C3-149, was discovered with large amounts of blood splatter on the walls and floors. Additionally, the personal property, televisions and other appliances were placed in the upper bunk area of the cell, making this suspicious in that this area is not a designated area for these types of appliances. Confidential information developed through inmate interviews, specifically reflect that you were observed initially at the cell door while inmates Bishop, K-27260, C3-112, Goffney, J-71398, C3-112, Dabney, K-55204, C3-146, and Davis, P-93441, C3-150, were in the cell. While you were at the cell door, you observed inmate Dabney initially arranging or placing personal property (appliance, television) on the upper bunk of his cell, removing the personal properties from their designated areas of the cell, preventing damage to the property.

CONTINUED ON PART C

| REPORTING EMPLOYEE (Typed Name and Signature) | DATE | ASSIGNMENT | RDO'S |
|---|---|---|---|
| ▶ N.S. RODRIGUEZ Correctional Sergeant | 12/22/03 | ISU SERGEANT | S/S/H |

| REVIEWING SUPERVISOR'S SIGNATURE | DATE | ☑ INMATE SEGREGATED PENDING HEARING | |
|---|---|---|---|
| ▶ C. PARKS, Lieutenant | 12-27-03 | DATE 6/13/03   LOC. C6-135 | |

| CLASSIFIED | OFFENSE DIVISION: | DATE | CLASSIFIED BY (Typed Name and Signature) | HEARING REFERRED TO |
|---|---|---|---|---|
| ☐ ADMINISTRATIVE ☒ SERIOUS | 181-360 A-1 | 12/22/03 | ▶ D. DEXTER, Facility "C" Captain | ☐ HO ☒ SHO ☐ SC ☐ FC |

COPIES GIVEN INMATE BEFORE HEARING

| ☒ CDC 115 | BY: (STAFF'S SIGNATURE) | DATE | TIME | TITLE OF SUPPLEMENT | | |
|---|---|---|---|---|---|---|
| | ▶ R. Ong | 12/24/03 | 2000 | 1030 FORM | | |
| ☒ INCIDENT REPORT LOG NUMBER: EN-FC3 03-06-0225 | BY: (STAFF'S SIGNATURE) | DATE | TIME | BY: (STAFF'S SIGNATURE) | DATE | TIME |
| | | 7/9/04 | 1120 | | 7/25/04 | 1030 |

HEARING

This hearing convened on 8/7/04, at 1320 hours, I introduced myself to Inmate HARRIS as the Senior Hearing Officer, Lt. L. WHITE. This Inmate is not a participant in the Mental Health Services Delivery System at the CCCMS/EOP/MHCB level of care, Inmate was not assigned a Staff Assistant. Inmate HARRIS stated that his health was good, hearing/vision is not impaired. Inmate HARRIS acknowledged receipt of this CDC-115 RVR, and the following associated documents: CDC-115A, CDC-115 PART C; INVESTIGATIVE EMPLOYEE'S REPORT, 837-CRIME/INCIDENT REPORT, CDC-1030 CONFIDENTIAL INFORMATION, more than twenty four (24) hours prior to the start of this hearing. These reports as well as the disciplinary charge of PARTICIPATION IN A STABBING BATTERY ON AN INMATE WITH SERIOUS INJURY were reviewed with Inmate HARRIS at this hearing. Inmate HARRIS requested a postponement of the hearing as he had objections to the Investigative Employee's Report. Those objections were, as follows: Inmate HARRIS stated relevant inmate witnesses were not interviewed (MAYES, C-63464, no longer at Centinela; Cunningham, T-57853, C4-110L). Both inmates were identified as being in C3 during the incident; however the SHO finds that additional inmate statements/testimony would not be beneficial to HARRIS' defense. Inmate Harris requested additional evidence (photos of blood splatter in cell C3-149 and a white tee shirt stained with blood). The SHO finds the evidence unnecessary as Harris concurs that Davis was stabbed and Davis did bleed. The white tee shirt was not Harris'. Inmate Harris requested additional information (Facility "C" yard schedule and Education schedules and attendance records). (CONTINUED ON PART C)

REFERRED TO  ☐ CLASSIFICATION  ☐ BPT/NAEA

| ACTION BY: (TYPED NAME) | SIGNATURE | DATE | TIME |
|---|---|---|---|
| Lt. L. WHITE, Senior Hearing Officer | | 9/17/04 | 0830 |

| REVIEWED BY (SIGNATURE) | DATE | CHIEF DISCIPLINARY OFFICER'S SIGNATURE | DATE |
|---|---|---|---|
| ▶ D. DEXTER, Facility 'C' Captain | 9/24/04 | J. SALAZAR, Chief Disciplinary Officer | 9/27/04 |

| ☒ COPY OF CDC 115 GIVEN INMATE AFTER HEARING | BY: (STAFF'S SIGNATURE) | DATE | TIME |
|---|---|---|---|
| | ▶ | 9/29/04 | 1830 |

CDC 115 (7/88)

Entered in ARDTS

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

**RULES VIOLATION REPORT - PART C**

PAGE 1 OF 4

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| E-46844 | HARRIS | FC-03-06-026R | CENTINELA | 8/7/04 |

☐ SUPPLEMENTAL  ☒ CONTINUATION OF:  ☐ 115 CIRCUMSTANCES  ☒ HEARING  ☐ IE REPORT  ☐ OTHER_____

The SHO finds that the requested information is irrelevant to the specific charge. As a member of the Men's Advisory Council, Harris had access to all areas of Facility "C" and his movements were not had been tracked. Inmate Harris stated the statements from staff witnesses were not adequate (Delgadillo and Bach). The SHO reviewed the I.E. report and finds their statements to be adequate. Inmate Harris could not elaborate on what statements were left off the report or what he expected them to say.

The SHO is satisfied with the Investigative Employee's (A. Flores) report. Officer Flores interviewed 19 staff members and 14 inmates for the report. Officer Flores also retrieved the evidence Harris had requested. Officer Flores put a lot of time and effort into the I.E. Report and it was well done. The SHO advised Harris there were no grounds to postpone the hearing. Inmate Harris stated that he was ready to proceed and he understood all of the documentation.

**DISTRICT ATTORNEY:** This matter was referred for felony prosecution. Inmate HARRIS did request this hearing be postponed pending outcome of the referral. On July 9, 2004, Facility "C" was advised that no referral to the District Attorney would be made.

**DUE PROCESS:** This disciplinary was served on Inmate HARRIS within 15 days of discovery and the hearing was held within 30 days of D.A. referral. Time constraints have been met. There are no due process issues.

**STAFF ASSISTANT:** Was not assigned. Inmate HARRIS is not illiterate, claims High School Graduate, can read and write, is English speaking, the issues are not complex, is not a participant in the Mental Health Services Delivery System, and did not require a confidential relationship in preparing his defense.

**INVESTIGATIVE EMPLOYEE:** Was assigned, the issues are not complex, the inmate's housing status did preclude his gathering evidence; additional information was necessary for a fair hearing. Inmate HARRIS received a copy of the I.E. Report and had objections to the report; as noted above.

**PLEA:** Inmate HARRIS plead NOT GUILTY, and gave the following testimony as his defense: "Although the 837 incident report reflect I was within Housing Unit on June 6, 2003, I deny the allegation of my participation in an assault against inmate Davis, P-93441, on this date. As an inmate assigned to Facility "C", I was a member of the Men's Advisory Counsel, Executive Body. As a ranking MAC member, I was allowed access to all the Facility's Housing Units up to 1600 hours and including 2045 hours with the exception of the evening Institutional count. During the week of June 2, 2003 the Institution conducted a Pizza and Beverage food sale. Myself, The Mac Chairman, and vice Chairman inmate Brooks, K-16234, facilitated the distribution of the sales applications. Thereafter, until the forms were collected, I toured the Housing Units answering questions concerning the applications and retrieving those which were completed within this capacity, On June 6, 2003, I entered Unit C-3 and proceeded to the "C" side bench area awaiting staff to secure the building before informing them of what I was there to do. Immediately afterwards, I heard the unit alarm activated and while looking around I observed inmate Davis walking towards the podium bleeding. Responding staff immediately arrived and assisted in covering the building until ISU determined a crime scene., myself and two other inmates also residing in other Housing Units after being searched were then escorted to our assigned living quarters. The following week I was placed in the prison's segregation unit for investigation. To this end prior to observing Davis, I had no knowledge of any unlawful activity occurring on June 6, 2003.

LT. L. WHITE, SENIOR HEARING OFFICER

| SIGNATURE OF WRITER | | DATE SIGNED |
|---|---|---|
| | | 9/17/04 |

| | GIVEN BY: (Staff's Signature) | DATE SIGNED | TIME SIGNED |
|---|---|---|---|
| ☒ COPY OF CDC 115-C GIVEN TO INMATE | K. DU | 9/29/04 | 1830 |

CDC 115-C (5/95)

OSP 99 25082

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

**RULES VIOLATION REPORT - PART C**

PAGE 2 OF 4

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| E-46844 | HARRIS | FC-03-06-026R | CENTINELA | 8/7/04 |

☐ SUPPLEMENTAL  ☒ CONTINUATION OF:  ☐ 115 CIRCUMSTANCES  ☒ HEARING  ☐ IE REPORT  ☐ OTHER_____

**WITNESSES:** Inmate HARRIS did request witnesses. C/O Bach, C/O Delgadillo, and Inmate Davis, P-93441. **SHO NOTES:** Inmate Harris requested Officers Bach and Delgadillo as witnesses. The SHO advised Harris that both Officers had already given statements for the I.E. Report. The SHO asked Harris what specific questions did he have for the Officers and Harris stated he would accept their I.E. report statements. Inmate Harris requested the stabbing victim, Inmate DAVIS as a witness. The SHO would not call Davis as a witness, as he was the victim in the incident. Also, Davis refused to cooperate with the Investigative Employee. The SHO asked Harris if he wanted the reporting employee, Sergeant Rodriguez, or the Investigative employee, Officer Flores, called in as witnesses, and he declined. The SHO also reviewed the 34 written statements in the I.E. report, and all of those facts have been considered during the hearing.

**EVIDENCE:** Submitted by inmate Harris included Education Schedules, Class Attendance lists, Yard schedules and the I.E. report from Harris' original R.V.R. The SHO advised Harris that the evidence was irrelevant to his charge of "Participating in a Stabbing Battery". Inmate Harris dwelled on the significance of the events of June 3 and 5, 2003. The SHO also reminded Harris that the charge was not "Conspiracy to Stab". The SHO also informed Harris that the original I.E. report had been replaced with Flores report of August 4, 2004, due to the reissue/rehear of the Rules Violation Report.

**VIDEO TAPE:** The Facility "C" Yard video tape was not used for evidentiary purposes. The time that Harris entered C3 is irrelevant to the charge.

**FINDINGS:** Inmate HARRIS was found GUILTY of violating CCR Section 3005 (c), a Division "A-1" offense; the specific charge of PARTICIPATION IN A STABBING BATTERY ON AN INMATE WITH SERIOUS INJURY. The preponderance of evidence submitted and considered in reaching a finding substantiates the charge and supports the factors in aggravation. The finding is based upon the following:

The RVR by: Sergeant N. Rodriguez, which states in part, "On June 16, 2003, the Investigative Services Unit (ISU) concluded an investigation into the stabbing assault of inmate Davis, P-93441, that occurred on June 6, 2003, in Building C3. The investigation, crime scene evidence, building schematic of inmates on the dayroom floor, and information provided through confidential inmate interviews identified Harris, M. E-46844, C4-135L, as a suspect in the stabbing assault. Confidential information developed through inmate interviews; specifically reflect that Harris was observed at the cell door while inmates Bishop, Goffney, Dabney and Davis were in the cell. While Harris was at the cell door, Dabney placed personal property on the upper bunk of his cell, moving items from their designated areas of the cell, apparently to prevent damaging the items. Dabney's actions indicate Harris and the other inmates had previously planned the stabbing battery on Davis. The confidential source(s) identified Harris as standing at the cell door of cell C3-149 as Bishop stabbed Davis in the chest. Inmate Bishop attempted to stab Davis again. Inmate Davis tried to push his way out of the cell, when Harris pushed Goffney, Bishop, and Dabney back into the cell, preventing Davis from exiting the cell. This was confirmed by the blood splatter and blood stains discovered on the cell's floor by ISU crime scene investigators. Custody staff observed Davis bloodied and staggering towards the podium, and activated the building's audible alarm. Inmate Harris was placed on the building schematic by custody staff sitting near the computer area of the "C" section dayroom floor. Additional information has related that Harris orchestrated the stabbing battery on Davis by Bishop and Goffney. The information also indicates the stabbing was supposed to have occurred on the yard with Bishop stabbing Davis per Harris' instructions.

LT. L. WHITE, SENIOR HEARING OFFICER

| SIGNATURE OF WRITER | | DATE SIGNED |
|---|---|---|
| | | 9/17/04 |

☒ COPY OF CDC 115-C GIVEN TO INMATE

| GIVEN BY: (Staff's Signature) | DATE SIGNED | TIME SIGNED |
|---|---|---|
| | 9/29/04 | 1830 |

CDC 115-C (5/95)

OSP 99 25082

STATE OF CALIFORNIA                                                                    DEPARTMENT OF CORRECTIONS
**RULES VIOLATION REPORT - PART C**                                                         PAGE 3 OF 4

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| E-46844 | HARRIS | FC-03-06-026R | CENTINELA | 8/7/04 |

☐ SUPPLEMENTAL   ☒ CONTINUATION OF: ☐ 115 CIRCUMSTANCES ☒ HEARING ☐ IE REPORT ☐ OTHER_____

**The RVR by:** Sergeant N. Rodriguez, (CONTINUED)
Sources have specifically stated Harris' influence on the yard, military discipline, pretension, and prior participation in gang assaults throughout state institutions have inmates intimidated and fearful of refusing his request to participate in violent acts or behavior. The Confidential Information meets the criteria of California Code of Regulations, Section 3321, "Confidential Information", (1), (2) and (c), (1), (2) and (4)."

**Supplemental Reports by:** Sergeant T. Richards, stating in part: "I responded to an alarm in building C3. I observed inmate Davis was holding his chest and his torso was covered with blood. I asked Davis what happened and he stated, "I have been stabbed really bad."

**Supplemental Reports by:** M.T.A. L. Banks, stating in part: "Inmate Davis arrived at Central Health E. R. by electric cart. I assisted the doctor by stabilizing Davis for a stab wound. Inmate Davis was transported 'Code 3' to El Centro Regional."

**Supplemental Reports by:** C/O R. Vela, stating in part: "I reported to the Facility "C" medical clinic where I assisted in photographing Dabney for possible injuries. Inmate Dabney had a scratch on his left tricep and right back side hip."

**Supplemental Reports by:** C/O F. Holt, stating in part: "I was conducting an unclothed body search on inmate Bishop. I instructed him to place his hands straight out in front of himself with his palms down. As I inspected Bishop's knuckles for injuries, I noticed his hands shaking uncontrollable. I also noticed the palms of Bishop's hands to be extremely dampened. I asked Bishop why he was so shaky, and his response was, "No I'm cool."

**Supplemental Reports by:** C/O E. Montejano, stating in part: "I was instructed by ISU Sergeant Rodriguez to start a housing unit schematic. I (did) a schematic of the crime scene, which was "C" section dayroom floor." (The schematic diagram indicates 26 inmates within the boundaries of the crime scene with another five inmates on the upper tier."

**Supplemental Reports by:** C/O D. Sanchez, stating in part: "I proceeded to search Dabney's clothing. While searching the left tennis shoe (Adidas) I discovered a red stain on the lace. I conducted 'a 'Hemident' test on the stain. The test proved positive for blood."

**The CDC-837-Crime/Incident Report** Log # CEN-FC3-03-06-0135, authored by Lieutenant (A) P. Falconer was reviewed at the time of the hearing, along with the supplemental reports.

**The Investigative Report On The CDC-115A (and C)** which states in part: Sergeant Rodriguez, reiterated his use of confidential sources/information in the conclusion of his investigation. Inmate Harris' questions to the remaining staff witnesses was what kind of inmate he is. Staff was asked if Harris was disrespectful, created problems or confrontational. All of which are irrelevant to the charge against him. Inmate Davis was contacted by Officer Flores at Ironwood State Prison by telephone. Inmate Davis refused to answer any questions and stated, "I don't know what you're talking about." Inmate Dabney's statement included the following: "I am personally aware that (Harris) had no involvement in the charged offense. At no time did I observe Harris order, participate, or orchestrate as assault against Davis. Inmates Harris and Davis are intimately known to me as they are my constituents from (the) streets. Several of the inmate witnesses state they observed Harris by the water fountain.

