1 | EDMUND G. BROWN JR.
Attorney General of the State of California
2 | DANE R. GILLETTE
Chief Assistant Attorney General
3 | JULIE L. GARLAND
Senior Assistant Attorney General
4 | HEATHER BUSHMAN
Supervising Deputy Attorney General
5 | KIM AARONS, State Bar No. 213480
Deputy Attorney General
6 |   110 West A Street, Suite 1100
  San Diego, CA 92101
7 |   P.O. Box 85266
  San Diego, CA 92186-5266
8 |   Telephone: (619) 525-4398
  Fax: (619) 645-2581
9 |   Email: Kim.Aarons@doj.ca.gov

10 | Attorneys for Respondent

11 | IN THE UNITED STATES DISTRICT COURT

12 | FOR THE SOUTHERN DISTRICT OF CALIFORNIA

13 |

| | |
|---|---|
| **MARK A. HARRIS,** | Case No. CV 07-2216 JAH (BLM) |
| Petitioner, | **ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS; SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES** |
| v. | |
| **TOMMY FELKER, Warden, et al.,** | |
| Respondent. | Judge:    Hon. Barbara L. Major |

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

Page

INTRODUCTION ............................................................................. 5

FACTUAL AND PROCEDURAL BACKGROUND ....................... 5

ARGUMENT .................................................................................... 8

    I.    **STANDARD OF REVIEW** ........................................... 8

    II.   **HARRIS HAS FAILED TO ALLEGE A COGNIZABLE CLAIM FOR FEDERAL HABEAS CORPUS RELIEF** ............ 10

    III.  **THE STATE COURT DECISIONS WERE NOT CONTRARY TO OR AN UNREASONABLE APPLICATION OF UNITED STATES SUPREME COURT AUTHORITY AND WERE NOT BASED ON AN UNREASONABLE DETERMINATION OF THE FACTS** ......... 11

CONCLUSION .............................................................................. 15

1

## TABLE OF AUTHORITIES

2

**Page**

3  **Cases**

4  *Badea v. Cox*
   931 F.2d 573 (9th Cir.1991) ............................................... 10
5
   *Bell v. Cone*
6  535 U.S. 685 (2002) ............................................................ 9

7  *Early v. Packer*
   537 U.S. 3 (2002) ............................................................... 9
8
   *Harris v. Superior Court*
9  500 F.2d 1124 (9th Cir. 1974) ........................................... 8

10  *Lee v. Schmidt-Wenzel*
    766 F.2d 1387 (9th Cir. 1985) ......................................... 10
11
    *Lindh v. Murphy*
12  521 U.S. 320 (1997) ......................................................... 8

13  *Lockyer v. Andrade*
    538 U.S. 63 (2003) ........................................................... 9
14
    *Middleton v. Cupp*
15  768 F.2d 1083 (9th Cir. 1985) ......................................... 11

16  *O'Bremski v. Maass*
    915 F.2d 418 (9th Cir. 1990) ........................................... 11
17
    *Preiser v. Rodriguez*
18  411 U.S. 475 (1973) ......................................................... 10

19  *Pulley v. Harris*
    465 U.S. 37 (1984) ........................................................... 11
20
    *Rose v. Hodges*
21  423 U.S. 19 (1975) ........................................................... 11

22  *Sandin v. Connor*
    515 U.S. 472 (1995) ..................................................... 10, 14
23
    *Serrano v. Francis*
24  345 F.3d 1071 (9th Cir. 2003) ......................................... 10

25  *Superintendent v. Hill*
    472 U.S. 445 (1985) ..................................................... 12, 14
26
    *Taylor v. Maddox*
27  366 F.3d 992 (9th Cir. 2004) ............................................. 9

28

## TABLE OF AUTHORITIES  (continued)

**Page**

*Torres v. Prunty*
223 F.3d 1103 (9th Cir. 2000)                                              9

*Walker v. Summer*
14 F.3d 1415 (9th Cir. 1994)                                             14

*Williams v. Taylor*
529 U.S. 362 (2000)                                                       9

*Wolff v. McDonnell*
418 U.S. 539 (1974)                                                    11-14

*Woodford v. Visciotti*
537 U.S. 19 (2002)                                                        8

*Ylst v. Nunnemaker*
501 U.S. 797 (1991)                                                      12

**Statutes**

28 United States Code
        § 2254                                                           11
        § 2254 (a)                                                       11
        § 2254 (d)                                                     8, 15
        § 2254 (d)(1)                                                   8, 9
        § 2254 (d)(2)                                                      9

California Code of Regulations
        Title 15, § 3005(c)                                                7
        Title 15, § 3323                                                   7
        Title 15, § 3323 (b)(3)                                           11
        Title 15, § 3323 (b)(8)                                            7

California Penal Code
        § 2932(a)(1)                                                       7