LT. L. WHITE, SENIOR HEARING OFFICER

| SIGNATURE OF WRITER | | | DATE SIGNED |
|---|---|---|---|
| _L. White_ | | | 9/17/04 |
| GIVEN BY: (Staff's Signature) | DATE SIGNED | TIME SIGNED | |
| _Robles_ | 9/29/04 | 1830 | |

☑ COPY OF CDC 115-C GIVEN TO INMATE

CDC 115-C (5/95)                                                                    OSP 99 25082

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

**RULES VIOLATION REPORT - PART C**

PAGE 4 OF 4

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| E-46844 | HARRIS | FC-03-06-026R | CENTINELA | 8/7/04 |

| ☐ SUPPLEMENTAL | ☒ CONTINUATION OF: | ☐ 115 CIRCUMSTANCES | ☒ HEARING | ☐ IE REPORT | ☐ OTHER_____ |

Inmate HARRIS was informed confidential information was going to be considered via confidential information disclosure CDC form 1030's and that the SHO reviewed the information provided. This confidential information does meet the criteria established in CCR 3321, and finds that the information has substantive evidence to support the charge.

CONFIDENTIAL INFORMATION: CDC-1030 Dated JUNE 16, 2003, authored by Sergeant N. Rodriguez, stating, on June 16, 2003, ISU concluded the investigation into the stabbing assault of inmate Davis, which occurred on June 6, 2003. Confidential information disclosed that Harris specifically was identified as the person who ordered and participated in the stabbing of Davis. The confidential memorandums authored by Sergeant N. Rodriguez, dated June 6, 2003, and June 16, 2003, located in the confidential section of Harris' central file. The SHO notes that they meet the criteria of CCR 3321 (2) (A) This source has previously provided information which has proven to be true; (C) More than one source independently provided the same information; (E) Part of the information provided by the source had already proven to be true. The memo of June 6, 2003, indicates the following: "On June 6, 2003, inmate Davis, P-93441, was observed exiting cell C3-149, holding his chest. Inmate Davis was observed with blood on his chest. Inmate Bishop then exited cell C3-149 behind Davis and sat on the dayroom floor near the inmate telephones. Inmate Bishop was wiping his hands and body with a tee shirt, disposing of it near the wall. Inmate Harris had told/ordered Bishop and Davis to fight earlier on the yard. When the audible alarm was activated, Harris and Dabney walked over to the computer area." The memo of June 16, 2003, indicates the following: "On June 6, 2003, inmates Bishop, Dabney and Davis were inside cell C-30149, when Bishop stabbed Davis in the chest. Inmate Harris and Goffney were standing in the doorway of the cell. Inmate Goffney then entered the cell to assist Bishop." The memo indicates that on several occasions prior to the incident, Harris is observed talking to both inmates Bishop and Davis separately, to stage the fight between them. Inmate Harris is identified as being the most influential 'Crip' on Facility "C". Inmate Harris was informed confidential information was going to be considered via Confidential Information Disclosure Form, CDC-1030, and that the SHO reviewed the information provided. This information meets the criteria established by CCR 3321 and finds that the information has substantive evidence to support the charge of "Participation in a Stabbing Battery on an Inmate, with Serious Injury."

SHO NOTES: The serious injury to inmate Davis was a stab wound, approximately one inch to the upper left area of the anterial chest wall, resulting in Davis losing a large quantity of blood. Inmate Davis was taken 'code three' by ambulance to ECRMC. Inmate Davis received an emergency blood transfusion due to the loss of blood. Inmate Davis was then air evacuated to UCSD Medical Center where he was placed in the Intensive Care Unit for further treatment and recovery.

DISPOSITION: Assessed 360 days forfeiture of behavioral credits consistent with a Division "A-1" offense (refer to CCR §3323). PARTICIPATION IN A STABBING BATTERY ON AN INMATE WITH SERIOUS INJURY.

Inmate HARRIS was Counseled and reprimanded concerning the use of Force and violence as a threat to institutional security.

Referred to UCC / ICC for Program Review. Consideration of a SHU Term.

Inmate DAVIS, P-93441, to be noted on inmate HARRIS, E-46844, CDC-812 file as an enemy.

Inmate HARRIS was informed that the disposition of this Rules Violation Report would not become final until reviewed and approved by the Chief Disciplinary Officer. Inmate HARRIS was informed that he would receive a final copy upon approval of the Chief Disciplinary Officer. Inmate HARRIS was advised of his right to appeal the findings of this hearing, and that the first level of appeal has been eliminated on disciplinary issues. Inmate HARRIS was informed that Division A, B, and C credit losses are not restorable.

Lt. L. WHITE, Senior Hearing Officer

| SIGNATURE OF WRITER | | DATE SIGNED |
|---|---|---|
| | | 9/1/04 |

| ☒ COPY OF CDC 115-C GIVEN TO INMATE | GIVEN BY: (Staff's Signature) | DATE SIGNED 9/29/04 | TIME SIGNED 1.850 |

CDC 115-C (5/95)

OSP 99 25082

# Exhibit Cover Sheet

**DESCRIPTION OF EXHIBIT:**    Punitive Segregation Assessment/Imposition

NUMBER OF EXHIBIT PAGES:    1 Page

# EXHIBIT    K

STATE OF CALIFORNIA

**SHU TERM ASSESSMENT WORKSHEET**

CDC 629-A (Rev 3/96)

DEPARTMENT OF CORRECTIONS

FC-03-06-026R

| CDC NUMBER | NAME (LAST, FIRST, MI) | INSTITUTION | UNIT |
|---|---|---|---|
| E46844 | HARRIS, MARK | CEN | ASU/C |

FC-03-06-026R

**1. RULE VIOLATION RESULTING IN SHU TERM ASSESSMENT**

(If more than one SHU assessable offense and no SHU term has been established, use most serious as base term and less serious as aggravation.)

a. Rule No. **3005(c)** Date Issued **06/16/03** Title **FORCE & VIOLENCE**

b. Specific Act **ASSAULT ON AN I/M WITH A WEAPON OR PHYSICAL FORCE CAPABLE OF CAUSING**
(Must be an offense on SHU Term Assessment Chart.) **MORTAL OR SERIOUS INJURY**

c. List range of months for the offense using
SHU Time Computation Table.................................... **6** **15** **24**
LOW EXP HIGH

d. Enter "expected" (mid-range) years, months, days of confinement........................ **15**
YR MO DAYS

**2. FACTORS IN MITIGATION AND AGGRAVATION**

(Enter "NONE" for item 2c or indicate amount of time. Describe factors and document sources. Use only factors listed in the DOM 62050 or concurrent offenses.)

a. Mitigating Factors. Time subtracted for mitigations.............- **NONE**
YR MO DAYS
1)
2)
3)

b. Aggravating Factors. Time added for aggravations................+ **8**
1) **THE MISCONDUCT WAS PLANNED/EXECUTED AS OPPOSED** YR MO DAYS
2)   **TO SITUATIONAL/SPONTANEOUS**
3)

c. Total time added or subtracted.........................................= **+ 8**
YR MO DAYS

**3. TOTAL SHU CONFINEMENT TIME ASSESSED.......................................** **23**
(Subtract or add time for mitigation or aggravation to expected, item 1d plus or minus 2c) YR MO DAYS

**4. DATE OF ADMINISTRATIVE SEGREGATION CONFINEMENT/VIOLATION.....** ●**03** **6** **13**
YR MO DAY

**5. MAXIMUM DATE OF RELEASE FROM SHU................................................** **05** **5** **13**
(Add total time assessed to date of confinement, item 3 plus 4) YR MO DAY

**6. MINIMUM SHU CONFINEMENT TIME TO SERVE......................................** **1** **5** **08**
(Enter 75% of the total SHU time (item 3) using the SHU Time Computation Table) YR MO DAYS
a. Date of confinement/violation (item 4)......................................... **03** **6** **13**
YR MO DAY

**7. MINIMUM ELIGIBLE RELEASE DATE (MERD)..........................................** **04** **11** **21**
(Add the minimum SHU time to the date of confinement, item 6 plus 6a) YR MO DAY

**8. FORFEITURE OF GOOD CONDUCT CREDITS FOR SUBSEQUENT MISCONDUCT**

(Enter "NONE" for item 8a or indicate the amount of time lost and describe and document the misconduct for which credit is being forfeited). SHU inmates may forfeit up to 45 days of clean conduct credits for each disciplinary infraction that is not serious enough to warrant the assessment of a subsequent or concurrent SHU term. Such forfeiture may be assessed against credits already earned or future credits.

a. Time forfeited for CDC 115 - Dated:_____ ...................................
YR MO DAYS
1)
2)

b. **ADJUSTED MERD** Cannot Exceed MAXIMUM..............................................
(Add the amount of time forfeited to the prior MERD, item 7 plus 8a) YR MO DAY

| NAME AND TITLE OF STAFF COMPUTING TERM | DATE SIGNED | DATE ICC ESTABLISHED TERM |
|---|---|---|
| R. E. JOHNSON, CCII | 10/14/2004 | 10/14/04 |

DISTRIBUTION: ORIGINAL - CENTRAL FILE;   YELLOW - INMATE;   PINK - AUDITOR

*Assess + Impose*
*an Agg 23 month*
*SHU Term*

# Exhibit Cover Sheet

DESCRIPTION OF EXHIBIT:    Investigative Employee Report

NUMBER OF EXHIBIT PAGES:    9 Pages

# EXHIBIT   L

STATE OF CALIFORNIA · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · DEPARTMENT OF CORRECTIONS

**SERIOUS RULES VIOLATION REPORT**

| CDC NUMBER | INMATE'S NAME | VIOLATED RULE NO(S). | DATE | INSTITUTION | LOG NO. |
|---|---|---|---|---|---|
| E-46844 | HARRIS | 3005 (c) | 6/16/03 | CENTINELA | FC-03-06-026R |

REFERRAL FOR FELONY PROSECUTION IS LIKELY IN THIS INCIDENT   [X] YES   [ ] NO

### POSTPONEMENT OF DISCIPLINARY HEARING

| | | INMATE'S SIGNATURE | DATE |
|---|---|---|---|
| [ ] | I DO NOT REQUEST my hearing be postponed pending outcome of referral for prosecution. | ▶ | |
| [X] | I REQUEST my hearing be postponed pending outcome of referral for prosecution. | ▶ X *(signature)* | X 12-22- |

| DATE NOTICE OF OUTCOME RECEIVED | DISPOSITION | | |
|---|---|---|---|
| 7/7/04 | No REFERRAL - VICTIM/WITNESS WILL NOT TESTIFY | | |

| | | INMATE'S SIGNATURE | DATE |
|---|---|---|---|
| [ ] | I REVOKE my request for postponement. | ▶ | |

### STAFF ASSISTANT

| STAFF ASSISTANT | | INMATE'S SIGNATURE | DATE |
|---|---|---|---|
| [ ] REQUESTED | [ ] WAIVED BY INMATE | ▶ | |

| | DATE | NAME OF STAFF | |
|---|---|---|---|
| [ ] ASSIGNED | | | |

| | REASON | | |
|---|---|---|---|
| [X] NOT ASSIGNED | ~~DOES~~ / DOES NOT MEET CRITERIA PER CCR § 3315(d)(2) | | |

### INVESTIGATIVE EMPLOYEE

| INVESTIGATIVE EMPLOYEE | | INMATE'S SIGNATURE | DATE |
|---|---|---|---|
| [ ] REQUESTED | [ ] WAIVED BY INMATE | ▶ | |

| | DATE | NAME OF STAFF | |
|---|---|---|---|
| [X] ASSIGNED | 8/4/04 | C/O A. FLORES | |

| | REASON | | |
|---|---|---|---|
| [ ] NOT ASSIGNED | DOES / ~~DOES NOT~~ MEET CRITERIA PER CCR § 3315(d)(1) | | |

EVIDENCE/INFORMATION REQUESTED BY INMATE:

### WITNESSES

WITNESSES REQUESTED AT HEARING (IF NOT PRESENT, EXPLAIN IN FINDINGS)

[ ] REPORTING EMPLOYEE   [ ] STAFF ASSISTANT   [ ] INVESTIGATIVE EMPLOYEE   [ ] OTHER _____   [ ] NONE

| WITNESSES (GIVE NAME AND TITLE OR CDC NUMBER) | GRANTED | NOT GRANTED | WITNESSES (GIVE NAME AND TITLE OR CDC NUMBER) | GRANTED | NOT GRANTED |
|---|---|---|---|---|---|
| | [ ] | [ ] | | [ ] | [ ] |
| | [ ] | [ ] | | [ ] | [ ] |

INVESTIGATIVE REPORT: Investigative Employees must interview the inmate charged, the reporting employee, and any others who have significant information, documenting the testimony of each person interviewed. Review of files, procedures, and other documents may also be necessary.

On 8-4-04, I C/O A. FLORES, explained to Inmate HARRIS, E-46844, O6-125L, my function was to gather information, question staff, inmate(s), screen witness(es), and/or complete and submit a written report to the Senior Hearing Officer. Inmate HARRIS stated that he understood my position as the Investigative Employee and had no objections to my assignment.

INMATE HARRIS' STATEMENT: This is all the questions and things I need for my 115 hearing.

REPORTING EMPLOYEE's STATEMENT: On Monday, June 16, 2003, ISU concluded the investigation into the stabbing assault of inmate DAVIS, P-93441, which occurred on June 6, 2003. Confidential information disclosed that you specifically were identified as the person who ordered, participated, and witnessed the stabbing of inmate DAVIS. (Additional information is explained on the attached copy of the RVR 115, FC-03-06-026R.) Confidential memorandums authored by N.S. Rodriguez, ISU Sergeant, dated June 6, 2003 and June 16, 2003, located in confidential section of the C-File.

STAFF WITNESS STATEMENT: (C/O V. Bach) - This incident occurred on 3rd Watch. I'm assigned to 2nd Watch, I have no knowledge of inmate HARRIS being targeted for an assault.

STAFF WITNESS STATEMENT: (Mr. Farley, EOR Instructor) - I don't keep copies of time cards. All I have is a sign in sheet.

| COPY GIVEN TO INMATE ON 8/6/04 @ 1230 by A. FLORES | INVESTIGATOR'S SIGNATURE ▶ | DATE 8/6/04 |
|---|---|---|

| [X] COPY OF CDC 115-A GIVEN INMATE | BY: (STAFF'S SIGNATURE) ▶ R. Baze | TIME 2000 | DATE 12/22/03 |
|---|---|---|---|

CDC 115-A (7/88)   — If additional space is required use supplemental pages —   QSP 98 8819

STATE OF CALIFORNIA                                                                  DEPARTMENT OF CORRECTIONS

**RULES VIOLATION REPORT - PART C**                                      PAGE __/__ OF __8__

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| E-46844 | HARRIS | FC-03-06-026R | CENTINELA | 8-4-04 |

| ☐ SUPPLEMENTAL | ☒ CONTINUATION OF: | ☐ 115 CIRCUMSTANCES | ☐ HEARING | ☒ IE REPORT | ☐ OTHER_____ |
|---|---|---|---|---|---|

(Continued from CDC-115 Part A)

STAFF WITNESS STATEMENT: (C/O Delgadillo, C-3 Floor Officer) This I.E. asked the following questions on behalf of inmate HARRIS.
Q1) How often did HARRIS, come into Housing Unit C-3 on Third Watch?
A1) Very often.
Q2) Was this also following yard recall and during the 7:30 p.m. yard release?
A2) Yes, inmate HARRIS likes to manipulate staff and other inmates for his advantage. He was not a programmer and he had no business being in C-3 during yard recall on 6-6-03.

STAFF WITNESS STATEMENT: (Lt. P. Falconer, Incident Commander) This I.E. asked the following questions on behalf of inmate HARRIS.
Q1) If the surveillance video depicts the ingress and egress into a crime scene before its occurrence? Would this be considered relevant evidence? Why?
A1) If the camera showed or recorded the incident it would be evidence.
Q2) Why wasn't the video additional secured into the evidence locker which could unequivocally depict the sequence time of each inmate who specifically entered the Housing Unit before, after or with inmate DAVIS?
A2) The cameras wasn't positioned towards C-3 and no relevant evidence was recorded. Since the incident on 6-6-03, Central Control has recorded over the video.
Q3) When you are Incident Commander is it protocol for you to consider whether the Facility Surveillance Tape is to be collected as evidence?
A3) It is my decision to consider the Surveillance Tape as evidence if it was pointed in the direction of the incident and shows anything relevant. Only the tape of the crime scene is placed into evidence.
Q4) What does procedure require for evidence of this nature relative to its removal and storage?
A4) If a video tape shows any evidence it is to be removed from recorder, labeled with time, date, and Log# of incident and logged into an evidence locker.
Q5) How was the determination arrived at that the surveillance video of the Facility C Yard recall was not to be collected?
A5) The contents of the video did not show anything relevant to the incident, I viewed the video before a decision was made.
Q6) Was there a determination made whether the source who had given information in the past did so-so it would be believed when the opportunity arose in the future to make allegation directed towards me?
A6) Yes.
Q7) Was there a determination made whether the source had a grudge against me or possibly wanted to shift blame for his involvement in the incident?
A7) Yes.
Q8) The 1030 issued to me related that more than one source provided the same information what was the exact and specific information provided?
A8) Read the CDC-1030 form issued to you on 6-24-03.
Q9) Was the information from each source first hand account?
A9) I can't reveal anymore information about the source without jeopardizing the identity of the source(s). I have answered as many questions as possible that pertain to this 115 without giving up the identity of the source(s). It appears that the rest of inmate HARRIS's questions are for his appeal, or to try to get the identity or location of the confidential source.