EDMUND G. BROWN JR.
Attorney General of the State of California
DANE R. GILLETTE
Chief Assistant Attorney General
JULIE L. GARLAND
Senior Assistant Attorney General
HEATHER BUSHMAN
Supervising Deputy Attorney General
KIM AARONS, State Bar No. 213480
Deputy Attorney General
 110 West A Street, Suite 1100
 San Diego, CA 92101
 P.O. Box 85266
 San Diego, CA 92186-5266
 Telephone: (619) 525-4398
 Fax: (619) 645-2581
 Email: Kim.Aarons@doj.ca.gov

Attorneys for Respondent

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **MARK A. HARRIS,** | Case No. CV 07-2216 JAH (BLM) |
| Petitioner, | **ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS; SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES** |
| v. | |
| **TOMMY FELKER, Warden, et al.,** | |
| Respondent. | Judge:    Hon. Barbara L. Major |

As an Answer to the Petition for Writ of Habeas Corpus filed by inmate Mark A. Harris, Respondent, admits, alleges, and denies that:

1.    Harris is in the lawful custody of the California Department of Corrections and Rehabilitation (CDCR) following his 1989 conviction of one count of first degree murder with a weapon use enhancement, and one count of second degree murder.  (Lodg. 1 - Abstract of Judgment.[1/]) Harris is serving a sentence of twenty-six years to life in prison.  (*Id.*)  Harris does not challenge the validity of his conviction or sentence in this Petition.  Rather, he alleges that he was denied due process at his 2004 prison disciplinary hearing in which the hearing officer found Harris

1. Respondent is concurrently filing the Notice of Lodgments.

1 guilty of participating in the stabbing battery of another inmate. Harris contends that the hearing

2 officer impermissibly relied on confidential information, and Harris was not permitted obtain

3 sufficient discovery or call witnesses in order to prepare his defense in response to the disciplinary

4 charges. Harris also alleges that his disciplinary violation was improperly classified as a serious

5 offense under the prison regulations (also known as an "A-1" offense), causing him to be wrongfully

6 incarcerated in segregated housing for a twenty-three-month term. (Pet. at 6-12)

7     2.    On or about October 4, 2004, Harris submitted an inmate appeal alleging the same claims

8 as those alleged in the present Petition. (Lodg. 11 - CDC 602 Inmate/Parolee Appeal.) Harris

9 requested that the hearing officer's finding of guilt be vacated, and that the disciplinary finding

10 (Rules Violation Report) be dismissed. (*Id.*) Harris' appeal was denied at the second level of review

11 on November 29, 2004, and again at the third level of review on February 23, 2005. (Lodg. 12 -

12 Second Level Appeal Decision; Lodg. 13 - Third Level/Director's Level Appeal Decision.)

13     3.    Harris next sought habeas corpus relief by filing a petition in the California Court of

14 Appeal on October 24, 2005, again alleging the same claims as those alleged in the present. (Lodg.

15 5 - California Court of Appeal Petition, Case No. D047381.) On December 19, 2005, the Court of

16 Appeal denied the petition in a reasoned decision. (Lodg. 6 - California Court of Appeal Order, Case

17 No. D047381.)

18     4.    On June 22, 2005, while his Court of Appeal petition was pending, Harris filed a petition

19 for writ of habeas corpus in Imperial County Superior Court. (Lodg. 7 - Imperial County Superior

20 Court Petition, Case No. EHC00647.) That court issued an order to show cause and appointed

21 counsel for Harris. The matter was fully briefed and, on August 17, 2006, the petition was denied

22 in a reasoned decision. The superior court concluded that there was ample evidence in the record

23 to support the findings of the disciplinary hearing officer, and that no due process violation occurred.

24 (Lodg. 8 - Imperial County Superior Court Order, Case No. EHC00647.)

25     5.    Harris filed another petition in the California Court of Appeal on October 10, 2006, and

26 that petition was summarily denied on January 26, 2007. (Lodg. 9 - California Court of Appeal

27 Petition, Case No. D49658; Lodg. 10 - California Court of Appeal Order, Case No. D049548.)

28 Harris next sought review in the California Supreme Court and, on May 9, 2007, that petition was

1 │ also summarily denied. (Lodg. 11 - California Supreme Court Petition, Case No. S151472; Lodg.

2 │ 12 - California Supreme Court Order, Case No. S151472.)

3 │     6.    Respondent admits that Harris has exhausted his available state judicial remedies and that

4 │ the Petition appears to be timely filed under 28 U.S.C. § 2244(d)(1).

5 │     7.    Respondent denies that Harris has presented any cognizable claim for federal habeas

6 │ corpus relief.  Harris does not have a federally protected liberty interest in remaining free from

7 │ segregated confinement. *Sandin v. Connor*, 515 U.S. 472, 484 (1995).  The only disciplinary

8 │ sanction that is properly at issue in a federal habeas corpus case is an inmate's loss of credit that

9 │ resulted from the disciplinary action.  *Id.* at 487; *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974).