A. FLORES, Correctional Officer

| SIGNATURE OF WRITER _(signature)_ | | DATE SIGNED 8/6/04 |
|---|---|---|
| GIVEN BY: (Staff's Signature) _(signature)_ | DATE SIGNED 8/6/04 | TIME SIGNED 1230 |

☒ COPY OF CDC 115-C GIVEN TO INMATE

CDC 115-C (5/95)                                                                OSP 99 25082

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

**RULES VIOLATION REPORT - PART C**

PAGE 2 OF 2

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| E-46844 | HARRIS | FC-03-06-026R | CENTINELA | 8-4-04 |

☐ SUPPLEMENTAL ☐ CONTINUATION OF: ☐ 115 CIRCUMSTANCES ☐ HEARING ☒ IE REPORT ☐ OTHER____

(Continued from CDC-115 Part C, Page 1)

STAFF WITNESS STATEMENT: (C/O Anderson, C-4 Floor Officer #1, F/S) This I.E. asked the following question(s) on behalf of inmate HARRIS.
Q1) When an inmate's Work Assignment is canceled and it's not his RDO, will C-4 allow access to both yard or with the building only?
A1) Not to both yards. After his work hours the inmate will be allowed to access the yard.
Q2) Did I ever disrespect you or create problems in the Housing Unit and what was my behavior like?
A2) I haven't had any problems or confrontations with HARRIS.

STAFF WITNESS STATEMENT: (C/O Funez) This I.E. asked the following question(s) on behalf of inmate HARRIS.
Q1) Did I ever disrespect you or create problems in the Housing Unit and what was my behavior like?
A1) I haven't had any problems or confrontations with HARRIS.

STAFF WITNESS STATEMENT: (C/O N. Rodriguez) This I.E. asked the following question(s) on behalf of inmate HARRIS.
Q1) Did I ever disrespect you or create problems in the Housing Unit and what was my behavior like?
A1) I haven't had any problems or confrontations with HARRIS.

STAFF WITNESS STATEMENT: (Sgt. Hernandez) This I.E. asked the following question(s) on behalf of inmate HARRIS.
Q1) Did I ever disrespect you or create problems in the Housing Unit and what was my behavior like?
A1) I haven't had any problems or confrontations with HARRIS.

STAFF WITNESS STATEMENT: (Sgt. Machado) This I.E. asked the following question(s) on behalf of inmate HARRIS.
Q1) Did I ever disrespect you or create problems in the Housing Unit and what was my behavior like?
A1) I haven't had any problems or confrontations with HARRIS.

STAFF WITNESS STATEMENT: (Sgt. Valenzuela) This I.E. asked the following question(s) on behalf of inmate HARRIS.
Q1) Did I ever disrespect you or create problems in the Housing Unit and what was my behavior like?
A1) I haven't had any problems or confrontations with HARRIS.

STAFF WITNESS STATEMENT: (Lt. Mettler) This I.E. asked the following question(s) on behalf of inmate HARRIS.
Q1) Did I ever disrespect you or create problems in the Housing Unit and what was my behavior like?
A1) I haven't had any problems or confrontations with HARRIS.

STAFF WITNESS STATEMENT: (C/O Hart) This I.E. asked the following question(s) on behalf of inmate HARRIS.
Q1) Did I ever disrespect you or create problems in the Housing Unit and what was my behavior like?
A1) I haven't had any problems or confrontations with HARRIS.

STAFF WITNESS STATEMENT: (C/O Hellum) This I.E. asked the following question(s) on behalf of inmate HARRIS.
Q1) Did I ever disrespect you or create problems in the Housing Unit and what was my behavior like?
A1) I haven't had any problems or confrontations with HARRIS.

STAFF WITNESS STATEMENT: (C/O Tagupia) This I.E. asked the following question(s) on behalf of inmate HARRIS.
Q1) Did I ever disrespect you or create problems in the Housing Unit and what was my behavior like?

| | SIGNATURE OF WRITER | DATE SIGNED |
|---|---|---|
| | A. FLORES, Correctional Officer | 8/6/04 |
| ☒ COPY OF CDC 115-C GIVEN TO INMATE | GIVEN BY: (Staff's Signature) | DATE SIGNED 8/6/04 | TIME SIGNED 1230 |

CDC 115-C (5/95)

OSP 99 25082

STATE OF CALIFORNIA
**RULES VIOLATION REPORT - PART C**

DEPARTMENT OF CORRECTIONS
PAGE 3 OF 8

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| E-46844 | HARRIS | FC-03-06-026R | CENTINELA | 8-4-04 |

☐ SUPPLEMENTAL  ☒ CONTINUATION OF:  ☐ 115 CIRCUMSTANCES  ☐ HEARING  ☒ IE REPORT  ☐ OTHER_____

(Continued from CDC-115 Part C, Page 2)

A1)  I haven't had any problems or confrontations with HARRIS.

STAFF WITNESS STATEMENT: (C/O Brown) This I.E. asked the following question(s) on behalf of inmate HARRIS.
Q1)  Did I ever disrespect you or create problems in the Housing Unit and what was my behavior like?
A1)  I haven't had any problems or confrontations with HARRIS.

STAFF WITNESS STATEMENT: (C/O Garcia) This I.E. asked the following question(s) on behalf of inmate HARRIS.
Q1)  Did I ever disrespect you or create problems in the Housing Unit and what was my behavior like?
A1)  I haven't had any problems or confrontations with HARRIS.

STAFF WITNESS STATEMENT: (C/O Flores) This I.E. answered the following question(s) on behalf of inmate HARRIS.
Q1)  What was my role/participation in the June 2003 Pizza Food Sale?
A1)  Inmate HARRIS was assigned as the M.A.C. President on Facility "C" and was suppose to be collecting order forms for the Pizza Food Sale.

STAFF WITNESS STATEMENT: (C/O Ryan) This I.E. asked the following question(s) on behalf of inmate HARRIS.
Q1)  When a C-3 inmate during your assignment to 'C' Facility was scheduled for A.M. yard, will he also be allowed P.N. yard access as an A2-B inmate?
A1)  No.

INMATE WITNESS STATEMENT:  (Inmate JORDAN, J-33383, C3-103) This I.E. asked the following questions on behalf of inmate HARRIS.
Q1)  On June 5, 2003, when inmate DAVIS, P-93441, C3-150, was stabbed what was inmate HARRIS doing when the alarm sounded?
A1)  I was sitting at the table, HARRIS was at the water fountain.
Q2)  After entering the building which direction did HARRIS proceed?
A2)  I didn't see HARRIS walk in.
Q3)  At anytime before the alarm sounded, did you ever see HARRIS in the area of cell 149 or in the doorway of cell 149?
A3)  No.
Q4)  At anytime before the alarm sounded did you ever see HARRIS walking away from cell 149 or this area?
A4)  No.

INMATE WITNESS STATEMENT:  (Inmate MOORE, P-99944, C3-103) This I.E. asked the following questions on behalf of inmate HARRIS.
Q1)  On June 5, 2003, when inmate DAVIS, P-93441, C3-150, was stabbed what was inmate HARRIS doing when the alarm sounded?
A1)  He was by the water fountain talking to me.
Q2)  After entering the building which direction did HARRIS proceed?
A2)  I didn't see HARRIS walk in.
Q3)  At anytime before the alarm sounded, did you ever see HARRIS in the area of cell 149 or in the doorway of cell 149?

A. FLORES, Correctional Officer

| SIGNATURE OF WRITER | | DATE SIGNED |
|---|---|---|
| | | 8/6/04 |

| GIVEN BY: (Staff's Signature) | DATE SIGNED | TIME SIGNED |
|---|---|---|
| | 8/6/04 | 1230 |

☒ COPY OF CDC 115-C GIVEN TO INMATE

CDC 115-C (5/95)

OSP 99 25082

STATE OF CALIFORNIA

**RULES VIOLATION REPORT - PART C**

DEPARTMENT OF CORRECTIONS
PAGE 4 OF 8

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| E-46844 | HARRIS | FC-03-06-026R | CENTINELA | 8-4-04 |

☐ SUPPLEMENTAL    ☒ CONTINUATION OF:    ☐ 115 CIRCUMSTANCES    ☐ HEARING    ☒ IE REPORT    ☐ OTHER_____

(Continued from CDC-115 Part C, Page 3)

A3)  No.
Q4)  At anytime before the alarm sounded did you ever see HARRIS walking away from cell 149 or this area?
A4)  No.

INMATE WITNESS STATEMENT:  (Inmate WOMACK, P-98475, C3-119L) This I.E. asked the following questions on behalf of inmate HARRIS.
Q1)  On June 5, 2003, when inmate DAVIS, P-93441, C3-150, was stabbed what was inmate HARRIS doing when the alarm sounded?
A1)  He had just came in the building.
Q2)  After entering the building which direction did HARRIS proceed?
A2)  He walked to the right.
Q3)  At anytime before the alarm sounded, did you ever see HARRIS in the area of cell 149 or in the doorway of cell 149?
A3)  No.
Q4)  At anytime before the alarm sounded did you ever see HARRIS walking away from cell 149 or this area?
A4)  No.

INMATE WITNESS STATEMENT:  (Inmate JETT, E-39210, C3-144L) This I.E. asked the following questions on behalf of inmate HARRIS.
Q1)  On June 5, 2003, when inmate DAVIS, P-93441, C3-150, was stabbed what was inmate HARRIS doing when the alarm sounded?
A1)  He was at the water fountain.
Q2)  After entering the building which direction did HARRIS proceed?
A2)  I didn't see.
Q3)  At anytime before the alarm sounded, did you ever see HARRIS in the area of cell 149 or in the doorway of cell 149?
A3)  No.
Q4)  At anytime before the alarm sounded did you ever see HARRIS walking away from cell 149 or this area?
A4)  No.

INMATE WITNESS STATEMENT:  (Inmate QUEZADA, D-84066, C3-150) This I.E. asked the following questions on behalf of inmate HARRIS.
Q1)  On June 5, 2003, when inmate DAVIS, P-93441, C3-150, was stabbed what was inmate HARRIS doing when the alarm sounded?
A1)  He was talking to someone by the fountain.
Q2)  After entering the building which direction did HARRIS proceed?
A2)  I didn't see him walk in.
Q3)  At anytime before the alarm sounded, did you ever see HARRIS in the area of cell 149 or in the doorway of cell 149?
A3)  No.
Q4)  At anytime before the alarm sounded did you ever see HARRIS walking away from cell 149 or this area?
A4)  No.

A. FLORES, Correctional Officer

| SIGNATURE OF WRITER | | DATE SIGNED |
|---|---|---|
| | | 8/6/04 |

| | GIVEN BY: (Staffs Signature) | DATE SIGNED | TIME SIGNED |
|---|---|---|---|
| COPY OF CDC 115-C GIVEN TO INMATE | | 8/6/04 | 1230 |

CDC 115-C (5/95)

OSP 99 25082

STATE OF CALIFORNIA

**RULES VIOLATION REPORT - PART C**

DEPARTMENT OF CORRECTIONS
PAGE 5 OF 8

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| E-46844 | HARRIS | FC-03-06-026R | CENTINELA | 8-4-04 |

☐ SUPPLEMENTAL  ☒ CONTINUATION OF: ☐ 115 CIRCUMSTANCES  ☐ HEARING  ☒ IE REPORT  ☐ OTHER_____

(Continued from CDC-115 Part C, Page 4)

INMATE WITNESS STATEMENT: (Inmate GRISSOM, K-17108, C3-205) This I.E. asked the following questions on behalf of inmate HARRIS.
Q1) On June 5, 2003, when inmate DAVIS, P-93441, C3-150, was stabbed what was inmate HARRIS doing when the alarm sounded?
A1) He was by the bleachers & fountain.
Q2) After entering the building which direction did HARRIS proceed?
A2) He first went to B-Section.
Q3) At anytime before the alarm sounded, did you ever see HARRIS in the area of cell 149 or in the doorway of cell 149?
A3) No.
Q4) At anytime before the alarm sounded did you ever see HARRIS walking away from cell 149 or this area?
A4) No.

INMATE WITNESS STATEMENT: (Inmate GORDON, H-42935, C3-227) This I.E. asked the following questions on behalf of inmate HARRIS.
Q1) On June 5, 2003, when inmate DAVIS, P-93441, C3-150, was stabbed what was inmate HARRIS doing when the alarm sounded?
A1) I don't know, I didn't see much of anything.
Q2) After entering the building which direction did HARRIS proceed?
A2) I don't know, I didn't see much of anything.
Q3) At anytime before the alarm sounded, did you ever see HARRIS in the area of cell 149 or in the doorway of cell 149?
A3) I don't know, I didn't see much of anything.
Q4) At anytime before the alarm sounded did you ever see HARRIS walking away from cell 149 or this area?
A4) I don't know, I didn't see much of anything.

INMATE WITNESS STATEMENT: (Inmate ALLISON, E-75205, C3-233) This I.E. asked the following questions on behalf of inmate HARRIS.
Q1) On June 5, 2003, when inmate DAVIS, P-93441, C3-150, was stabbed what was inmate HARRIS doing when the alarm sounded?
A1) He was sitting on the bench by the fountain.
Q2) After entering the building which direction did HARRIS proceed?
A2) He walked to the bench.
Q3) At anytime before the alarm sounded, did you ever see HARRIS in the area of cell 149 or in the doorway of cell 149?
A3) No.
Q4) At anytime before the alarm sounded did you ever see HARRIS walking away from cell 149 or this area?
A4) No.

INMATE WITNESS STATEMENT: (Inmate CONNER, T-76655, C3-239L) This I.E. asked the following questions on behalf of inmate HARRIS.
Q1) On June 5, 2003, when inmate DAVIS, P-93441, C3-150, was stabbed what was inmate HARRIS doing when the alarm

A. FLORES, Correctional Officer

| SIGNATURE OF WRITER | DATE SIGNED |
|---|---|
| | 8/6/04 |

| ☒ COPY OF CDC 115-C GIVEN TO INMATE | GIVEN BY: (Staff's Signature) | DATE SIGNED 8/6/04 | TIME SIGNED 1230 |
|---|---|---|---|

CDC 115-C (5/95)

OSP 99 25082

STATE OF CALIFORNIA                                                                    DEPARTMENT OF CORRECTIONS
**RULES VIOLATION REPORT - PART C**                                                    PAGE 6 OF 8

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| E-46844 | HARRIS | FC-03-06-026R | CENTINELA | 8-4-04 |

| ☐ SUPPLEMENTAL | ☒ CONTINUATION OF: | ☐ 115 CIRCUMSTANCES | ☐ HEARING | ☒ IE REPORT | ☐ OTHER_____ |

(Continued from CDC-115 Part C, Page 5)

sounded?
A1) He had just came in from the yard and he went to the fountain.
Q2) After entering the building which direction did HARRIS proceed?
A2) Right to the fountain.
Q3) At anytime before the alarm sounded, did you ever see HARRIS in the area of cell 149 or in the doorway of cell 149?
A3) No.
Q4) At anytime before the alarm sounded did you ever see HARRIS walking away from cell 149 or this area?
A4) No.

INMATE WITNESS STATEMENT: (Inmate HANKEY, D-96563, C3-243U) This I.E. asked the following questions on behalf of inmate HARRIS.
Q1) On June 5, 2003, when inmate DAVIS, P-93441, C3-150, was stabbed what was inmate HARRIS doing when the alarm sounded?
A1) I don't know anything, I was in my cell.
Q2) After entering the building which direction did HARRIS proceed?
A2) I don't know anything I was in my cell.
Q3) At anytime before the alarm sounded, did you ever see HARRIS in the area of cell 149 or in the doorway of cell 149?
A3) I don't know anything, I was in my cell.
Q4) At anytime before the alarm sounded did you ever see HARRIS walking away from cell 149 or this area?
A4) I don't know anything, I was in my cell.

INMATE WITNESS STATEMENT: (Inmate DIXON, H-41399, C3-243L) This I.E. asked the following questions on behalf of inmate HARRIS.
Q1) On June 5, 2003, when inmate DAVIS, P-93441, C3-150, was stabbed what was inmate HARRIS doing when the alarm sounded?
A1) He was sitting infront of the C/O's Office.
Q2) After entering the building which direction did HARRIS proceed?
A2) He turned right and was by the office.
Q3) At anytime before the alarm sounded, did you ever see HARRIS in the area of cell 149 or in the doorway of cell 149?
A3) No.
Q4) At anytime before the alarm sounded did you ever see HARRIS walking away from cell 149 or this area?
A4) No.