10 │ Harris has not alleged sufficient facts demonstrating a loss of credit, and the record demonstrates

11 │ Harris' credit was restored.  Thus, any claim regarding a loss of credits is moot.

12 │     8.    Respondent affirmatively alleges that Harris' claim that he was improperly incarcerated

13 │ in segregated confinement is moot because Harris' term in segregated confinement ended on

14 │ December 29, 2004. (Lodg. 9 - Movement History Report (referring to "ADSEG").)  Federal habeas

15 │ corpus relief is only available for challenges to the fact or duration of confinement. *Badea v. Cox*,

16 │ 931 F.2d 573, 574 (9th Cir.1991).  Because Harris' segregated confinement complaint does not

17 │ challenge the fact or duration of his confinement, and because he is no longer subject to further

18 │ segregated confinement, there is no effective relief that this Court may grant on federal habeas

19 │ corpus review.

20 │     9.    Respondent affirmatively alleges that Harris has failed to allege a federal question in his

21 │ claim challenging the classification of his prison disciplinary violation as an "A-1" offense because

22 │ this claim alleges a perceived violation of state law, and there is no controlling United States

23 │ Supreme Court authority precluding the classification of prison disciplinary violations.

24 │     10.    Even if Harris has alleged a cognizable claim on the merits, Respondent denies that Harris

25 │ is entitled to federal habeas relief under 28 U.S.C. § 2254.  The state court decisions were not

26 │ contrary to, or an unreasonable application of clearly established federal law as determined by the

27 │ United States Supreme Court, nor were they based on an unreasonable determination of the facts.

28 │ (Lodgs. 8, 10, 12.)

Answer to Pet for Writ of Habeas; Memo of P's and A's

Case No. CV 07-2216 JAH (BLM)

11.  Respondent denies that Harris' federal due process rights were violated in connection with his 2004 disciplinary proceedings.  Harris received all of the due process to which he is entitled under clearly established federal law because he was afforded the protections set forth in *Wolff*, 418 U.S. 539, 564-67 (1974).  Furthermore, the findings of the disciplinary hearing officer were supported by some evidence in the record.  *Superintendent v. Hill,* 472 U.S. 445, 454 (1985).

12.  Respondent denies that an evidentiary hearing is appropriate in this case because the claims can be resolved based on the existing state court record.  *Baja v. Ducharme*, 187 F.3d 1075, 1078 (9th Cir. 1999).

13.  Except as expressly admitted in this Answer, Respondent denies each and every allegation of the Petition.  More specifically, Respondent denies that Harris' constitutional rights have been violated in any way or that Harris has stated or establish any grounds for federal habeas corpus relief.

14.  Except as expressly admitted in this Answer, Respondent denies the allegations of the Petition.

Dated: May 22, 2008

Respectfully submitted,

EDMUND G. BROWN JR.
Attorney General of the State of California

DANE R. GILLETTE
Chief Assistant Attorney General

JULIE L. GARLAND
Senior Assistant Attorney General

HEATHER BUSHMAN
Supervising Deputy Attorney General


*/S/ Kim Aarons*

KIM AARONS
Deputy Attorney General
Attorneys for Respondent

**INTRODUCTION**

Harris seeks relief from the impact of his 2004 prison disciplinary proceeding, during which he was found guilty of participating in a stabbing incident involving another inmate. Harris contends that his due process rights were violated because the hearing officer relied on confidential information, Harris was not afforded sufficient discovery to support his defense, and he was not permitted to call witnesses. Harris also alleges that the stabbing offense was improperly classified as a serious offense, or an "A-1" offense, under the prison regulations, causing him to be improperly confined in segregated confinement. (Pet. at 6-12.)

Respondent submits that Harris has failed to allege any cognizable claim for federal habeas corpus relief. Harris does not have a federally protected liberty interest in remaining free from segregated confinement. Due process in prison disciplinary proceedings afford protection only where the revocation of good time credits are at issue, and Harris has not alleged a revocation of good time credits. Furthermore, Harris' claim is not cognizable because it fails to challenge the legality or duration of his confinement, and his claim is moot to the extent he challenges the imposition of segregated confinement. To the extent that Harris challenges the classification of his prison offense as an "A-1" offense, his claim fails to allege a federal question.

Even assuming that Harris' due process claim is reviewable on the merits, the state court decisions were not contrary to or an unreasonable application of clearly established federal law as established by the United States Supreme Court, nor did they involve an unreasonable determination of the facts in this case. Harris received the protections required under federal law. Furthermore, the findings of the hearing officer were supported by some evidence in the record. Thus, Harris received all the process due under United States Supreme Court authority.