INMATE WITNESS STATEMENT: (Inmate SMITH, P-47555) This I.E. asked the following questions on behalf of inmate HARRIS.
Q1) On June 5, 2003, when inmate DAVIS, P-93441, C3-150, was stabbed what was inmate HARRIS doing when the alarm sounded?
A1) I think he was walking the tier.
Q2) After entering the building which direction did HARRIS proceed?
A. FLORES, Correctional Officer

| | SIGNATURE OF WRITER | | DATE SIGNED |
|---|---|---|---|
| ☒ COPY OF CDC 115-C GIVEN TO INMATE | *[signature]* | | 8/6/04 |
| | GIVEN BY: (Staff's Signature) | DATE SIGNED | TIME SIGNED |
| | *[signature]* | 8/6/04 | 1230 |

CDC 115-C (5/95)

OSP 99 25082

STATE OF CALIFORNIA                                                    DEPARTMENT OF CORRECTIONS
**RULES VIOLATION REPORT - PART C**                                    PAGE 7 OF 8

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| E-46844 | HARRIS | FC-03-06-026R | CENTINELA | 8-4-04 |

☐ SUPPLEMENTAL  ☑ CONTINUATION OF:  ☐ 115 CIRCUMSTANCES  ☐ HEARING  ☑ IE REPORT  ☐ OTHER_____

(Continued from CDC-115 Part C, Page 6)

A2) I wasn't paying attention.
Q3) At anytime before the alarm sounded, did you ever see HARRIS in the area of cell 149 or in the doorway of cell 149?
A3) I was in cell C3-144, I couldn't see.
Q4) At anytime before the alarm sounded did you ever see HARRIS walking away from cell 149 or this area?
A4) I was in cell C3-144, I couln't see.
Inmate SMITH stated, "I don't know what else to add.

INMATE WITNESS STATEMENT:   (Inmate BROOKS, K-16234, C4-242L) This I.E. asked the following questions on behalf of inmate HARRIS.
Q1)  What role did HARRIS play in the June pizza sale regarding forms?
A1)  He was helping me passout & pickup forms, he was answering questions on how to fill the forms out.
Q2)  Did HARRIS assist in collecting applications, and in what Building?
A2)  Yes, in all the Buildings.
Q3)  After this, did HARRIS have a role in assisting in organizing and typing the food sale master list?
A3)  Yes.

INMATE WITNESS STATEMENT: (DABNEY, K-55204)- On June 6, 2003, I resided on Facility "C", Housing Unit C3-149. On the same day an inmate DAVIS, P-93441 was the victim of a stabbing assault within the area of lower "C" section. Following that time I have learned that inmate HARRIS, E-46844, one of several inmates who have been charged as a participant in the assault. I am writing this statement on HARRIS' behalf as I am personally aware that he had no involvement in the charged offense. On the above date, following the 3:15 yard recall, I went into my assigned Housing Unit C3 and went into "A" section. During the recall I witnessed HARRIS enter into the Unit with a stack of food sale slips and stood by "C" section computer box. I then left "A" section and walked to my cell where I noted my neighbor inmate DAVIS was bleeding from his chest. I immediately told him to go to the podium for assistance. While walking C3 floor staff observed DAVIS was bleeding ordered the dayroom down. At no time prior to and after I saw DAVIS, did HARRIS go beyond the dayroom computer bench area. While going to my cell before the alarm, I never saw HARRIS push any inmate or me in an attempt to prevent DAVIS from exiting cell 149. HARRIS is someone known to me and when I saw on the yard on June 6, 2003 before the recall. At no time during yard or upon his entrance into the building did I observe HARRIS order, participate, or orchestrate an assault against DAVIS. Inmate HARRIS and DAVIS are intimately known to me as they are my constituents from streets. And on those basis, I am personlly aware that HARRIS had no involvement in the assault on DAVIS as they are very close to one another. I am familiar with the specifics of the charges that have been instituted against HARRIS by word of other inmates and himself. I am writting this staement without any threat or compulsion from any inmate. I do not consider HARRIS as my enemy or someone I have a problem with. DATE: 7-16-03.

INVESTIGATIVE EMPLOYEE'S STATEMENT: C/O A. FLORES:
Inmate HARRIS was assigned as an Executive MAC. Rep. prior to him being placed in AD/SEG. Officer GERVIN, the AD/SEG Property Officer said he gave HARRIS a title 15 while in AD/SEG as requested by inmate HARRIS. Inmate HARRIS also requested the finding against inmate SMITH and DABNEY have received their final copy. If they want to provide their copy to HARRIS that is their decision. HARRIS also requested a copy of the Senior Hearing Officer (SHO) manual. The (SHO) Manual is not law, it is a guide for Lieutenant, therefore HARRIS is not entitled to a copy. Copies of
                                    A. FLORES, Correctional Officer

| SIGNATURE OF WRITER | | DATE SIGNED |
|---|---|---|
| *[signature]* | | 8/6/04 |
| GIVEN BY: (Staff's Signature) | DATE SIGNED | TIME SIGNED |
| *[signature]* | 8/6/04 | 1230 |

☑ COPY OF CDC 115-C GIVEN TO INMATE

CDC 115-C (5/95)                                                       OSP 99 25082

STATE OF CALIFORNIA

**RULES VIOLATION REPORT - PART C**

DEPARTMENT OF CORRECTIONS
PAGE 8 OF 8

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| E-46844 | HARRIS | FC-03-06-026R | CENTINELA | 8-4-04 |

| ☐ SUPPLEMENTAL | ☒ CONTINUATION OF: | ☐ 115 CIRCUMSTANCES | ☐ HEARING | ☒ IE REPORT | ☐ OTHER_____ |

(Continued from CDC-115 Part C, Page 7)

attendance log for Mr. FARLEY'S class on 6-5-03 and 6-6-03 have been included in this I.E. Report. To keep the name or identity of the confidential source confidential none of the answers to inmate HARRIS'S questions will be typed on this report. The SHO can refer to confidential memo(s) in HARRIS'S C-File and HARRIS can refer to his CDC-1030. Inmate HARRIS had twenty six questions to ask of inmate DAVIS, P-93444. Inmate DAVIS was contacted by phone at Ironwood State Prison. C/O LOPEZ at Ironwood advised me that DAVIS refused to answer any questions and gave the statement, "I don't know what your talking about."

A review of inmate HARRIS' C-File was done. HARRIS has been found guilty of multiple mutual combats but no staff assaults. Video of the yard did not show any relevant information, and was not submitted into evidence. A 7219 of inmate DAVIS will be given to HARRIS with this I.E. Report. A photocopy of ten (10) pictures of the crime scene will be given to HARRIS with this I.E. Report. HARRIS requested copies from the Senior Hearing Officer's (SHO) Manual. The SHO Manual does not stipulate CDC Disciplinary Policy. It is a training tool for Lieutenants only. HARRIS' request for copies is denied. Contact was made with the Use of Force Coordinator, Mr. Cortez. Mr. Cortez stated that there was no Modified Program for the Black inmates on Facility "C" for the first week in June, until June 6, 2003. Mr. Cortez also stated that the entire institution was on "Normal Program" from 5-28-03 to 6-5-03. HARRIS asked questions of the Confidential Informant(s). The answers to his questions are located in a Confidential Memo in HARRIS' C-File. I was unable to obtain Certificates for HARRIS' Electronics or Anger Management Classes. However, HARRIS' instructors will be available as witnesses to verify if HARRIS does have a certificate. A copy of the Reissue/Rehear Memo will be provided with this I.E. Inmate HARRIS will also be given sign-in sheets from his Voc. Class for dates 6-5-03, 6-6-03 and 6-10-03 along with Daily Time Log for the same Voc. Class for the month of June 2003. Inmate HARRIS stated that he would like to keep the answers of his old I.E. Report and included them with this I.E. Report.

STAFF WITNESSES REQUESTED AT HEARING: NONE

INMATE WITNESSES REQUESTED AT HEARING: The following witnesses are requested to be contacted telephonically: DAVIS, P-93441, DABNEY, K-55204, CUNNIGAN, T-57853, C4-110L, GRISSOM, K-17108, C3-237L, MOORE, P-99944, C3-103L, QUEZADA, D-84066, DIXON, H-41399, C3-234U, SMITH, P-47555.

| REPORTING EMPLOYEE REQUESTED AT HEARING: | YES [ ] | NO [X] |
|---|---|---|
| INVESTIGATIVE EMPLOYEE REQUESTED AT HEARING: | YES [X] | NO [ ] |
| ADDITIONAL INFORMATION CONTAINED IN CONFIDENTIAL REPORTS: | YES [X] | NO [ ] |

A. FLORES, Correctional Officer

| SIGNATURE OF WRITER | DATE SIGNED 8/6/04 |
|---|---|

| ☒ COPY OF CDC 115-C GIVEN TO INMATE | GIVEN BY: (Staff's Signature) | DATE SIGNED 8/6/04 | TIME SIGNED 1230 |
|---|---|---|---|

CDC 115-C (5/95)

OSP 99 25082

# Exhibit Cover Sheet

DESCRIPTION OF EXHIBIT:    Investigatory Task Package

NUMBER OF EXHIBIT PAGES:    6 Pages

# EXHIBIT   M

# SUPPLEMENTAL INVESTIGATORY
## REQUEST TO I.E. REPORT

## INFORMATION REQUESTED:

1.) Memorandum dated 12-16-98 by Deputy Director, David Tristan approving disciplinary inmate request to review video images which identify inmates involvement or noninvolvement in charged incident. (inmate actions prior to yard recall is relevant in this case.)

2.) Written statement in support of whether or not I have ever been <u>found guilty</u> of any staff assault in any state institution since arriving in CDC. (An I.E. review of the C-file recorded disciplinary history is necessary.)

3.) I.E. statement of 'C' Facility program status for June 3, 2003. (Specifically determine: whether or not there was inmate movement, whether movement was restricted, and if so for how long).

4.) Copy of attendance log of 'C' vocation, Mr. Farley's electronics class for June 3, 2003 of whether I worked on this day. Or sign-in sheet of 6-3-03.

## EVIDENCE REQUESTED:

5.) Surveillance video of facility 'C' dated 6-6-03 of the time period of 1400 hours through 1530 hours. This evidence illustrates refutation of source(s) allegations and is necessary for preparation of my defense.

6.) Copy of photos of blood drops found on the dayroom floor identified by evidence placards 1 thru 21.

(CONTINUATION:)

Page 2

7.) Photos of blood splatter found within cell C3-149 on the walls identified within evidence placards 1 thru 21.

8.) Copy of photos of me taken by ISU Romero on 6-6-03 while seated in 'C' section dayroom.

9.) Copy of photos of evidence items FH-01 (wash cloth), FH-02 (pair of sweat pants), FH-03 (state blue shirt), FH-04 (pair of gray shorts), and FH-05 (water bottle).

10.) Copy of photo taken of C3-149 by ISU Romero the overall front entrance of the cell.

<u>WITNESS TESTIMONY REQUESTED:</u>

11.) Interview inmates MAYS (C-63464) and CUNNIGON (T-57853). Specifically Ask: 1) on June 6, 2003 when inmate Davis was injured, did you ever see HARRIS the Mac. Rep. in the area of cell C3-149? 2) When HARRIS entered the building where did he go to? 3) Did you ever see HARRIS go beyond the 'C' section bench area towards cell C3-149? 4) What role, if any, did HARRIS play in the June 2003 pizza sale regarding the food sale forms? * MAYS has <u>transferred</u>, telephone interview is necessary.

<u>CHARACTER TESTIMONY REQUESTED:</u>

12.) I am requesting a statement in reference to my program behavior and attitude. Specifically ask the

(CONTINUATION:)

Page 3

below identified staff whether I disrespected staff, created problems in the housing unit and what was my program behavior like:

a) % ANDERSON    c4 2W (2003)       g) Lt. METTLER    Watch Comm.
b) % FUNEZ       'c' 3W (2003)      h) % HART         c6   VR/HR RELIEVE
c) % Rodriguez   c4 3W (2003)       i) % HELLUM       c6   3W
d) Sgt. HERNANDEZ 'c' 2W (2002)     j) % TAGUPIA      c6   2W
e) Sgt. Machado  'c' 2W (2003)      k) % BROWN        C6   2W
f) Sgt. Valenzuela c6 2W            l) % GARCIA       c6   3W

A statement from these staff members is authorized per 3320(L) and SHO Manual, p. 16 paragraph one.


<u>WITNESSES REQUESTED:</u>

13) I am requesting the below listed inmates as witness to partake in my hearing by telephone interview for questioning regarding the charged offense:

a) Davis     P-93441               h) Aithron    E-76205
b) DABNEY    K-55204                i) Womack     P-78475
c) Smith     P-47555               j) Broussard  c-78207
d) CONNER    F-46655               k) Quezada    D-84066
e) cunnigon  T-57853               l) Dixon      H-41399
f) Grissom   K-17108               m) Smith      P-47555
g) Moore     P-99744

Each of these inmates were within the ultimate crime scene and/or know of my close relationship with DAVIS (P#93441). Each inmate have distinct information independent of the other inmates. I request these inmates be made available by speaker phone per 3315(e) necessary to the fact finding phase.

(CONTINUATION:)

Page 4

INTERVIEW REQUESTED:

14.) PER SENIOR HEARING OFFICER'S MANUAL, CHAP. #2 p. 41 PARAGRAPH 1 QUESTIONING OF WITNESSES AND EVIDENCE. I AM REQUESTING QUESTIONING OF THE CONFIDENTIAL SOURCE OF JUNE 6, 2003 WITH DOCUMENTATION OF THE ANSWERS IN A CONFIDENTIAL REPORT FOR REVIEW BY THE SHO. (SEE P. 41 ATTACHED.)

ON JUNE 6, 2003 YOU WERE INTERVIEWED BY ISU FOLLOWING THE STABBING ASSAULT ON INMATE DAVIS (C3-150).

Q: SEVERAL INMATES SINCE THE CONCLUSION OF THE INVESTIGATION INTO THIS ASSAULT WERE CHARGED, IN-CLUDING INMATE HARRIS (THE MAC REP.). IT WAS REPORTED HARRIS ATTEMPTED TO PREVENT DAVIS FROM GETTING OUT CELL C3-149. DID YOU EVER WITNESS THIS ALSO?

Q: WAS HARRIS IN THE DOORWAY OF 149 EVER?

I.E. STATEMENT REQUESTED:

15.) I AM REQUESTING A STATEMENT FROM THE ASSIGNED 8-14-03 I.E. (°⁄₀ FLORES) IN REGARDS TO MY ROLE / PARTICIPATION IN THE JUNE, 2003 PIZZA FOOD SALE.

CHARACTER EVIDENCE REQUESTED:

16.) I AM REQUESTING PER 331B(a)(1)(B) AND 3320(L) THAT A COPY OF THE FOLLOWING DOCUMENTARY CHARACTER EVIDENCE BE OBTAINED FROM MY VOCATIONAL INSTRUCTOR, MR. FARLEY

(CONTINUATION:)

Page 5

and my Anger Management Therapist, Ms. SWIFT, LPT:

    a) (1) copy of my 11-20-02 Electronic - Orientation
       certificate; and

    b) (1) copy of my 3-17-04 Anger Management
       certificate.

This character evidence is for the SHO Review
during any penalty assessment as a result of any
finding of guilt.

## RVR RE-ISSUE / RE-HEAR ORDER :

17.) I am requesting a copy of the written order
for re-issue of my RVR signed by J. Salazar,
Associate Warden Complex II dated December
8, 2003. The order was never issued to me
per 3313 (c)(4)(B).

## INFORMATION REQUESTED:

18.) I am requesting a statement of what days does Housing
unit C3 A.M. yard (go out) & what days are P.M. yards scheduled.
     and

19.) I am requesting a statement of the days that
c yard ABE III Education is scheduled A shift and
B shift. And the times of the class periods

20.) I am requesting a statement of whether inmate
Bishop #K-27260 attended school on June 3, 2003

21.) I am requesting a statement from C/O Anderson,
C4 Floor Officer of "RELEASE PROTCOL." Specifically
ask: When an inmates work assignment is cancelled and
its not his RDO, will C4 allow access to both yards or
with the building only?

(CONTINUATION:)

Page 6

22.) I am requesting a copy of the Mod Orders that was in effect for the last week of May thru the first week of June, 2003.

23.) I am requesting a statement from c/o RYAN, C3 FLOOR OFFICER (IN 2003) regarding "A2-B YARD RELEASE." Specifically ask: when a C3 inmate during your assignment to 'C' facility was scheduled for A.M. yard, will he also be allowed P.M. yard access as an A2-B inmate?