**FACTUAL AND PROCEDURAL BACKGROUND**

In 1990, Harris was convicted of one count of first degree murder and one count of second degree murder while being armed with a firearm. (Lodg. 1.) He was sentenced to a total of twenty-six years to life for first degree murder and a term of fifteen years to life, to run concurrently for the second degree murder. (*Id.*)

///

Answer to Pet for Writ of Habeas; Memo of P's and A's                    Case No. CV 07-2216 JAH (BLM)

1    On June 3, 2003, while incarcerated at Centinela State Prison, Harris was involved in the

2 stabbing assault of inmate Davis while in his cell. On that date, inmates Davis, Dabney, Goffney,

3 and Bishop were in or around cell number 149 in Building C-3. Just prior to the stabbing incident,

4 Harris was seen standing in the cell doorway while Dabney placed several items of personal property

5 such as appliances and televisions on one of the upper bunks. Investigative officers later opined that

6 Dabney moved these items to prevent them from being damaged during the planned assault. Shortly

7 thereafter, Bishop entered the cell and stabbed Davis in the chest with a sharp object. Bishop

8 attempted to strike Davis a second time, but Davis started to fight and push his way out of the cell.

9 Harris then blocked Davis by pushing the other fleeing inmates back into the cell. (Lodg. 8 at 4 (Part

10 C).)

11    Davis eventually made his way out of the cell and was observed bloodied and staggering to an

12 officer's podium. (Lodg. 8 at 4 (Part C).) Davis told an officer, "I have been stabbed really bad."

13 (Lodg. 2 at 2.) At that point, prison officers activated their personal alarms and began performing

14 first aid on Davis by applying pressure on the wound to stop the bleeding. While officers radioed

15 for medical assistance, Davis went unconscious. (*Id.*) Davis was later taken to a hospital where he

16 recovered. (*Id.* at 21.)

17    The Investigative Services Unit (ISU) at Centinela State Prison conducted an investigation of

18 the stabbing incident, and confirmed that Harris was involved in the incident. The ISU concluded

19 that a struggle had taken place in the cell based on blood spatter and blood stains. The ISU also

20 conducted several confidential inmate interviews, during which Harris was identified as orchestrating

21 the incident with Bishop and Goffney. According to the confidential sources, the battery was

22 planned to take place on the yard pursuant to Harris' instructions. Confidential informants

23 specifically stated that Harris' influence on the yard in addition to his prior participation in gang and

24 staff assaults throughout the state institutions had several inmates intimidated and fearful of Harris.

25 Therefore, many inmates were afraid to refuse Harris' requests to carry out violent acts. (Lodg. 8

26 at 4 (Part C).)

27 ///

28 ///

1    On June 16, 2003, a "Form 115, Rules Violation Report" was issued charging Harris with

2    violation of California Code of Regulations, title 15, § 3005(c), for his participation in the stabbing

3    battery on an inmate with serious injury. (Lodg. 4.) The matter was also referred to the District

4    Attorney's office for prosecution, and Harris requested postponement of his prison hearing pending

5    the outcome of the District Attorney referral. (Lodg. 4 at 1; Lodg. 12 at 11.) On July 9, 2004,

6    however, the CDCR determined that it would not refer the matter to the District Attorney's office

7    because the victim refused to testify. (Lodg. 6 - District Attorney Referral Form; Lodg. 12 at 11.)

8    Harris' prison hearing was therefore conducted on August 19, 2003, and Harris was found guilty.

9    (*Id.*) Harris' offense was classified as a serious or "Division A-1" offense and Harris was initially

10   assessed 360 days forfeiture of behavioral credit[2] pursuant to California Code of Regulations, title

11   15, § 3323. (Lodg. 4 at 9 (Part C) - Rules Violation Report and Hearing Report of August 19, 2003.)

12       Nearly one year later, on August 7, 2004, the CDCR granted Harris a rehearing of his case so

13   that Harris could review non-confidential evidence twenty-four hours prior to the hearing. Harris

14   was again found guilty of the violation by a preponderance of the evidence. (Lodg. 8.) The evidence

15   substantiating the charge was: 1) a crime incident report in which inmate Davis identified Harris as

16   being involved in the assault, 2) a confidential information form indicating that Harris was seen on

17   June 3, 2003, and again on June 6, 2003, speaking with inmate Bishop about having Bishop stab

18   inmate Davis; and 3) the physical evidence of moved personal items in the cell, as well as the blood

19   spatter that was consistent with a struggle. (Lodg. 8.)