## STAFF WITNESS REQUESTED:

24.) a) HOLT    ISU   OFFICER    c) VELA   ISU   OFFICER
     b) ROMERO  ISU   OFFICER    d) SANCHEZ  ISU   OFFICER
I am requesting the above listed staff as witnesses by speaker phone.

25.) I am requesting that c/o V. BACH be made available by speaker phone as a witness for questioning regarding aspects of the offense used in instituting charges against me.

26.) I am requesting the times that vocational electronics (ECR) was ended on 6/3, 6/5, and 6/6 of 2003. (A review of voc. staff log book may be necessary or a consultation with Mr. Farley, ECR Instructor.)

27.) I am requesting that the white T-shirt identified by source(s) with blood stains be introduced at the hearing.

DATE SUBMITTED: 7-17-04

SIGNED

MARK A. HARRIS

# Exhibit Cover Sheet

**DESCRIPTION OF EXHIBIT:**   Vocational Electronics Time Card

**NUMBER OF EXHIBIT PAGES:**   1 Page

# EXHIBIT   N

# Daily Attendance Log–**Vocational**

DATE: 6/5/03    LOCATION: ELECTRONICS    SUPERVISOR: D. E. FARLEY

| Inmate Name | Eth. | CDC# | Housing | Time In | Time Out | Signature | Time In | Time Out |
|---|---|---|---|---|---|---|---|---|
| SALAZAR | WHT | B-76939 | C1-209 | 630 | | Salazar | | |
| HAYES | BLK | E-56269 | C4-107 | 6:58 | | | | |
| SANCHEZ | MEX | K-71828 | C4-125 | 630 | 1045 | | | |
| HARRIS | BLK | E-46844 | C4-135 | 6:70 | | | | |
| TORRES | MEX | P-56661 | C5-209 | 6 20 | | | | |
| SAUNDERS | BLK | E-64405 | C3-208 | | | | | |
| RAMOS | MEX | H-89973 | C4-118 | 0630 | | | | |
| LUCERO | MEX | E-62400 | C5-213 | | | | | |
| HUBBARD | BLK | H-96658 | C5-243 | | | | | |
| MARTINEZ | MEX | P-40939 | C5-238 | 630 | | Martinez | | |
| ESPINOZA | MEX | P-61926 | C5-137 | 6:30 | | Espinoza Ruiz | | |
| JACKSON | BLK | B-85477 | C2-216 | 6:30 | | J. ln | | |
| RINCON | MEX | P-37981 | C3-148 | 6:30 | | | | |
| ~~CONTRERAS~~ | ~~MEX~~ | ~~N-90032~~ | ~~C5-228~~ | | | | | |
| KING | BLA | E-45979 | C5-110 | 6:30 | | E. Tyler | | |
| EVANGELISTA | OTH | P-06850 | C4-130 | | | Wn | | |
| FLORES | MEX | J-42540 | C1-227 | 6:50 | | | | |
| NAVARRO | MEX | K-65826 | C3-129 | 6:35 | | | | |
| ~~CONTRERAS~~ | ~~MEX~~ | ~~E-57972~~ | ~~C4-132~~ | | | | | |
| HERD | BLK | K-38128 | C3-245 | 645 | | | | |
| SMITH | BLK | T04754 | C3-135 | 6:40 | | J. Smith | | |
| CHAVES | MEX | H-89425 | C5-110 | 7:00 | | | | |
| MARTIN | BLK | P-62424 | C5-233 | 6:45 | | Matin | | |
| ~~FRISON~~ | ~~BLK~~ | ~~T-09565~~ | ~~C3-213~~ | | | | | |
| MALBROUGH | BLK | P-05315 | C4-248 | | | | | |
| CRESPO | MEX | K-88104 | C4-240 | 6:55 | | | | |
| AGUILERA | MEX | H-41255 | C5-220 | 645 | | Aguilera | | |
| SALVADOR | MEX | J-29617 | C3-120 | 6:50 | | | | |
| QUEZADA | BLK | D-84069 | C1-230 | 645 | | | | |

| Inmates Absent | Comments: | Inmate Lay-In/Medical Ducat |
|---|---|---|
| LUCERO | Contreras 14 to D YARD | Herd 0900 C. HEALTH |
| HUBBARD | Frison 24 to B YARD | Hubbard " " |
| CONTRERAS (72) #79 | 0730 0900 0930 1030 1300  24 | SANCHEZ To Program 1045 |

# Exhibit Cover Sheet

DESCRIPTION OF EXHIBIT:   Crime Scene Schematic Report

NUMBER OF EXHIBIT PAGES:   1 Page

# EXHIBIT   O

CRIME SCENE

CEN-
Date: 06-06-03
Time: 1545
Prepard by: LID E. MONTESANO
NOT TO SCALE

| | | | |
|---|---|---|---|
| (31) | Clemons | T009030 | C3 219 L |
| (30) | Coffney | I 71112 | C3 112 4 |
| (29) | Womack | P 98425 | C3 118 4 |
| (28) | Bishop | k27260 | C3 112 L |
| (27) | Smith | P47555 | C3 114 4 |
| (26) | HARO | J 71137 | C3 142 4 |
| (25) | Jordan | J 33683 | C3 103 4 |
| (24) | Corcin | I 19265 | C3 148 4 |
| (23) | Coulson | T 57853 | C3 144 4 |
| (22) | Gordon | H 42985 | C3 227 L |
| (21) | Harris | E 46844 | C4 135 L |
| (20) | Dousey | K55244 | C3 194 L |
| (19) | Allison | E 76065 | C3 222 L |
| (18) | Canine | T 76655 | C3 215 L |
| (17) | Garisson | K 17108 | C3 205 4 |
| (16) | Moore | P 9844 | C3 102 L |
| (15) | EmBry | T 61617 | C3 130 L |
| (14) | Mayes | C6 24741 | C3 248 L |
| (13) | Jett | E59216 | C3 115 4 |
| (12) | Broussard | C78101 | C3 111 L |
| (11) | Quesada | D 81064 | C3 150 L |
| (10) | Hanley | D 96563 | C3 113 4 |
| (9) | Burleson | P 65804 | C3 139 L |
| (8) | Kramer | P 18162 | C3 138 4 |
| (7) | Dosey | I 31825 | C3 122 4 |
| (6) | Carroll | J 80706 | C3 241 4 |
| (5) | Carley | J 32580 | C3 117 4 |
| (4) | Dixon | H 41398 | C3 243 4 |
| (3) | Banales | T 88713 | C3 242 4 |
| (2) | Shaw | E 29735 | C3 110 4 |
| (1) | Oille | T 76657 | C3 182 4 |

Crime Scene Csection

# Exhibit Cover Sheet

**DESCRIPTION OF EXHIBIT:**    Adjudication Postponement Request

**NUMBER OF EXHIBIT PAGES:**    2 Pages

# EXHIBIT   P

# REQUEST FOR POSTPONEMENT
## (TITLE 15, CCR 3320(d))

STATE OF CALIFORNIA                                                                    DEPARTMENT OF CORRECTIONS
GA-22 (9/92)

| DATE | TO | FROM (LAST NAME) | CDC NUMBER |
|------|-----|------------------|------------|
| 8·7·04 | SHO, RVR  #FC-03-06-026 | HARRIS III | E-46844 |

| HOUSING | BED NUMBER | WORK ASSIGNMENT | JOB NUMBER | |
|---------|------------|-----------------|-----------|-----|
| C6-125 | LOWER |  | FROM | TO |

| OTHER ASSIGNMENT (SCHOOL, THERAPY, ETC.) | ASSIGNMENT HOURS | |
|------------------------------------------|------------------|------|
|  | FROM | TO |

## Clearly state your reason for requesting this interview.
You will be called in for interview in the near future if the matter cannot be handled by correspondence.

I am objecting to the submitted SIA investigative report and thus
request that my misconduct adjudication 115 RVR be postponed
30 days per Title 15 3320(d) due to a reasonable need for

(SEE ATTACHED)

Do NOT write below this line. If more space is required, write on back.

| INTERVIEWED BY | DATE |
|----------------|------|
|  |  |

DISPOSITION

(CONTINUATION OF REQUEST FOR POSTPONEMENT:)

POSTPONEMENT, BECAUSE MY ASSIGNED I.E., A. FLORES (FACILITY "C", 2W S3E) FAILED TO:

1) INTERVIEW RELEVANT WITNESSES / INMATES MAYES #C-63464 AND CUNNINGTON #T-5785 WERE SOUGHT FOR TESTIMONIAL INTERVIEW AND ALSO FOR PREPARATION OF MY DEFENSE TO REFUTE THE CHARGE. (SEE INVESTIGATORY REQUEST PACKAGE, p. 2 #11.)

2) GATHER REQUESTED INFORMATION / BLOOD SPLATTER PHOTOS OF THE DAVIS INCIDENT AREA, A DETERMINATION OF ANY CRIME SCENE PRESERVATIONALIST JUNE 6TH WHITE TEE SHIRT DISCOVERY WITHIN CELLBLOCK 3, UNIT C3'S JUNE 5, 2003 YARD SCHEDULE, AND A DETERMINATION OF ANY JUNE 3RD AND 5TH RESIDENT BISHOP SCHOOL ATTENDANCE WERE SOUGHT FOR PREPARATION OF MY DEFENSE AND ALSO TO REFUTE THE CHARGE. (SEE INVESTIGATORY REQUEST PACKAGE, pp. 2, 5, 6 #'S 7, 10, 18, 20, AND 27.)

THESE INVESTIGATORY TASK WERE ALSO REQUIRED UNDER TITLE 15 3318 (a)(1)(B)-(C) AND RECOGNIZED WITHIN THE DEPARTMENT'S OWN 840 DISPLINARY MANUAL. AS SUCH, I AM REQUESTING A HEARING CONTINUANCE TO ALLOW FOR FURTHER SIA COLLECTION / GATHERING OF THIS INFORMATION.

DATED: 8.7.04                                    SIGNED,

MARK A. HARRIS

# Exhibit Cover Sheet

DESCRIPTION OF EXHIBIT:    Blood Print/Stains Report

NUMBER OF EXHIBIT PAGES:    2 Pages

# EXHIBIT   Q

Department of Corrections
Supplement to the Crime/Incident Report (CDC Form 837)                  Page: 1 of 3

| Last Name, First Name Initial | Badge # | Incident Date | Incident Log # |
|---|---|---|---|
| ROMERO, C. | | 6/6/03 | CEN FC3-03-06-0135 |
| Length of Service | Post Description | Incident Time | Report Date |
| 7 yrs. 9 months | 184 #6 | 1528 | 6/6/03 |
| RDO's | Duty Hours | Incident Location | |
| S/su/M | 0800-1600 | C3 housing Unit | |

| Description of Incident/Crime | CCR Section/Rule |
|---|---|
| STABBING BATTERY ON INMATE ON INMATE BY UNKNOWN ASSAILANT WITH SERIOUS INJURY | 3005 (c) |

| Your Role | Witnesses (preface S-Staff, V-Visitor, O-Other) | Inmates Involved (preface S-Suspect, V-Victim, W-Witness) |
|---|---|---|
| ☐ Primary | (S) R. VELA | (V) DAVIS P93441 |
| ☐ Responder | (S) F. HOLT | (S) DABNEY K55204 |
| ☐ Witness | (S) D. SANCHEZ | (S) SMITH P47535 |
| ☐ Victim | | |
| ☑ Camera | | |

| Force Used by you | Less Lethal Weapons | Lethal Weapons | Number of Rounds Fired | Force Observed by you |
|---|---|---|---|---|
| ☐ Lethal | ☐ 37mm | ☐ Mini-14 | ☐ | ☐ Lethal |
| ☐ Less Lethal | ☐ Baton | ☐ Shotgun | | ☐ Less Lethal |
| ☐ Physical | ☐ OC    NA | ☐ Handgun   NA | NA | ☐ Physical |
| ☑ None | ☐ Other: | ☐ Other | | ☑ None |

| Evidence Collected | Evidence Description | Disposition | Weapon | BIO Hazard |
|---|---|---|---|---|
| ☑ Yes | 10 Rolls of 12 exposure 35 mm film | Sub evidence Locker #1 located in Central Control | ☐ Yes ☑ No | ☐ Yes ☑ No |
| ☐ No | | | | |

| Reporting Staff Injured | Description of Injury | Location Treated | Bodily Fluid Exposure | SCIF 3301/3067 Completed |
|---|---|---|---|---|
| ☐ Yes | NA | NA | ☐ Yes | ☐ Yes |
| ☑ No | | | ☑ No | ☑ No |

Narrative:

On Friday June 6, 2003, at approximately 1528 hours, I responded to a code 1 personal alarm in C3 housing unit. Upon my arrival to C3, inmate Davis P93441 was being transported to Central Health via Medical cart by C/O Chavez and MTA Houston. While entering C3 housing unit, there were red stains suspected to be blood in the sallyport leading through the C-Section dayroom into Cell C3-149 occupied by Dabney K55204 and Smith P47535. After the affected area was secured, I photographed C section dayroom without evidence markers, using a 35 mm camera and 1 roll, 12 exposure film. I photographed

| Reporting Staff's Signature: | | Date |
|---|---|---|
| Romero | | 6/6/03 |

| Reviewers Signature: | | Approved | Clarification Needed | Date |
|---|---|---|---|---|
| | | ☑ | ☐ | 6-6-03 |

(Hand write in ink)                                        CDC 837

Department of Corrections
Supplement to the Crime/Incident Report (CDC Form 837)                    Page: 2 of 3

| Last Name, First Name Initial | Badge # | Incident Date | Incident Log # |
|---|---|---|---|
| Romero, C. | | 6/6/03 | CEN FC3-03-06-0135 |

☒ Continuation of Report      ☐ Additional Information      ☐ Clarification Request

**Narrative:**

all inmates out in the dayroom, including the upper tier who were not in the affected area using 3 rolls of film. I proceeded to photograph the crime, with the evidence markers that included red stains, suspected to be blood and clothing with suspected blood stains, using 2 rolls of film. I then photographed all inmates in the affected area, using 2 rolls of film. After completing photographs of the inmates and crime scene, I assisted in securing the inmates in their assigned cells. I then re-photographed Using one roll of film, I rephotographed evidence marker #18 which included a bloody fingerprint and evidence marker #21, which included blood in the sink of cell C3-149. I also photographed wiped down blood stains in 'C' Section dayroom infront of the computer. Blood stains were also located on the drinking fountain in 'C' Section dayroom. At approximately 1815 hours, R.Vela and I searched cell C3-149 and 150, occupied by the victim, Davis P93441 and Quezada D84616, with negative results. At approximately 1906 hours, I photographed inmate Dabney K55204, C3-149 in C medical clinic, using 1 roll of film. Dabney had a scratch on his left tricep and a scratch on his right back side hip. At approximately 2118 hours, F.Holt and I searched cell C3-112 occupied by inmates Coffrey J 71938 and Bishop K27260. Upon entering the cell, I discovered a plastic bag

| Reporting Staff's Signature | | | Date |
|---|---|---|---|
| C.Romero | | | 6/6/03 |

| Reviewer's Signature | | Approved | Clarification Needed | Date |
|---|---|---|---|---|
| | | ☒ | ☐ | 6·6·03 |

(Hand write in ink)

# Exhibit Cover Sheet

**DESCRIPTION OF EXHIBIT:**    Staff Blood Observation Reports

**NUMBER OF EXHIBIT PAGES:**    9 Pages

# EXHIBIT   R

Department of Corrections

## Supplement to the Crime/Incident Report (CDC Form 837C)

Page: 1 of 3

| Last Name, First Name Initial | Badge # | Incident Date | Incident Log # |
|---|---|---|---|
| Holt, | | June 6, 2003 | CEN-FC3-03-06-0135 |

| Length of Service | Post Description | Incident Time | Report Date |
|---|---|---|---|
| 5 years 7 months | I. S.U. #3 | 1528 hours | June 6, 2003 |

| RDOs | Duty Hours | Incident Location |
|---|---|---|
| S/S/H | 0800-1600 | Facility "C", Building #3 |

| Description of Incident/Crime | CCR Section/Rule |
|---|---|
| Stabbing battery on a inmate by unknown assailant with serious injuries | 3005 (c) |

| Your Role | Witnesses (preface S-Staff, V-Visitor, O-Other) | Inmates Involved (preface S-Suspect, V-Victim, Witness) |
|---|---|---|
| ☐ Primary<br>☒ Responder<br>☐ Witness<br>☐ Victim<br>☐ Camera | (S) D. Sanchez<br>(S) C. Romero | (S) Dabney, K-55204<br>(V) Davis, P-93441<br>(S) Bishop, K-27260 |

| Force Used by You | Less Lethal Weapons | Lethal Weapons | Number of Rounds Fired | Force Observed by You |
|---|---|---|---|---|
| ☐ Lethal<br>☐ Less Lethal<br>☐ Physical<br>☒ None | ☐ 37mm<br>☐ Baton<br>☐ OC<br>☐ Other N/A | ☐ Mini-14<br>☐ Shotgun<br>☐ Handgun<br>☐ Other N/A | N/A | ☐ Lethal<br>☐ Less Lethal<br>☐ Physical<br>☒ None |

| Evidence Collected | Evidence Description | Disposition | Weapon | BIO Hazard |
|---|---|---|---|---|
| ☒ Yes<br>☐ No | Bloody clothing | Placed directly into evidence room locker C-10 | ☐ Yes<br>☒ No | ☒ Yes<br>☐ No |

| Reporting Staff Injured | Description of Injury | Location Treated | Bodily Fluid Exposure | SCIF 3301/3067 Completed |
|---|---|---|---|---|
| ☐ Yes<br>☒ No | N/A | N/A | ☐ Yes<br>☒ No | ☐ Yes<br>☒ No |

**Narrative:**

On Friday, June 06, 2003, at approximately 1528 hours, I responded to a Code One alarm in Facility "C", Building number three. Upon my arrival to the Facility at approximately 1530 hours, I observed an inmate later identified as Davis, P-93441-exiting building three in a medical cart. Davis was bleeding from the upper left chest area. Additionally, medical staff was administering medical attention to Davis as they were in route to Central Health. Once I arrived to building three it was determined Davis was the victim of a stabbing battery.