20       Harris was sentenced to twenty-four months in segregated housing pursuant to California Code

21   of Regulations, title 15, § 3341.5(c)(2)(B) because of the threat he posed to the safety and security

22   of the institution. (Lodg. 5 - Segregated Confinement Documentation.) Harris' segregated housing

23   term had commenced on June 13, 2003, shortly after the stabbing took place, and ended on

24   December 29, 2004 when Harris was transferred from Centinela State Prison to High Desert State

25   Prison. (Lodg. 9 - Movement History Report (referring to "ADSEG" confinement).) The order

26

27   _____

28   2. The classification is a serious prison offense (an "A1 offense," after Cal. Pen. Code § 2932(a)(1); see Cal. Code Regs, tit. 15, § 3323 (b)(8)). Under the rules in force, then and now, that offense could result in a forfeiture of 360 days worktime credit.

1   imposing a 365-day credit loss was revoked because the it had not been timely.  The credits were

2   documented as restored on December 1, 2004.  (Lodg. 8 at 4 (Part C) - Rules Violation Report and

3   Hearing Report of August 7, 2004; Lodg. 10 - Chronological History Report.)  On September 27,

4   2004, the chief disciplinary officer reviewed the rules violation report and affirmed the hearing

5   officer's guilty finding.  (Lodg. 8 at 1.)

6        Harris sought review by filing an administrative appeal with the CDCR.  He sought a reversal

7   of the guilty finding, alleging that a preponderance of evidence did not support the charge.  (Lodg.

8   11.)  His appeal was bypassed at the first level of review and rejected at the second and third levels

9   of review.  (Lodgs. 12, 13.)

10       Harris then filed several state habeas corpus petitions challenging the disciplinary finding.

11  (Lodgs. 14, 16, 18, 20.)  The state courts also rejected Harris' claims.  (Lodgs. 15, 17, 19, 21.)  The

12  last reasoned state court decision was issued by the Imperial County Superior Court.  (Lodg. 16.)

13                                      **ARGUMENT**

14                                          **I.**

15                                  **STANDARD OF REVIEW**

16       Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a federal court

17  may not grant a writ of habeas corpus on behalf of a person in state custody with respect to claims

18  adjudicated on the merits in state courts unless the adjudication of the claim either (1) "resulted in

19  a decision that was contrary to, or involved an unreasonable application of, clearly established

20  Federal law, as determined by the Supreme Court of the United States, "or (2) "resulted in a decision

21  that was based on an unreasonable determination of the facts in light of the evidence presented in

22  the State court proceeding."  28 U.S.C. § 2254(d).  For purposes of AEDPA analysis, a summary

23  denial by a state court, with or without citation to authority, constitutes a decision on the merits.

24  *Harris v. Superior Court*, 500 F.2d 1124, 1128 (9th Cir. 1974).  The "highly deferential standard for

25  evaluating state-court rulings" embodied in § 2254(d) "demands that state-court decisions be given

26  the benefit of the doubt."  *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (citing *Lindh v. Murphy*, 521

27  U.S. 320, 333 n.7 (1997)).

28       The United States Supreme Court has continued to stress the importance of deference to state

1  court decisions. *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003).  In applying section 2254(d)(1), a court

2  must first determine what constitutes "clearly established Federal law" on the legal issue in question.

3  *Id.*  "Clearly established Federal law" refers to the legal principles and holdings of the United States

4  Supreme Court that were governing at the time of the relevant state court decision. *Id.* at 71-72.  If

5  clearly established federal precedent exists, the court must next determine whether a state court

6  decision is either "contrary to" or an "unreasonable application" of the federal law.

7      A state court decision is "contrary to" clearly established federal law if it "contradicts the

8  governing law set forth in [Supreme Court] cases or if the state court confronts a set of facts that are

9  materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a

10  result different from [Supreme Court] precedent." *Andrade*, 538 U.S. at 73 (citing *Williams v.*

11  *Taylor*, 529 U.S. 362, 405-06 (2000) and *Bell v. Cone*, 535 U.S. 685, 694 (2002)).  However, a state

12  court decision is not required to cite to United States Supreme Court precedent. *Early v. Packer*, 537

13  U.S. 3, 8 (2002) (per curium).  Nor must a state court be aware of existing Supreme Court precedent,

14  "so long as neither the reasoning nor the result of the state-court decision contradicts them."  *Id.*

15      A state court decision is an "unreasonable application" of clearly established federal law "if the

16  state court identifies the correct governing legal principle from [the Supreme Court's] decisions but

17  unreasonably applies that principle to the facts of the prisoner's case." *Andrade*, 538 U.S. at 75.

18  "The 'unreasonable application' clause requires the state court decision to be more than incorrect

19  or erroneous."  *Id.*   Rather, "[t]he state court's application of clearly established law must be

20  objectively unreasonable." *Id.*

21      The standard to obtain relief under section 2254(d)(2) is similar to the "unreasonable

22  application" standard of section 2254(d)(1).  For a state court decision to be "based on an

23  unreasonable determination of the facts in light of the evidence presented in the State court

24  proceeding," the state court's factual determination must have been objectively unreasonable,

25  meaning more than incorrect or clearly erroneous. *Torres v. Prunty*, 223 F.3d 1103, 1107-08 (9th

26  Cir. 2000).  It is "a daunting standard--one that will be satisfied in relatively few cases." *Taylor v.*

27  *Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004).