At approximately 1532 hours, I placed crime scene tape in front of the main sallyport entrance to control individuals entering the building.

At approximately 1540 hours, I assisted Security Squad Officer D. Sanchez by placing crime scene tape around the crime scene. I secured (tied) one end of the tape around the Correctional Counselors (CC1) door located on the left side as you enter the sallyport. I then wrapped the tape around the staircase handrail in front of cells 128 and 129. Finally, I secured the end of the tape to the outside door handle of cell 142.

At approximately 1548 hours, I conducted a walk through of the entire crime scene to determine what happened,

| Reporting Staff Signature | | | Date |
|---|---|---|---|
| F. Holt | | | June 6, 2003 |

| Reviewers Signature | Approved | Clarification Needed | Date |
|---|---|---|---|
| N. S. Rodriguez | ☒ | ☐ | June 6, 2003 |

Department of Corrections
Supplement to the Crime/Incident Report (CDC Form 837)                    Page:        of

| Last Name, First Name Initial | Badge # | Incident Date | Incident Log # |
|---|---|---|---|
| Richards | ▓▓▓ | 6-6-03 | Cen FC3-03-06-615 |
| Length of Service | Post Description | Incident Time | Report Date |
| ▓▓ | C Program Sgt | 1528 | 6-6-03 |
| RDO's | Duty Hours | Incident Location | |
| T/W | 0600-1400 | Building C3 | |

| Description of Incident/Crime | CCR Section/Rule |
|---|---|
| Stabbing/battery m I/m N/Serious injury by unknown assailant | 3005C |

| Your Role | Witnesses (preface S-Staff, V-Visitor, O-Other) | Inmates Involved (preface S-Suspect, V-Victim, W-Witness) |
|---|---|---|
| ☐ Primary | MTA Houston (S) | Davis P93441 (V) |
| ☒ Responder | | |
| ☐ Witness | | |
| ☐ Victim | | |
| ☐ Camera | | |

| Force Used by You | Less Lethal Weapons | Lethal Weapons | Number of Rounds Fired | Force Observed by You |
|---|---|---|---|---|
| ☐ Lethal | ☐ 37mm | ☐ Mini-14 | | ☐ Lethal |
| ☐ Less Lethal | ☐ Baton N/A | ☐ Shotgun N/A | N/A | ☐ Less Lethal |
| ☐ Physical | ☐ OC | ☐ Handgun | | ☐ Physical |
| ☒ None | ☐ Other: | ☐ Other | | ☒ None |

| Evidence Collected | Evidence Description | Disposition | Weapon | BIO Hazard |
|---|---|---|---|---|
| ☐ Yes ☒ No | N/A | N/A | ☐ Yes ☒ No | ☐ Yes ☒ No |

| Reporting Staff Injured | Description of Injury | Location Treated | Bodily Fluid Exposure | SCIF 3301/3067 Completed |
|---|---|---|---|---|
| ☐ Yes ☒ No | N/A | N/A | ☐ Yes ☒ No | ☐ Yes ☒ No |

Narrative:
ON 6-6-03 AT Approximately 1528 hours I responded to a personal ALARM in building C3. As I Entered the Sally port I observed Inmate Davis P93441, C3-150u, lying on the floor in the middle of the sally port. Inmate Davis was holding his chest and his Torso was covered with Blood. I asked Inmate Davis what happened and he stated that "I have been stabbed really bad." I immediately pulled his hand off his chest when I observed blood

Reporting Staff Signature                    Date 6-6-03
Reviewers Signature    LT(A)    Approved ☒    Clarification Needed ☐    Date 6-6-03

(Hand write in ink)

Department of Corrections

**Supplement to the Crime/Incident Report (CDC Form 837C)**                                  Page: 1 of 2

| Last Name, First Name, Initial | | Badge # | Incident Date | Incident Log # |
|---|---|---|---|---|
| Sanchez, | | | 06-06-03 | CEN-FC3-03-06-0135 |

| Length of Service | Post Description | Incident Time | Report Date |
|---|---|---|---|
| 11 years | Security Squad Officer #8 | 1532 | 06-06-03 |

| RDOs | Duty Hours | Incident Location |
|---|---|---|
| S/S/H | 0800-1600 | Facility "C", Building #3 |

| Description of Incident/Crime | CCR Section/Rule |
|---|---|
| Stabbing Battery on a Inmate by Unknown Assailant with Serious Injuries | 3005 (c) |

| Your Role | Witnesses (preface S-Staff, V-Visitor, O-Other) | Inmates Involved (preface S-Suspect, V-Victim, Witness) |
|---|---|---|
| ☐ Primary | (S) C/O F. Holt | (V) Davis P-93441 |
| ☒ Responder | (S) C/O C. Neito | (S) Dabney K-55204 |
| ☐ Witness | | |
| ☐ Victim | | |
| ☐ Camera | | |

| Force Used by You | Less Lethal Weapons | Lethal Weapons | Number of Rounds Fired | Force Observed by You |
|---|---|---|---|---|
| ☐ Lethal | ☐ 37mm | ☐ Mini-14 | ☐ None | ☐ Lethal |
| ☐ Less Lethal | ☐ Baton | ☐ Shotgun | | ☐ Less Lethal |
| ☐ Physical | ☐ OC | ☐ Handgun | N/A | ☐ Physical |
| ☒ None | ☐ Other   N/A | ☐ Other   N/A | | ☒ None |

| Evidence Collected | Evidence Description | Disposition | Weapon | | BIO Hazard | |
|---|---|---|---|---|---|---|
| ☒ Yes | 1 pair of white addids tennis shoe | Institution Evidence Room | ☐ | Yes | ☐ | Yes |
| ☐ No | 6 swabs (positive blood and control samples) | Locker C-10 | ☒ | No | ☒ | No |

| Reporting Staff Injured | Description of Injury | Location Treated | Bodily Fluid Exposure | | SCIF 3301/3067 Completed | |
|---|---|---|---|---|---|---|
| ☐ Yes | N/A | N/A | ☐ | Yes | ☐ | Yes |
| ☒ No | | | ☒ | No | ☒ | No |

**Narrative:**

On Friday, June 6, 2003, at approximately 1528 hours I responded to a Code 1 alarm in Facility "C" Building #3. Upon my arrival at approximately 1530 hours to building 3 I observed several facility staff placing an inmate onto a medical cart. The inmate later identified as Davis P-93441 was bleeding from his upper chest area.

At approximately 1531 hours I followed a blood trail that led from the sallyport door, in between the "C" section tables and benches and into cell 149. I then proceeded outside the building to look for any blood trail leading from outside with negative results. It was determined that Davis was stabbed within the building.

At approximately 1540 hours I determined that the crime scene would be within the "C" section dayroom. With the assistance of Security Squad Officer F. Holt we proceeded to place evidence tape from the Correctional Counselors office door to the staircase handrail in front of cell 129 and then to the door handle of cell 142.

At approximately 1550 hours I conducted a walk through of the crime scene attempting to locate any weapons or additional evidence with negative results.

| Reporting Staff Signature | | | Date |
|---|---|---|---|
| | | | 6-6-03 |

| Reviewers Signature | Approved | Clarification Needed | Date |
|---|---|---|---|
| | ☒ | ☐ | 6.6.03 |

Department of Corrections
Supplement to the Crime/Incident Report (CDC Form 837)                    Page: 1 of 2

| Last Name, First Name Initial | | Badge # | Incident Date | Incident Log # |
|---|---|---|---|---|
| Houston, | | | 6/6/03 | Cen. FC3-03-06-0135 |
| Length of Service | Post Description | | Incident Time | Report Date |
| 1 yr 2 mos | Relief MTA | | 1528 | 6/6/03 |
| RDOs | Duty Hours | | Incident Location | |
| Vary | Vary | | BLDG C-3 | |

| Description of Incident/Crime | | | | CCR Section/Rule |
|---|---|---|---|---|
| Battery on An Inmate with Serious Injury | | | | 3005c |

| Your Role | Witnesses (preface S-Staff, V-Visitor, O-Other) | Inmates Involved (preface S-Suspect, V-Victim, W-Witness) |
|---|---|---|
| ☐ Primary | ---------------- | V DAVIS P93441 |
| ☒ Responder | ---------------- | |
| ☐ Witness | ---------------- | |
| ☐ Victim | ---------------- | |
| ☐ Camera | ---------------- | |

| Force Used by You | Less Lethal Weapons | Lethal Weapons | Number of Rounds Fired | Force Observed by You |
|---|---|---|---|---|
| ☐ Lethal | ☐ 37mm | ☐ Mini-14 | | ☐ Lethal |
| ☐ Less Lethal | ☐ Baton | ☐ Shotgun N/A | N/A | ☐ Less Lethal |
| ☐ Physical | ☐ OC N/A | ☐ Handgun N/A | | ☐ Physical |
| ☒ None | ☐ Other: | ☐ Other | | ☒ None |

| Evidence Collected | Evidence Description | Disposition | Weapon | BIO Hazard |
|---|---|---|---|---|
| ☐ Yes | N/A | N/A | ☐ Yes | ☐ Yes |
| ☒ No | | | ☒ No | ☒ No |

| Reporting Staff Injured | Description of Injury | Location Treated | Bodily Fluid Exposure | SCIF 3301/3067 Completed |
|---|---|---|---|---|
| ☐ Yes | N/A | N/A | ☐ Yes | ☐ Yes |
| ☒ No | | | ☒ No | ☒ No |

**Narrative:**

On 6/6/03, Friday @ approx. 1530 while performing my duties as C yrd MTA, I responded to an alarm in bldg C-3. Upon entering the bldg I saw an officer standing over I/M Davis P93441 holding a plastic bag on the (L) side of his chest. Upon closer examination I noticed the I/M had blood on his chest & abdominal area. I began to evaluate the I/M noticing an elliptical wound about 1" in length on his anterior (L) chest wall. The I/M was conscious but breathing labored. The wound was bleeding minimally. A plastic bag was removed from the wound & dressed c 4x4 c gauze. I called for

| Reporting Staff's Signature | Date |
|---|---|
| G.A.H./Houston | 6/6/03 |
| Reviewer's Signature | Date |
| | 6/6/03 |

| Approved | Clarification Needed |
|---|---|
| ☒ | ☐ |

(Hand write in ink)

Department of Corrections
Supplement to the Crime/Incident Report (CDC Form 837)                    Page: 1 of 2

| Last Name, First Name Initial | Badge # | Incident Date | Incident Log # |
|---|---|---|---|
| HUERTA, F. | | 6-6-03 | CEN-FC3-03-06-0135 |

| Length of Service | Post Description | Incident Time | Report Date |
|---|---|---|---|
| 6 MO | C3 FLOOR S/O #1 | 1528 | 6-6-03 |

| RDO's | Duty Hours | Incident Location |
|---|---|---|
| W/T | 1400-2200 | C3 BUILDING |

| Description of Incident/Crime | CCR Section/Rule |
|---|---|
| BATTERY ON AN INMATE | 3005 (c) |

Your Role: ☒ Primary ☐ Responder ☒ Witness ☐ Victim ☐ Camera

Witnesses: (S) SGT. RICHARDS, (S) SGT. THOMPSON, (S) C/O DELGADILLO

Inmates Involved: (V) I/M DAVIS P93441

Force Used by You: ☐ Lethal ☐ Less Lethal ☐ Physical ☒ None
Less Lethal Weapons: ☐ 37mm ☐ Baton ☐ OC N/A ☐ Other:
Lethal Weapons: ☐ Mini-14 ☐ Shotgun ☐ Handgun N/A ☐ Other
Number of Rounds Fired: N/A
Force Observed by You: ☐ Lethal ☐ Less Lethal ☐ Physical ☒ None

Evidence Collected: ☐ Yes ☒ No  Evidence Description: N/A  Disposition: N/A  Weapon: ☐ Yes ☒ No  BIO Hazard: ☐ Yes ☒ No

Reporting Staff Injured: ☐ Yes ☒ No  Description of Injury: N/A  Location Treated: N/A  Bodily Fluid Exposure: ☐ Yes ☒ No  SCIF 3301/3067 Completed: ☐ Yes ☒ No

Narrative:
AT 1528, WHILE PERFORMING MY DUTIES AS CORRECTIONAL OFFICER AT FACILITY C, BUILDING 3, I WAS AT THE PODIUM WHEN I SAW INMATE DAVIS, CDC # P93441 WALKING TOWARD ME FROM C SECTION WITH HIS RIGHT HAND PRESSING THE LEFT SIDE OF HIS CHEST WITH A RED FLUID OVER HIS RIGHT HAND AND CHEST. I TOLD C/O VALENZUELA AT CONTROL BOOT TO BRING THE BUILDING DOWN AND INFORMED THE OTHER FLOOR OFFICER DELGADILLO, WHO WAS TALKING TO ANOTHER INMATE ABOUT I/M DAVIS. I CALLED OVER THE RADIO FOR MEDICAL EMERGENCY. WHILE I WAS APPROACHING I/M DAVIS, HE CHANGED HIS PATH TOWARD THE EXIT HALL AND STARTED TO

Reporting Staff's Signature: [signature]  Date: 6-6-03
Reviewer's Signature: [signature]  Approved: ☒  Clarification Needed: ☐  Date: 6-6-03

(Hand write in ink)

Department of Corrections

Supplement to the Crime/Incident Report (CDC Form 837)                    Page: 1 of 2

| Last Name, First Name Initial | Badge # | Incident Date | Incident Log # |
|---|---|---|---|
| ZAMORA, ████ | ████ | 6·6·03 | CEN-FC3-03-06-0135 |
| Length of Service | Post Description | Incident Time | Report Date |
| 4 yrs. | C S&E #2 | 1528 | 6·6·03 |
| RDOs | Duty Hours | Incident Location | |
| M/T | 1400-2200 | FACILITY C BUILDING 3 | |

| Description of Incident/Crime | CCR Section/Rule |
|---|---|
| STABBING/BATTERY ON I/m WITH SERIOUS INJURIES BY UNKNOWN ASSAILANT | 3005(c) |

| Your Role: | Witnesses (preface S-Staff, V-Visitor, O-Other) | Inmates Involved (preface S-Suspect, V-Victim, W-Witness) |
|---|---|---|
| ☐ Primary | (S) SGT. RICHARDS | (V) I/m DAVIS P-93441 |
| ☒ Responder | (S) SGT. THOMPSON | ----- |
| ☐ Witness | (S) C/O DELGADILLO | ----- |
| ☐ Victim | ----- | ----- |
| ☐ Camera | ----- | ----- |

| Force Used by You | Less Lethal Weapons | Lethal Weapons | Number of Rounds Fired | Force Observed by You |
|---|---|---|---|---|
| ☐ Lethal | ☐ 37mm | ☐ Mini-14 | ☐ | ☐ Lethal |
| ☐ Less Lethal | ☐ Baton | ☐ Shotgun | ☐ | ☐ Less Lethal |
| ☐ Physical | ☐ OC | ☐ Handgun | ☐ | ☐ Physical |
| ☒ None | ☐ Other: N/A | ☐ Other  N/A | N/A | ☒ None |

| Evidence Collected | Evidence Description | Disposition | Weapon | BIO Hazard |
|---|---|---|---|---|
| ☐ Yes | N/A | N/A | ☐ Yes | ☐ Yes |
| ☒ No | | | ☒ No | ☒ No |

| Reporting Staff Injured | Description of Injury | Location Treated | Bodily Fluid Exposure | SCIF 3301/3067 Completed |
|---|---|---|---|---|
| ☐ Yes | N/A | N/A | ☐ Yes | ☐ Yes |
| ☒ No | | | ☒ No | ☒ No |