28  ///

## II.

## HARRIS HAS FAILED TO ALLEGE A COGNIZABLE CLAIM FOR FEDERAL HABEAS CORPUS RELIEF.

A habeas corpus petition is the correct method for a prisoner to challenge the "legality or duration" of his confinement. *Badea v. Cox*, 931 F.2d 573, 574 (9th Cir.1991), *quoting, Preiser v. Rodriguez,* 411 U.S. 475, 485 (1973); Advisory Committee Notes to Rule 1 of the Rules Governing Section 2254 Cases. In *Sandin,* the Supreme Court held that States may create liberty interests that are protected by the Due Process Clause, but "these interests will be generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." 515 U.S. 472, 484 (1995). Discipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law. *Id.* at 485. Segregated confinement falls within this "wide range." *Id.* at 486. Thus, contrary to Harris' belief, he does not have a federally protected liberty interest in remaining free from segregated confinement, and the only disciplinary sanction that is properly at issue in a federal habeas corpus matter is the loss of credit that Harris suffered as a result of the disciplinary action.[3/] *See Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003) (administrative segregation in and of itself does not implicate a protected liberty interest under *Sandin,* 515 U.S. at 485-86 (1995)). Here, Harris does not appear to challenge any credit losses, nor does he otherwise challenge the legality or duration of his present confinement. Thus, he has not alleged any cognizable claim for federal habeas corpus relief.

In addition, Harris' challenge to segregated confinement is moot. It is well settled that an action is moot when the issues are no longer alive or the parties lack a legally cognizable interest in the outcome. *See Lee v. Schmidt-Wenzel*, 766 F.2d 1387, 1389 (9th Cir. 1985). The record

///

---

3. Any complaint by Harris that this discipline will inevitably effect the duration of his sentence by affecting his prospects for parole release must be rejected; *Sandin* itself precludes consideration of the effect of Plaintiff's placement on his parole prospects as "too attenuated." *See Sandin,* 515 U.S. at 487.

1  demonstrates that Harris' term in segregated confinement ended on December 29, 2004, when he

2  was transferred to High Desert State Prison. (Lodg. 9.)

3       And finally, Harris' challenge to segregated confinement is premised on his contention that

4  the CDCR improperly classified his offense as an "A-1" offense. This is a perceived error of state

5  law, however. Harris is entitled to habeas corpus relief under 28 U.S.C. section 2254 only if he is

6  held in custody in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C.

7  § 2254(a). The prisoner has the burden of alleging specific facts that show a federal right is

8  involved. *O'Bremski v. Maass*, 915 F.2d 418, 420 (9th Cir. 1990). As such, state law questions are

9  not cognizable in federal habeas corpus proceedings. *See, e.g., Rose v. Hodges*, 423 U.S. 19, 21

10 (1975). Absent a constitutional violation, a federal court may not challenge a state court's

11 interpretation or application of state law. *Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985).

12 "A federal court may not issue the writ on the basis of a perceived error of state law." *Pulley v.*

13 *Harris*, 465 U.S. 37, 41 (1984). The "A-1" classification is based California Code of Regulations,

14 title 15, § 3323 (b)(3), which specifies that battery causing serious injury is a serious offense. There

15 is no clearly established federal law that prohibits such classification of prison violations. Thus, the

16 petition should be dismissed for failing to allege a cognizable claim for federal habeas corpus relief.

17                                      **III.**

18      **THE STATE COURT DECISIONS WERE NOT CONTRARY TO OR AN
        UNREASONABLE APPLICATION OF UNITED STATES SUPREME**

19      **COURT AUTHORITY AND WERE NOT BASED ON AN
        UNREASONABLE DETERMINATION OF THE FACTS.**

20

21       Even assuming that Harris has alleged a cognizable claim for federal habeas corpus relief,

22 his due process allegations fail. "Prison disciplinary proceedings are not part of a criminal

23 prosecution, and the full panoply of rights due a defendant in such proceedings does not apply."

24 *Wolff*, 418 U.S. 539, 556 (1974). The United States Supreme Court has found that due process in

25 prison disciplinary proceedings requires that the inmate must be afforded: 1) advanced written notice

26 of the charges against him, 2) an opportunity to call witnesses and present documentary evidence in

27 his defense if consistent with institutional safety and correctional goals, and 3) a written statement

28 by the factfinder of the evidence relied on and the reasons for the disciplinary action. *Wolff*, 418 U.S.