Narrative:

ON 6·6·03 AT APPROXIMATELY 1528 HOURS WHILE PERFORMING MY DUTIES AS FACILITY C S&E #2, I RESPONDED TO A PERSONAL ALARM IN BUILDING 3. UPON MY ARRIVAL I SAW I/M DAVIS P-93441 HOLDING HIS CHEST WITH HIS RIGHT HAND WITH BLOOD OVER HIS CHEST. I ORDERED HIM TO GET DOWN WHICH HE COMPLIED AND I THEN CONTINUED TO SECURE THE AREA. AT A SHORT TIME LATER I ASSISTED IN PLACING I/M DAVIS ON THE MEDICAL CART. I WAS THEN ORDERED BY SGT. THOMPSON TO DRAW A SCHEMATIC OF THE I/M'S

| Reporting Staff's Signature | | | Date |
|---|---|---|---|
| [signature] | | | 6·6·03 |
| Reviewer's Signature | Approved | Clarification Needed | Date |
| [signature] | ☒ | ☐ | 6-6-03 |

(Hand write in ink)

Department of Corrections
Supplement to the Crime/Incident Report (CDC Form 837)                    Page:  1  of 2

| Last Name, First Name Initial | | Badge # | | Incident Date | | Incident Log # |
|---|---|---|---|---|---|---|
| DELGADILLO | | | | 6-6-03 | | CEN-FC3-03-06-0135 |
| Length of Service | | Post Description | | Incident Time | | Report Date |
| 4 yrs 4 months | | C3 FLR #2 | | 1528 | | 6-6-03 |
| RDOs | | Duty Hours | | Incident Location | | |
| S/M | | 1400-2200 | | FACILITY C BUILDING 3 | | |

| Description of Incident/Crime | | | | CCR Section/Rule |
|---|---|---|---|---|
| STABBING / BATTERY ON I/M WITH SERIOUS INJURIES ASSAILANT BY UNKNOWN | | | | 3005 (C) |

| Your Role | Witnesses (prefact S-Staff, V-Visitor, O-Other) | Inmates Involved (prefact S-Suspect, V-Victim, W-Witness) |
|---|---|---|
| ☒ Primary | (S) SGT. RICHARDS | (V) I/M DAVIS (P-93441) |
| ☐ Responder | (S) SGT. THOMPSON | |
| ☐ Witness | (S) % F. HUERTA | |
| ☐ Victim | (S) % VALENZUELA | |
| ☐ Camera | (S) % ZAMORA | |

| Force Used by You | | Less Lethal Weapons | | Lethal Weapons | | Number of Rounds Fired | Force Observed by You | |
|---|---|---|---|---|---|---|---|---|
| ☐ Lethal | | ☐ 37mm | | ☐ Mini-14 | | | ☐ Lethal | |
| ☐ Less Lethal | | ☐ Baton | | ☐ Shotgun | | | ☐ Less Lethal | |
| ☐ Physical | N/A | ☐ OC | N/A | ☐ Handgun | N/A | N/A | ☐ Physical | |
| ☐ None | | ☐ Other: | | ☐ Other | | | ☒ None | |

| Evidence Collected | Evidence Description | Disposition | Weapon | BIO Hazard |
|---|---|---|---|---|
| ☐ Yes ☒ No | N/A | N/A | ☐ Yes ☒ No | ☐ Yes ☒ No |

| Reporting Staff Injured | Description of Injury | Location Treated | Bodily Fluid Exposure | SCIF 3301/3067 Completed |
|---|---|---|---|---|
| ☐ Yes ☒ No | N/A | N/A | ☐ Yes ☒ No | ☐ Yes ☒ No |

Narrative:

ON FRIDAY 6-6-03, AT APPROXIMATELY 1528 HOURS, WHILE PERFORMING MY DUTIES AS C3 FLR #2 I WAS SUPERVISING THE RECALL OF THE AFTERNOON YARD WHEN MY PARTNER CORRECTIONAL OFFICER F. HUERTA ADVISED ME THAT INMATE DAVIS (P-93441, C3/500) APPEARED TO BE STABBED. I OBSERVED INMATE DAVIS WALKING LOWER C-SECTION WITH HIS RIGHT ARM CROSSED OVER HIS UPPER LEFT CHEST WITH WHAT APPEARED TO BE BLOOD ON HIS RIGHT HAND AND TORSO AREA. I TOLD CORRECTIONAL OFFICER VALENZUELA, C3 CONTROL BOOTH OFFICER, TO PRESS THE BUILDING ALARM. INMATE DAVIS WALKED INTO THE BUILDING SALLYPORT AS RESPONDING STAFF ARRIVED

| Reporting Staff's Signature | | | Date |
|---|---|---|---|
| | | | 6-6-03 |
| Reviewer's Signature | Approved | Clarification Needed | Date |
| | ☒ | ☐ | 6/6 |

(Hand write in ink)

Department of Corrections

## Supplement to the Crime/Incident Report (CDC Form 837)

Page: 1 of 1

| Last Name, First Name Initial | Badge # | Incident Date | Incident Log # |
|---|---|---|---|
| SANTOS | | 6·6·03 | VEN·FC3·03·06·0135 |

| Length of Service | Post Description | Incident Time | Report Date |
|---|---|---|---|
| 5 yrs 11 mo. | C-DINING OBS. | 1528 | 6·6·03 |

| RDOs | Duty Hours | Incident Location | |
|---|---|---|---|
| T/W | 1400·2200 | Facility C Building 3 | |

| Description of Incident/Crime | CCR Section/Rule |
|---|---|
| STABBING/BATTERY ON Inm w/SERIOUS INJURIES by Unknown Assailant | 3005(c) |

**Your Role**
- [ ] Primary
- [X] Responder
- [ ] Witness
- [ ] Victim
- [ ] Camera

**Witnesses** (preface S-Staff, V-Visitor, O-Other)
(S) SGT. RICHARD
(S) SGT. THOMPSON
(S) C. DeGrullo

**Inmates Involved** (preface S-Suspect, V-Victim, W-Witness)
(V) DAVIS  P-93441

**Force Used by You**
- [ ] Lethal
- [ ] Less Lethal
- [ ] Physical
- [X] None

**Less Lethal Weapons**
- [ ] 37mm
- [ ] Baton
- [ ] OC    N/A
- [ ] Other:

**Lethal Weapons**
- [ ] Mini-14
- [ ] Shotgun
- [ ] Handgun  N/A
- [ ] Other

**Number of Rounds Fired**

**Force Observed by You**
- [ ] Lethal
- [ ] Less Lethal
- [ ] Physical
- [X] None

| Evidence Collected | Evidence Description | Disposition | Weapon | BIO Hazard |
|---|---|---|---|---|
| [ ] Yes [X] No | N/A | N/A | [ ] Yes [X] No | [ ] Yes [X] No |

| Reporting Staff Injured | Description of Injury | Location Treated | Bodily Fluid Exposure | SCIF 3301/3067 Completed |
|---|---|---|---|---|
| [ ] Yes [X] No | N/A | N/A | [ ] Yes [X] No | [ ] Yes [X] No |

**Narrative:**

ON 6·6·03 AT APPROXIMATELY 1528 HRS. I RESPONDED
TO A PERSONAL ALARM IN C-3. UPON ARRIVAL, I
SAW INMATE DAVIS P-93441 LAYING ON HIS BACK
IN THE C-3 SALLYPORT HOLDING HIS CHEST, WITH BOTH
HANDS AND BLOOD OVER HIS CHEST AND HANDS.
I WAITED FOR THE MEDICAL CART AND ASSISTED
IN PLACING DAVIS ON THE CART, I THEN ASSISTED
IN UNCLOTHED BODY SEARCHES OF INMATES ON THE YARD
AND ASSISTED IN the SECURING THE REMAINING INMATES.

| Reporting Staff's Signature → | Date |
|---|---|
| | 6·6·03 |

| Reviewers Signature → | Approved | Clarification Needed | Date |
|---|---|---|---|
| | [ ] | [ ] | 6-6-03 |

(Hand write in ink)



Department of Corrections
Supplement to the Crime/Incident Report (CDC Form 837)                    Page: 1 of 1

| Last Name, First Name, Initial | Badge # | Incident Date | Incident Log # |
|---|---|---|---|
| Valenzuela ████ | ████ | 6-6-03 | CEN-FC3-03-06-0135 |
| Length of Service | Post Description | Incident Time | Report Date |
| 1 year 11 months | C3 Control | 1528 | 6-6-03 |
| RDOs | Duty Hours | Incident Location | |
| W/Th | 1400-2200 | Building C3 | |

| Description of Incident/Crime | | CCR Section/Rule |
|---|---|---|
| Stabbing/battery on Inmate with Serious Injury & Unknown Assailant | | 3005(c) |

| Your Role: | Witnesses (preface S-Staff, V-Visitor, O-Other) | Inmates Involved (preface S-Suspect, V-Victim, W-Witness) |
|---|---|---|
| [X] Primary | Sgt. Richards | Davis P93441 |
| [ ] Responder | CO Delgadillo | |
| [ ] Witness | CO Huerta | |
| [ ] Victim | | |
| [ ] Camera | | |

| Force Used by You | Less Lethal Weapons | Lethal Weapons | Number of Rounds Fired | Force Observed by You |
|---|---|---|---|---|
| [ ] Lethal | [ ] 37mm | [ ] Mini-14 | [X] Zero | [ ] Lethal |
| [ ] Less Lethal | [ ] Baton | [ ] Shotgun | | [ ] Less Lethal |
| [ ] Physical | [ ] OC | [ ] Handgun | | [ ] Physical |
| [X] None | [ ] Other: NA | [ ] Other NA | NA | [X] None |

| Evidence Collected | Evidence Description | Disposition | Weapon | BIO Hazard |
|---|---|---|---|---|
| [ ] Yes | NA | NA | [ ] Yes | [ ] Yes |
| [X] No | | | [X] No | [X] No |

| Reporting Staff Injured | Description of Injury | Location Treated | Bodily Fluid Exposure | SCIF 3301/3067 Completed |
|---|---|---|---|---|
| [ ] Yes | NA | NA | [ ] Yes | [ ] Yes |
| [X] No | | | [X] No | [X] No |

Narrative:
While performing my duties on 6-6-03, Building Control Officer C3 at about 1528 floor staff told me to hit my alarm. After having the inmates sit down by verbal commands I looked through the center floor and glass and saw inmate Davis P93441 C3-150U dying on the floor with blood on him. I threw two (Bloodborne Path Kits 3274) to the floor next to him and continued to provide coverage until this incident was over.

| Reporting Staff's Signature | | | Date |
|---|---|---|---|
| [signature] | | | 6-6-03 |
| Reviewer's Signature | Approved | Clarification Needed | Date |
| [signature] | [✓] | [ ] | 6-6-03 |

(Hand write in ink)

# Exhibit Cover Sheet

DESCRIPTION OF EXHIBIT:    Staff Body/Clothing Search Report

NUMBER OF EXHIBIT PAGES:    1 Page

# EXHIBIT  S

Department of Corrections                                        ID#

**Supplement to the Crime/Incident Report (CDC Form 837C)**          Page: 2 of 3

| Last Name, First Name Initial | Badge # | Incident Date | Incident Log # |
|---|---|---|---|
| Holt, | | June 6, 2003 | CEN-FC3-03-06-0135 |

☒ **Continuation of Report**    ☐ **Additional Information**    ☐ **Clarification Request**

**Narrative:**

who might be involved and to determine if there was any physical evidence. Subsequently, I discovered several small drops of blood on the dayroom floor. The blood drops went from the sallyport of building three to cell 149. Additionally, I discovered clothing just outside of cell 149 with blood on them. At that point, I placed placards on the aforementioned items beginning with placard number one and ending with placard number twenty-one.

At approximately 1650 hours, I assisted with the process of conducting unclothed body searches on <u>all of the inmates within the crime scene</u>. While conducting the aforementioned unclothed body search on inmate Bishop, K-27260 who was located underneath the inmate television set approximately thirty-five feet away from cell 149, I instructed Bishop to place his hands straight out in front of him with his palms down. Bishop complied with my order. As I inspected his knuckles for any injuries I noticed Bishop's hands shaking uncontrollably. I then instructed Bishop to place his palms up to check for any injuries. I observed the palms of his hands to be extremely dampened. Subsequently, I conducted an informal preliminary interview with Bishop. I asked Bishop why are you so shaky? Bishop stated, "no I'm cool." I asked Bishop if he was sure he was cool (alright)? Bishop refused to answer my question.

At approximately 1730 hours, once all the inmates in building three were escorted back to their assigned cells, I began to collect the following items for evidence,

- FH-01, One white washcloth with blood.
- FH-02, One pair of gray sweatpants with blood.
- FH-03, One state issued chambray shirt with blood.
- FH-04, One pair of gray shorts with blood.
- FH-05, One "Sparkletts" water bottle with blood.

At approximately 1830 hours, with the assistance of Officer Sanchez, I placed evidence items FH-01 through FH-05 into locker C-10 located inside Centinela State Prison's evidence room.

At approximately 2118 hours, with the assistance of Security Squad Officer C. Romero, I conducted a cell search of cell 112. Cell C3-112 is occupied/assigned to inmates Bishop and Goffney, J-71938 (verified by housing unit roster). During the course of the cell search I observed a pair of white tennis shoes (Fila) located underneath the desk against the South wall. As I examined the shoes, I noticed two spots of blood on the right shoe (refer to Officer Romero's photographs). I asked Goffney who the shoes belonged to? Goffney stated, "those are not mine."

At approximately 2130 hours, I conducted a "Hemident" test on the spots of suspected blood. The test proved positive for blood.

At approximately 2130 hours, I collected the tennis shoes for evidence labeling them item FH-06. Maintaining sole

| Reporting Staff Signature | | | | Date |
|---|---|---|---|---|
| F. Holt | | | | June 6, 2003 |

| Reviewers Signature | | Approved | Clarification Needed | Date |
|---|---|---|---|---|
| N. S. Rodriguez | | ☒ | ☐ | June 6, 2003 |

# Exhibit Cover Sheet

DESCRIPTION OF EXHIBIT:     Crime/Incident Report

NUMBER OF EXHIBIT PAGES:     4 Pages

# EXHIBIT   T

**INMATE COPY**

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

# CRIME / INCIDENT REPORT
## PART A - COVER SHEET

CDC 837-A (08/95)

Page 1of

| | |
|---|---|
| **Incident Log Number** | CEN-FC3-03-06-0135 |

| Institution / Facility | Incident Site / Location | Date of Incident | Time of Incident |
|---|---|---|---|
| Centinela State Prison/ Facility C | Facility C Building #3, LEVEL IV | 06/06/03 | 1528 Hours |

| Specific Crime / Incident | D.A. Referral | Section / Code / Rule Number |
|---|---|---|
| STABBING/BATTERY ON AN INMATE WITH SERIOS INJURY BY UNKNOWN ASSAILANTS | ☒ Yes ☐ No | 3005-c |

| SERT Activated? (Enter Y or N) | Negotiation Team Activated? | Mutual Aid Requested? (Enter Y or N) | Media Notified? (Enter Y or N) |
|---|---|---|---|
| N | N | N | N |

### Related Information (Check all that apply)

| Deaths | Cause of Death | Assault / Battery | Type of Assault |
|---|---|---|---|
| ☐ Staff | ☐ Homicide | ☐ On Staff | ☐ Beating     ☐ Strangling |
| ☐ Visitor | ☐ Suicide | ☐ On Visitor | ☐ Shooting     ☐ Slashing |
| ☐ Inmate   N/A | ☐ Accidental | ☒ On Inmate | ☒ Stabbing     ☐ Sexual |
| | ☐ Natural   N/A | ☐ Other | ☐ Spearing     ☐ Other N/A |
| | | | ☐ Poisoning |

| Serious Injury | Inmate Weapons | | Shots Fired | Type Weapon (Staff) |
|---|---|---|---|---|
| ☐ Staff | ☐ Firearm | ☒ Stabbing Instrument | ☐ Yes  ☒ No | ☐ 38 Cal. |
| ☐ Visitor | ☐ Knife | ☐ Hands / Feet | Number Fired  N/A | ☐ Mini 14 |
| ☒ Inmate | ☐ Spear | ☐ Club / Bludgeon | | ☐ H&K 94 |
| | ☐ Explosive | ☐ Caustic Substance | **Escapes** | ☐ Shotgun |
| ☐ Accidental | ☐ Projectile | ☐ Other N/A | ☐ With Force | ☐ 37 MM |
| ☐ Attempted Suicide | ☐ Slashing Instrument | ☐ Inmate Manufactured | ☐ Without Force | ☐ Taser |
| ☐ Other | ☐ Commercial | | ☐ Attempted | ☐ PR 24 |
| | | | | ☐ Other  N/A |

| Suspected Controlled Substance | Lockdowns | Exceptional Activity | |
|---|---|---|---|
| ☐ Heroin / Opiates | ☐ Yes  ☒ No | ☐ Major Disturbance | ☐ Employee Job Action |
| ☐ Cocaine | | ☐ Inmate Strike | ☐ Major Power Outage |
| ☐ Marijuana | If Yes, list affected programs | ☐ Public Demonstration | ☐ Explosion |
| ☐ Amphetamine | below: All inmates on Facility | ☐ Inmate Demonstration | ☐ Fire |
| ☐ Barbiturate | C were placed on modified | ☐ Natural Disaster | ☐ Hostage |
| ☐ LSD | program. | ☐ Environmental Hazard | ☐ Gang Involved |
| ☐ PCP | | ☐ "Special Interest Inmate" | ☐ Other |
| ☐ Methamphetamine | | ☐ Weather   N/A | |
| ☐ Other  N/A | | | |

### Description of Crime / Incident

On Friday, June 6, 2003, at about 1528 Hours, Inmate Davis P-93441 C3-150U, was found in building c-3 with a serious stab wound to his chest.