1    at 564-67; *Hill*, 472 U.S. 445, 454 (1985). In cases involving revocation of good time credits, due

2    process requires that the findings of the disciplinary factfinder be supported by some evidence in the

3    record. *Hill*, 472 U.S. at 454.

4    　　　　In the present case, the last reasoned state court opinion for the purpose of assessing the state

5    court's adjudication of Harris' claims was issued by the Imperial County Superior Court. *See Ylst*

6    *v. Nunnemaker*, 501 U.S. 797, 802-06 (1991). The superior court reviewed the record, examined the

7    merits of Harris' claims, and determined that Harris' due process rights were not violated during his

8    2004 disciplinary proceedings. (Lodg. 17.) Specifically, the superior court found that Harris was

9    found guilty by a preponderance of the evidence based on confidential and non-confidential

10   information to the effect that Harris planned, orchestrated and participated in the stabbing. More

11   specifically, at the time of the stabbing, the cell held inmates Bishop, Gaffney, Dabney, and Davis.

12   The evidence demonstrated that Harris was at the cell door when personal property was moved just

13   prior to the stabbing of inmate Davis to protect the property from the planned encounter. Harris

14   remained at the cell door during the stabbing and after the stabbing. Harris also initially prevented

15   the then wounded inmate from leaving the cell by pushing fleeing inmates back into the cell. (*Id.*

16   at 3.) The superior found that confidential information clearly implicated Harris in the planning and

17   directing of the stabbing. The superior court concluded that the evidence supported the hearing

18   officer's findings as to accomplice liability for battery, and that there was no merit, either legally or

19   factually, to Harris' claim that the charge was misapplied. The superior court further noted that, even

20   if there was no evidence that Harris himself stabbed, touched, or restrained the victim, there was

21   sufficient evidence to support the hearing officer's finding that Harris was an accomplice. (*Id.*)

22   　　　　The superior court also rejected Harris' claim that he was denied sufficient discovery, or an

23   opportunity to present a defense. (Lodg. 17 at 3.) The superior court found that, even if Harris had

24   an inadequate opportunity to contest confidential evidence to the effect that Harris planned or

25   orchestrated in the stabbing via conversations with inmate Bishop, or confidential evidence stating

26   that Harris was "the then most influential 'Crip' in facility C," the remedy would be to strike that

27   evidence. The superior court concluded that, even without the confidential information, there

28   ///

1    remained more than sufficient evidence of accomplice liability to support the hearing officer's

2    finding of guilt. (*Id.*)

3        The superior court's decision is consistent with clearly established federal law and is

4    supported by reasonable interpretations of the facts. Harris relies on *Wolff*, 418 U.S. at 564-567 to

5    support the proposition that he was not permitted to call witnesses and present documentary evidence

6    on behalf of his defense.[4/] (Pet. at 9d-9i.) Specifically, Harris contends that: 1) the hearing officer

7    improperly relied on confidential information from witnesses who stated that Harris instructed

8    Bishop to participate in the assault, 2) no staff members observed the incident, 3) Harris was unable

9    to confirm whether Bishop was in school attendance on June 3, 2004, the date Harris was purported

10   to have instructed Bishop to commit the assault, 4) Harris was unable to obtain documentation

11   showing that he resided in cellblock 4 while inmates Gaffney and Bishop resided in cellblock 3 in

12   June of 2003, and that these cellblocks did not have access to the recreation field at the same time,

13   5) Harris was not able to use Davis' bloody tee shirt or blood splatter photos from the crime scene

14   in support of his defense, and 6) the hearing officer did not permit Harris to call inmate witnesses

15   to support his mistaken identity defense. (Pet. at 9d-9i.)

16       Harris distorts the facts as well as the requirements of *Wolff*. First, *Wolff* does not preclude

17   reliance on confidential information, nor does it require that staff members personally observe an

18   incident of misconduct. Second, with regard to Bishop's school attendance on June 3, 2004, a

19   confidential disclosure information form stated that Harris was seen speaking with Bishop on two

20   dates, June 3 and June 6, 2003 and the conversation consisted of having Bishop stab Davis. There

21   is no indication that the information stated that Harris was seen speaking to Bishop at a time when

22   Bishop would have been in school. In addition, Harris has failed to demonstrate the relevance of

23   evidence demonstrating that he was assigned to a different cellblock than inmate Gaffey, or that he

24   had no contact with Gaffey in the recreation field. The confidential information stated that the

25   assault was to take place in the field, not that Harris had contact with Gaffey in the recreation field.

26

27   _____

28       4.  Harris does not allege that he failed to receive the other requirements of *Wolff*, i.e.,
     adequate notice of the charges against him or that he did not receive a written statement by the
     factfinder setting forth the reasons for the finding of guilt. 418 U.S. at 564-67.