On Friday, June 6, 2003, at about 1528 hours, while monitoring yard recall, Correctional Officer Huerta, C3 Floor Officer #1 observed inmate Davis P-93441 walking from the lower C section of building C-3, toward the sally port with his right hand pressing the left side of his chest, with what looked like blood on his right hand and chest area. Officer Huerta then advised the control booth officer Valenzuela to activate the alarm, and put the building down. After activating his alarm, Officer Valenzuela announced over his state issued radio that there was a medical emergency in building C-3. Inmate Davis who was now in the building sally port was then ordered to get down by responding staff Correctional Officer Zamora, C yard S&E #2, and Correctional Sergeant Thompson, C Yard Sergeant. Once Davis was down, Officer Zamora and Sergeant Thompson continued in the building to secure the area.

☒ Check here if description is continued on part C

| Name / Title / Signature of Reporting Staff | Badge / I.D. # | Service (Institution Use) | Date |
|---|---|---|---|
| P Falconer, Correctional Lieutenant | | | 06/06/03 |

| Authorized Signature / Title (Institution Use) | | | Date |
|---|---|---|---|
| G. J. GIURBINO, Warden 4   J. P Hobbs, LT. | | | 6-9-03 |

STATE OF CALIFORNIA                                                                    DEPARTMENT OF
CORRECTION

# CRIME / INCIDENT REPORT
## PART C – SUPPLEMENT
CDC 837-C (08/95)

Page of

| Incident Log Number |
|---|
| CEN-FC3-03-06-0135 |

| Institution / Facility | Incident Site / Location | Date of Incident | Time of Incident |
|---|---|---|---|
| CENTINELA STATE PRISON/ c | FACILITY C Building 3 | 06/06/03 | HOURS |

**Type of Information**

☒ Continuing Description of Incident (Part A)          ☐ Supplemental          ☐ Closure Report

**Narrative**

As Sergeant Thompson, and Officer Zamora exited the sally port, Sergeant Richards, C Program Sergeant, entered the sally port, and upon seeing inmate Davis with blood on his chest, asked what had happened. Davis said, " I have been stabbed really bad". After observing the injuries Sergeant Richards began lifesaving first aid on the inmate by applying pressure to the wound to stop the bleeding. Then while calling for the medical cart on his state issued radio, inmate Davis went unconscious. Sergeant Richards then notified Central Control of the seriousness of the injuries and informed them that an outside ambulance would be needed. Medical Technical Assistant (MTA) Houston then entered the sally port. He observed that inmate Davis had a one-inch elliptical wound on his left chest anterior wall. MTA Houston then dressed the wound with gauze. The medical cart then arrived on the scene driven by Correctional Officer Chavez, C Yard #1. With the assistance of Sgt Richards, and Officer Zamora, MTA Houston placed inmate Davis on the medical cart.

Correctional Officer Salazar, ISU #2, and Officer Rosas, ISU #4 observed inmate Davis being removed from Facility C by medical cart, so they followed him to Central Health. Officer Rosas photographed what appeared to be a life-threatening stab wound to inmate Davis chest.

At about 1531 hours inmate Davis entered Central Health on the medical cart driven by C/O Chavez.

At about 1534 hours, Davis was treated by the on-duty emergency room medical staff.

At about 1555 Gold Cross Ambulance entered the vehicle sally port, at about 1558 was at Central Health.

Davis was then immediately loaded on the ambulance, and at about 1605 Gold Cross Ambulance exited the vehicle sally port, Code 3 in route to El Centro Regional Medical Center.

Officers Rosas, Chavez, Salazar followed the ambulance in another vehicle.

At about 1622 Davis arrived El Centro Regional Medical Center for treatment.

After inmate Davis was removed from the C3 sally port, Officer Huerta was sent up to the control booth to provide additional gun coverage.

Sgt Richards, and Sgt Thompson supervised the unclothed body searches of all the inmates on the yard, and assisted in recalling all unaffected areas.

Sgt Thompson instructed Officer Zamora to draw a schematic of all inmates in front of buildings C1, C3 and the Yard.

At about 1530 hours the Security Squad arrived in building C-3, to assist, and process the crime scene.

Correctional Sergeant Rodriguez, ISU Sergeant, arrived and instructed Correctional Officer Montejano, C law Library Officer, and Correctional Officer Nieto, ASU Law Library officer to identify all the inmates on the day-room floor, and to make a schematic of these inmates.

| Name / Title / Signature of Reporting Staff | Badge / I.D. # | Service (Institution Use) | Date |
|---|---|---|---|
| P Falconer, Correctional Lieutenant | | | 06/06/03 |

| Authorized Signature / Title (Institution Use) | | Date |
|---|---|---|
| G. J. GIURBINO, Warden *J. D. Hobbs, ₵.* | | 6-9-03 |

# CRIME / INCIDENT REPORT
## PART C - SUPPLEMENT

Page      of

CDC 837-C (08/95)

| | Incident Log Number |
|---|---|
| | CEN-FC3-03-06-0135 |

| Institution / Facility | Incident Site / Location | Date of Incident | Time of Incident |
|---|---|---|---|
| Centinela State Prison | FAC C BUILDING 3, LEVEL IV | 06-06-03 | 1528 HOURS |

**Type of Information**

☒ Continuing Description of Incident (Part A)    ☐ Supplemental Information    ☐ Closure Report

**Narrative**

Correctional Officer Holt, ISU #3 and Officer Sanchez, ISU #8 cordoned the crime scene with yellow crime scene tape. Officer Holt placed yellow place cards numbering 1-21 near blood spots and evidence on the dayroom floor.

Correctional Officer Romero, ISU #6 took photographs of the inmates and markers on the dayroom floor.

While conducted unclothed body searches of inmates in the crime scene, Officer Nieto found inmate Dabney, K55204, C3-149L with an injury to his right lower back hip. Sgt. Rodriguez was advised of Dabney's injuries and Dabney was handcuffed and escorted to the C yard medical clinic for a CDC 7219 Medical Report of Injury or Unusual Occurrence.

After all inmates were removed from the day room, Officer Holt collected evidence and placed it in evidence locker C-10. Officer Romero placed 10 rolls of 12-exposure film into evidence locker #1.

After returning from the hospital, Officer Rosas placed 4 rolls of 12-exposure film into evidence locker #5.

As a result of the unclothed body searches and initial investigation, inmate Dabney, K55204 was re-housed in Ad Seg cell A5-121U, inmate Smith, P47555 was re-housed in Ad Seg cell A5-147L and inmate Bishop was rehoused in Ad Seg cell C2-229L.

Inmate Davis P93441 will be housed in Ad Seg upon release from medical.

Medical Technical Assistant Houston, C medical clinic, completed a CDC 7219 on inmate Dabney, it noted: a small laceration/bruise to the right upper hip area with no bleeding and no other injuries noted. Inmate Smith's and Bishop's CDC 7219's noted: no injuries.

Due to the ongoing investigation there were no CDC 115 RVR's issued at this time.

This matter will be referred to the Imperial County District Attorney's office for possible felony prosecution.

There were no shots fired, nor injuries to staff, or inmates other than those involved, no damage to state property as a result of this incident.

Injuries sustained to inmates were a direct result of the battery, and not by any force used by staff.

The following Administrative Staff was notified, Lt. F. Caldwell, Watch Commander, Captain R. Galindo, Associate Warden-Complex II, J. Salazar.

You will be apprised of any developments via supplemental reports.

| Name / Title / Signature of Reporting Staff | Badge /.I.D. # | Service (Institution Use) | Date |
|---|---|---|---|
| P. FALCONER, CORRECTIONAL LIEUTENANT | | | 6/6/03 |
| **Authorized Signature / Title (Institution Use)** | | | Date |
| G.J. GIURBINO, Warden    J. D. Dobbe, LT. | | | 6-9-03 |

CRIME / INCIDENT REPORT **AMENDED**

# PART C - SUPPLEMENT

CDC 837-C (08/95)

Page  of

**Incident Log Number**
CEN-FC3-03-06-0135

| Institution / Facility | Incident Site / Location | Date of Incident | Time of Incident |
|---|---|---|---|
| Centinela State Prison | FAC C BUILDING 3, LEVEL IV | 6/06/03 | 1528 |

**Type of Information**

☐ Continuing Description of Incident (Part A)      ☒ Supplemental Information      ☐ Closure Report

**Narrative**

This CDC 837 is being amended for the following:

1. To include inmates Gaffney, J71938 and Harris E46844 in the part B.
2. Inmate Gaffney, J71938 and inmate Harris, E46844 were identified by inmate Davis as being involved in the assault on him.   Both inmates were housed in Ad Seg pending an investigation for their involvement in the incident.

| Name / Title / Signature of Reporting Staff | Badge / I.D. # | Service (Institution Use) | Date |
|---|---|---|---|
| P.G. FALCONER | ▉▉▉▉ | ▉▉▉▉▉▉ | 6/24/03 |
| Authorized Signature / Title (Institution Use) | | | Date |
| G. GIURBINO, Warden | | | |

# Exhibit Cover Sheet

DESCRIPTION OF EXHIBIT:    DAVIS Exculpatory Testimony

NUMBER OF EXHIBIT PAGES:    2 Pages

# EXHIBIT   U

('Per Director's Rule, §3320(1), CCR')

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

**RULES VIOLATION REPORT - PART C**

PAGE 2 OF 9

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| E-46844 | HARRIS | FC-03-06-026 | CENTINELA | 8/19/03 |

| ☐ SUPPLEMENTAL | ☐ CONTINUATION OF: | ☐ 115 CIRCUMSTANCES | ☑ HEARING | ☐ IE REPORT | ☐ OTHER_____ |
|---|---|---|---|---|---|

### (WITNESS C/O BACH CONTINUED)

The following questions were asked of Witness C/O BACH by Inmate HARRIS:

Witness C/O Bach, present at hearing.

Q. After considering this information, what was the usual outcome of these kites or allegations once allowed to run their course?

A. This incident occurred on 3/W. I'm assigned to 2/W. I have no knowledge of you being targeted for assault.

Q. During my stay at Centinela within the several months proceeding my segregational placement, was I occasionally targeted with allegations of one nature or another?

A. This incident occurred on 3/W. I'm assigned to 2/W. I have no knowledge of you being targeted for assault.

Q. Through your own research would you say that the allegations were of the most part an ongoing effort to get me removed from the yard, considering nothing was ever corroborated, how so or in what way?

A. This incident occurred on 3/W. I'm assigned to 2/W. I have no knowledge of you being targeted for assault.

The following questions were asked of Witness Inmate Davis, P-93441, by Inmate HARRIS:

Witness Davis, was questioned via speaker telephone, Inmate Harris stated this was acceptable. Inmate Davis is currently at LAC.

Q. What is the nature of my relationship with you?

A. None.

Q. For the time period that we have known each other have we ever had any dispute, misunderstanding or problems with one another?

A. A couple of times.

Q. On June 6, 2003, did I ever force or threaten you to fight another inmate?

A. No.

Q. Did I become aware that you had a dispute with another inmate when I got off of work on June 6?

A. No

Q. Based on your personal knowledge of the assault, did I order, participate and orchestrate the stabbing against you?

A. No

Q. At yard recall on June the 6th, did you ever see me at the cell door of cell 149, witnessing preparations for a fight or stabbing?

A. No.

Q. The 115 issued to me states. I stood at cell 149 and observed inmate Dabney move property. Is this what you observed?

A. Yes, Harris witnessed all.

Q. The 115 also states, that I stood in the cell door and watched you get stabbed in the chest, is this correct?

A. No.

Q. Did you ever see me push other inmates into you to keep you from getting out of cell 149?

A. No.

Q. Did I have any reason or desire to see you hurt or stabbed?

A. No.

Q. Did I have anything whatsoever to do with you being stabbed?

A. No.    ( testimony continued on next page )

LT. B.E. DAUBENSPECK, Senior Hearing Officer

| SIGNATURE OF WRITER | | DATE SIGNED 9-18-03 |
|---|---|---|

| ☐ COPY OF CDC 115-C GIVEN TO INMATE | GIVEN BY: (Staff's Signature) | DATE SIGNED 10-14-03 | TIME SIGNED 1515 |
|---|---|---|---|

CDC 115-C (5/95)

OSP 99 25082

STATE OF CALIFORNIA

**RULES VIOLATION REPORT - PART C**

DEPARTMENT OF CORRECTIONS
PAGE 3 OF 7

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| E-46844 | HARRIS | FC-03-06-026 | CENTINELA | 8/19/03 |

☐ SUPPLEMENTAL   ☒ CONTINUATION OF:   ☐ 115 CIRCUMSTANCES   ☒ HEARING   ☐ IE REPORT   ☐ OTHER_____

### (CONTINUATION OF WITNESS DAVIS)

The following questions were asked of Witness Inmate Davis, P-93441, by Inmate HARRIS:

Witness Davis, was questioned via speaker telephone, Inmate Harris stated this was acceptable. Inmate Davis is currently at LAC.

Q. Do you consider me as your enemy?
A. No.
Q. Did any Prison staff tell you that I ordered, planned and orchestrated a stabbing against you, If so who?
A. ISU told me in here.
Q. What interest do I have in you or any of your immediate associates?
A. None.
Q. Is it in your personal knowledge that if I was aware of any bodily harm about to come to you, I would do anything to prevent it?
A. No.

_____ END OF TESTIMONY BY INMATE DAVIS _____

The following questions were asked of Witness Lieutenant (A) P. Falconer, Incident Commander.

Witness Lieutenant P. Falconer, present at hearing.

Q. If the surveillance video depicts the ingress and egress into a crime scene before it's occurrence, would this be considered relevant evidence?
A. If the camera showed or recorded the incident it would be evidence. I checked with Control the tape of 6/6/03 has been recorded over. The tape would only show ingress and regress, not the crime scene.
Q. Why wasn't the video additionally secured into evidence locker which could unequivocally depict the sequence time of each inmate who specifically entered the housing unit before or after or with inmate Davis?
A. The camera wasn't positioned towards Building C 3 and no relevant evidence was recorded.
Q. When acting as an incident commander, is it protocol for you to consider whether the facility surveillance tape is to be collected as evidence, where inmates are entering into and out of a potential crime scene or where a assailant is not detained?
A. It is my decision to consider the surveillance tape if only tape of the crime scene is placed in evidence, if it was pointed in the direction of the incident and shows anything relevant.
Q. What does the procedure require for evidence of this of this nature which could exonerate or implicate a charged inmate, relative to it's removal and storage?
A. If it shows any evidence it is to be removed from recorder labeled with time, date, and log # of incident, logged into evidence and secured in an evidence locker.
Q. How was the determination arrived at that the surveillance video of the Facility 'C' yard recall was not to be collected, where it's contents could possibly exonerate or implicate any inmate during the inception of the investigation?
A. The contents of the video did not show anything relevant to the incident. I viewed the video before a decision was made.
Q. Was there a determination made whether the source who had given information in the past did so, so it would be believed when the opportunity arose in the future to make allegations directed towards me?
A. Yes.
Q. Was there a determination made whether the source had a grudge against me or possibly wanted to shift blame for his involvement in the incident, if involved?
A. Yes

LT. B.E. DAUBENSPECK, SENIOR HEARING OFFICER

| SIGNATURE OF WRITER | DATE SIGNED |
|---|---|
| | 9-15-03 |

| | GIVEN BY: (Staffs Signature) | DATE SIGNED | TIME SIGNED |
|---|---|---|---|
| ☐ COPY OF CDC 115-C GIVEN TO INMATE | | 10-14-03 | 15:15 |

CDC 115-C (5/95)

OSP 99 25082