Answer to Pet for Writ of Habeas; Memo of P's and A's                    Case No. CV 07-2216 JAH (BLM)

1  (Lodg. 8 at 4 (Part C).) Furthermore, the confidential information stated that Harris had contact with

2  Bishop. (*Id.*)

3      With regard to Harris' claim that the hearing officer denied his request to call witnesses, the

4  record shows that Harris did request Correctional Officer Bach, Correctional Officer Delgadillo, and

5  the victim to attend his hearing. (Lodg. 8 at 2 (Part C).) The hearing officer then asked Harris what

6  specific questions he had for the correctional officers, and Harris stated that he would accept the

7  statements from the officers' investigation. (*Id.*) The hearing officer denied Harris access to inmate

8  Davis because Davis was the stabbing victim. (*Id.*)

9      The hearing officer's decision was not a due process violation. *Wolff* made it clear that an

10  inmate's access to other inmates, the right to discovery, and the right to call witnesses is left to the

11  discretion of prison administrators due to the risk of reprisal. *Wolff*, 418 U.S. 563-67; *see also*

12  *Walker v. Summer* 14 F.3d 1415, 1420 (9th Cir. 1994), *overruled on other grounds by Sandin*, 515

13  U.S. at 483-84. The Supreme Court further held that, in assessing the inmate's need for such

14  discovery, courts must balance the inmate's interest in avoiding the loss of good time credits against

15  the needs of the prison. *Wolff*, 418 U.S. at 563-67. Here, Harris fails to allege any loss of good time

16  credits, and the risk of retaliation to inmate Davis outweighed Harris' need to have Davis testify as

17  a witness. Finally, with regard to Harris' request for access to the bloody tee shirt and the blood

18  spatter photos, *Wolff* has never mandated the production of physical evidence. *Id.* Accordingly, the

19  superior courts reject of these claims was not contrary to, or an unreasonable application of *Wolff*.

20      To the extent that Harris contends that the hearing officer's decision was not supported by

21  sufficient evidence, this claim was also properly rejected by the superior court. In *Hill*, 472 U.S.

22  445, 455-56 (1985), the Supreme Court explained that the revocation of good time credits requires

23  only a "modicum of evidence" to support the prison's decision. Thus, "the requirements of due

24  process are satisfied if some evidence supports the decision by the prison disciplinary board to

25  revoke good time credits." *Id.* at 455. Harris cannot maintain that the state court made an error

26  warranting federal habeas corpus relief because, again, the disciplinary action did not result in any

27  revocation of good time credits. Furthermore, for the reasons already set forth above, there was

28  ample evidence to support the hearing officer's finding of guilt. Therefore, the state court finding

---

Answer to Pet for Writ of Habeas; Memo of P's and A's                    Case No. CV 07-2216 JAH (BLM)

1  that the disciplinary proceedings were proper was not contrary to or an unreasonable application of

2  clearly established United States Supreme Court authority, nor was it not based on an unreasonable

3  determination of the facts.  28 U.S.C. § 2254(d).  Accordingly, the Petition should be denied and

4  dismissed with prejudice.

5                                          **CONCLUSION**

6          The Petition should be denied because Petitioner fails to present a cognizable claim for

7  federal habeas corpus relief.  Furthermore, the state court decision finding that the notice of the

8  disciplinary charges provided to Petitioner did not violate his due process rights is not contrary to

9  or an unreasonable application of clearly established United States Supreme Court authority and was

10  not based on an unreasonable determination of the facts.  Accordingly, the Petition for Writ of

11  Habeas Corpus should be denied.

12          Dated:  May 23, 2008

13                                          Respectfully submitted,

14                                          EDMUND G. BROWN JR.
                                            Attorney General of the State of California

15                                          DANE R. GILLETTE
                                            Chief Assistant Attorney General
16
                                            JULIE L. GARLAND
17                                          Senior Assistant Attorney General

18                                          HEATHER BUSHMAN
                                            Supervising Deputy Attorney General
19

20                                          */S/ Kim Aarons*

21                                          KIM AARONS
                                            Deputy Attorney General
22                                          Attorneys for Respondent

23

24  70124972.wpd
    SD2008700086
25

26

27

28

Answer to Pet for Writ of Habeas; Memo of P's and A's                Case No. CV 07-2216 JAH (BLM)

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name:    **Harris v. Felker**

Case No.:    **CV 07-2216 JAH (BLM)**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter; my business address is 110 West A Street, Suite 1100, P.O. Box 85266, San Diego, CA 92186-5266.

On May 23, 2008, I served the attached **ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS; SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES** by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the United States Mail at San Diego, California, addressed as follows:

**Mark A. Harris, III**
**CDC # E-46844**
**High Desert State Prison**
**P.O. Box 3030**
**Susanville, CA 96127**

In Pro Per

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on May 23, 2008, at San Diego, California.


B. Magallanes
_____            _____
Declarant                                              Signature

70125000.wpd