ORIGINAL

MARK A. HARRIS   CDCRN. # E-46844
High Desert State Prison - Lassen County
P.O. Box 3030   (C7-208)
Susanville, California  96127

FILED

2008 AUG 18  PM 2:49

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY_____RM_____DEPUTY

Petitioner, in propria persona


UNITED STATES DISTRICT COURT - SOUTHERN DISTRICT

MARK A. HARRIS,

               Petitioner,

       v.

TOMMY L. FELKER, Warden, et al.,

             Respondents.

Case No. CV - 07 - 2216 JAH (BLM)

(28 U.S.C. §2254 Proceeding)

Hon. Judge: Barbara L. Major


**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF TRAVERSE**

//

//

//

//

//

//

//

//

## TABLE OF CONTENTS

INTRODUCTION............................................................. 1

STATEMENT OF FACTS....................................................... 1

AEDPA STANDARD OF REVIEW................................................. 2

ARGUMENT................................................................. 4

I.  Because Petitioner's prison rules infraction culpability finding and his
    service of a residual 23 month punitive segregation term (ASU-Max), resulted
    after a disciplinary hearing that lacked multiple due process/evidentiary
    safeguard requirements, and such ASU-Max confining conditions and duration
    subjected him to an atypical and significant hardship in relation to the
    ordinary incidents of prison life he has a federally protected state-created
    liberty interest in freedom from punitive segregation, thus his claims allege
    cognizable grounds for federal habeas corpus relief....................... 4

    A. Standard of Review................................................... 4

    B. Restriction of Officials' Power.................................... 4

    C. Liberty Interest of Real Substance................................. 5

    D. Comparative Housing Analysis....................................... 6

II. Because Petitioner's claims indexed under Grounds 10 and 11 demonstrate he
    was found guilty on the basis of no evdience/evidence without an indicia of
    reliability as to amount to 'some evidence,' even assuming he failed to raise
    cognizable claims illustrating he has a protected liberty interest federal
    habeas corpus relief is available........................................ 7

III. Because Petitioner was found guilty and served a 23 month ASU-Max term after
    a hearing based on a misclassified offense report in contravention of
    disciplinary rule 3323 barring an A-1 categorization of his charge, his state-
    created liberty interest in freedom from disciplinary segregation per Regulation
    3341.5(c)(1) was infringed, violating his 14th Amendment Due Process rights
    under Sandin (Claim I).................................................. 9

    A. Pertinent Facts..................................................... 9

    B. Applicable Law...................................................... 9

    C. Prejudicial Constitutional Violation................................ 10

    D. Nature of Error..................................................... 11

    E. AEDPA's §2254(d) Does Not Bar Relief................................ 11

IV. Because Petitioner did not receive adequate substitute aid in the form of
    gathering of information necessary for an adequate comprehension of the case,
    his 14th Amendment Due Process rights were violated under Wolff (Claims II,
    III, and IV)............................................................ 14

A. Pertinent Facts............................................. 14

B. Applicable Law............................................. 16

C. Prejudicial Constitutional Violation........................ 16

D. Nature of Error............................................ 17

E. AEDPA's §2254(d) Does Not Bar Relief....................... 18

V. Because Petitioner was found guilty and served a 23 month ASU-Max term after a hearing that was convened without providing him all non-confidential evidence/reports relied on by the factfinder in contravention of disciplinary rule 3320(c)(1), his liberty interest in punitive segregation freedom per Regulation 3341.5(c)(1) was infringed, violating his 14th Amendment Due Process rights under Sandin (Claim V).................................21

A. Pertinent Facts............................................. 21

B. Applicable Law............................................. 21

C. Prejudicial Constitutional Violation........................ 21

D. Nature of Error............................................ 22

E. AEDPA's §2254(d) Does Not Bar Relief....................... 22

VI. Because Petitioner was found guilty and served a 23 month ASU-Max term after a hearing that was convened notwithstanding his request and showing of a reasonable need for a postponement to inspect evidence in contravention of rule 3320(d), his liberty interest in punitive segregation freedom per Regualtion 3341.5(c)(1) was infringed, violating his 14th Amendment Due Process rights under Sandin (Claim VI)...............................25

A. Pertinent Facts............................................. 25

B. Applicable Law............................................. 25

C. Prejudicial Constitutional Law............................. 25

D. Nature of Error............................................ 26

E. AEDPA's §2254(d) Does Not Bar Relief....................... 26

VII. Because Petitioner was not allowed to present non-confidential documentary evidence in the form of blood spatter photos of the DAVIS crime scene assault area, his 14th Amendment Due Process rights were violated under Wolff (Claim VII)....................................................................28

A. Pertinent Facts............................................. 28

B. Applicable Law.............................................. 28

C. Prejudicial Constitutional Law............................. 29

D. Nature of Error..................................................29

E. AEDPA's §2254(d) Does Not Bar Relief.............................29

VIII.  Because Petitioner was not allowed to call defense witnesses at his rules infraction disciplinary hearing in the form of telephonical inquiry, his 14th Amendment Due Process rights were violated under <u>Wolff</u> (Claim VIII).31

A. Pertinent Facts................................................31

B. Applicable Law.................................................31

C. Prejudicial Constitutional Violation...........................31

D. Nature of Error................................................32

E. AEDPA's §2254(d) Does Not Bar Relief..........................32

IX.    Because Petitioner was found guilty and served a 23 month ASU-Max term after a hearing where he had his requested witnesses denied without the factfinder specifying any reason for doing so in contravention of rule 3315(e)(1), his liberty interest in punitive segregation freedom per Regulation 3341.5(c)(1) was infringed, violating his 14th Amendment Due Process rights under <u>Sandin</u> (Claim IX)...........................................................34

A. Pertinent Facts................................................34

B. Applicable Law.................................................34

C. Prejudicial Constitutional Violation...........................34

D. Nature of Error...............................................35

E. AEDPA's §2254(d) Does Not Bar Relief..........................35

X.     Because Petitioner was found guilty on the basis of no evidence substantiating the Division "A-1" offense charge, that he seriously battered or battered with a weapon resident DAVIS, and absent officials' administrative prosecutorial infracting of him under any accomplice liability theory, his 14th Amendment Due Process rights were violated under <u>Hill</u> (Claim X).....37

A. Pertinent Facts................................................37

B. Applicable Law.................................................37

C. Prejudicial Constitutional Violation...........................37

D. Nature of Error................................................38

E. AED<u>PA's §2254(d) Do</u>es Not Bar Relief...........................39

XI.    Because Petitioner was found guilty on the basis of evidence having no indicia of reliability as to equate to some evidence, his 14th Amendment Due Process rights were violated under <u>Hill</u> (Claim XI)...................43

A. Pertinent Facts......................................................43

B. Applicable Law.......................................................43

C. Prejudicial Constitutional Violation................................44

D. Nature of Error......................................................45

E. AEDPA's §2254(d) Does Not Bar Relief................................45

XII.  Because Petitioner was found guilty and served a 23 month ASU-Max term after a hearing based on the disciplinary factfinder's failure to make a truthfulness/credibility finding where confidential information was the sole basis for holding him culpable in contravention of rule 3321(b)(1), his liberty interest in punitive segregation freedom per Regulation 3341.5(c)(1) was infringed, violating his 14th Amendment Due Process rights under <u>Sandin</u> (Claim XII)...................................................47

A. Pertinent Facts......................................................47

B. Applicable Law.......................................................47

C. Prejudicial Constitutional Violation................................48

D. Nature of Error......................................................49

E. AEDPA's §2254(d) Does Not Bar Relief................................49

CONCLUSION..............................................................50

### MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF TRAVERSE

### I.

### INTRODUCTION

Petitioner a prison inmate confined at California's High Desert State Prison after having served a 23 month punitive segregation term within the CDCR's Centinela State Prison, succeeding a prison disciplinary culpability finding for participation in a stabbing battery of another inmate during 2003. Petitioner seeks writ relief from the impact of the 2004 disciplinary process resulting in the guilt and segregational sanctions residual to the charged misconduct.

### II.

### STATEMENT OF FACTS

I. In summary, on June 6, 2003, Centinela State Prison inmate DAVIS after returning from an afternoon recreation field exercise period was stabbed while within the facility's cellblock 3, cell #149. The prison's Investigative Services Unit (ISU) investigated the stabbing incident and based on confidential interviews with other inmates charged Petitioner with participation in the DAVIS assault (Charge I). (Exh. A, Attached hereto.)

II. During adjudication of the Charge I infraction report, DAVIS participated as a witness and provided exonerating testimony to defense inquiries, representing in effect that, Petitioner had no involvement in the battery upon him. (Exh. B, Attached hereto [Pet's Lodg., Exh. U].) Notwithstanding, Petitioner was found guilty of the charge. Thereafter, on December 22, 2003 the complaint was refiled and classified as a Division "A-1" series offense for readjudication. Petitioner's Lodgment of Exhibits (Pet. Lodg., Exh. F). Petitioner was ultimately retried and held culpable (Charge II), the disciplinary process of which that forms the subject matter of this petition.

III. No staff observed Petitioner partake in the offense and the entire charge was based on what other residents had alleged in secret interviews. In an effort

1.

to prove his  innonence, Petitioner pursued a not true, mistaken identity, and inmate aversion defense to undermine, refute, and/or disprove the source inmate allegations of a June 3, 5, and 6 intrigue between himself and other residents resulting/involved in the DAVIS assault.

IV. While confined to ASU-Max, Petitioner was denied virtually all privileges, received each of his meals in-quarters, spent 24 hours a day in a vision sensory deprivation cell, shackled for all out-of-cell excursions, disallowed any work training/educational activities and telephone access, permitted one hour of non-contact visitation [less than the twelve provided for non-supermax inmates], and relegated to three concrete kennel weekly exercise periods with no view of any other human being except those of ASU, without any recreational equiptment. These conditions are not an ordinary incident to prison life nor were they frequented by Centinela's mainline resident population during Petitioner's ASU-Max confinement.

### III.

### AEDPA STANDARD OF REVIEW

Clearly, under 28 U.S.C. 2254(d), this Court has authority to grant habeas corpus relief when a state court's ruling involved an "unreasonable application of" clearly established United States Supreme Court precedent. Williams v. Taylor (2000) 526 U.S. 326, 411-413; acc'd Clark v. Murphy (9th Cir. 2003) 331 F.3d 1062, 1067-1069. Petitioner has shown that the state court's decision was objectively unreasonable. See, Woodford v. Visciotti (2002) 537 U.S. 19, 24 (per curiam); acc'd Medina v. Hornung (9th Cir. 2004) 386 F.3d 872, 877.

At the time that the last state court rendered its decision on May 9, 2007, the United States Supreme Court decisions of Sandin v. Conner (1995) 515 U.S. 475, Wolff v. McDonnell (1974) 418 U.S. 539, and Superintendent v. Hill (1985) 474 U.S. 445 had already been decided. Here, the California Superior Court of Imperial County's decision (the last reasoned opinioned court) involved an unreasonable application of those precedents as articulated in Sandin (Claims 1, 5, 6, 9, and

2.

12), <u>Wolff</u> (Claims 2, 3, 4, 7, and 8), and <u>Hill</u> (Claims 10 and 11). <u>Id</u>.

Because the disciplinary tribunal's culpability finding rest entirely on the theory that Petitioner was the perpetrator in the DAVIS offense and that such was confirmed by allegations from inmate confidential sources, his demonstrating in the petition and traverse that such finding is in contravention of binding due process, evidentiary, evidence presentation/inspection, and investigative aid guarantee safeguards entitles him to relief.

Respondent disagrees and has set forth arguments to Petitioner's claims. And contends that section 2254(d) bars relief to each. Answer at 3 ¶10; Respondent's Memorandum of Points and Authorities in Support of Answer (Resp. Memo.) at 5, 14-15.

Petitioner addresses Respondent's arguments and demonstrates that all are without merit and must be rejected.

IV.

ARGUMENT

I

**PETITIONER HAS A LIBERTY INTEREST IN FREEDOM FROM DISCIPLINARY PUNITIVE SECURITY HOUSING UNIT (SHU) SEGREGATION PER REGULATION 3341.5(c)(1) THUS HAS ALLEGED COGNIZABLE CLAIMS FOR FEDERAL HABEAS CORPUS RELIEF**

## A. Standard of Review:

Petitioner has a liberty interest in freedom from SHU disciplinary segregation, thus his claims allege cognizable claims for federal writ relief. To determine whether a liberty interest has been created by state law, the court must inquire into: (1) whether state statutes or regulations "restrict the power of prison officials" to impose the deprivation; and (2) whether the liberty interest in question is one of "real substance." Sandin v. Conner (1995) 515 U.S. 472, 477-487.

A liberty interest of "real substance" occurs when deprivation places "an atypical or significant hardship on Petitioner in relation to the ordinary incidents of prison life" or "will inevitably affect the duration of [Petitioner's] sentence." Sandin, supra at 483, 487.

For the proposition that a liberty interest of real substance existed entitling Petitioner to due process protections, he relies on the existence of the conditions of his placement in ASU-Max and its 23 month duration of subjecting him to an atypical and significant hardship, not frequented by those not undergoing Super-Max segregation.

## B. Restriction of Officials' Power:

The first prong of Sandin is easily satisfied by then and existing state regula-tion because it restricted the power of prison official's to remand Petitioner to disciplinary SHU segregational confinement. Director's Rule 3341.5 constrains the disciplinary placement of CDCR inmates when the substantial predicate of a rules infraction culpability finding for an offense for which a determinate punitive term of SHU confinement has been assessed is met. See 15 Cal. Code of Regs.,

4.

§3315.5(c)(1).

## C. Liberty Interest of Real Substance:

The second prong of Sandin is also satisfied despite Respondent's misapplication of its liberty interest precept holding, where they seemingly construe Sandin's due process protection to solely encompass an inmate's "loss of credit" that he has suffered as a result of a disciplinary action wherein the prison's tribunal has held against him. (Answer at 10, lns 13-16.) Petitioner has a liberty interest of 'real substance' because his ASU-Max SHU confinement placed an "atypical or significant hardship on him in relation to the ordinary incidents of prison life."

Sandin decided whether an inmate placed in disciplinary segregation for 30 days had a cognizable liberty interest entitling him to due process protection.[1] In Jones v. Moran (N.D. Cal. 1995) 900 F.Supp.2d 1267 the District Court immediately following the Sandin holding held that "the Supreme Court's decision in Sandin left open the possibility that, under different circumstances than those before the Sandin Court, an inmate could have a liberty interest in freedom from confinement in segregation," thus entitling him to due process protection. Id. at 1272.  As contemplated by the Jones Court, other post-Sandin decisions under different factual circumstances have held that an inmate has a liberty interest in freedom from disciplinary segregation where the duration exceeded Sandin's confinement --- placement in a special housing unit for 30 days. Accord Colon v. Howard (2nd Cir. 2000) 215 F.3d 227 (305 days); Rowe v. DeBruyn (7th Cir. 1994) 17 F.3d 1047 (75 days); Shoats v. Horn (3rd Cir. 2000) 213 F.3d 140 (8 years); Koch v. Lewis (D. Ariz. 2001) 216 F.Supp.2d 994 (indeterminate placement).

Even the Ninth Circuit has held that confinement of prisoners in segregated housing in excess of 30 days is a sufficient departure from the ordinary incidents

---

[1] Other post-Sandin cases following its holding, had held that confinement in SHU did not implicate a liberty interest, where the segregational placement was for a year or less. See, e.g., Wright v. Coughlin (W.D. N.Y. 1998) 31 F.Supp.2d 304, 324.

of prison life to require due process protections. Ramirez v. Galaza (9th Cir. 2003) 334 F.3d 850, 860-61; Serrano v. Francis (9th Cir. 2003) 345 F.3d 1071, 1079.

As observed by Jones v. Moran, supra and the Colon, Rowe, and Shoats Courts, the circumstances of Petitioner's case are far different from those considered in Sandin, where he served 523 days of a 700 day (23 month) disciplinary segregational SHU sentence. Diametrically opposite from the 30 days contmeplated in Sandin, Petitioner was required to serve 523 days of 700 imposed upon him.

While short stays of 30 days may not implicate a liberty interest, Petitioner's 523 day service of the sentence imposed against him certainly rasied a significant liberty interest given his prolonged exposure to atypical prison conditions of ASU-Max during his confinement in SHU. Accord, Medina v. Gomez (N.D. Cal. 1997) 1997 U.S. Dist. LEXIS 12208 at *3 (finding conditions in Pelican Bay SHU [which are the functional equivalent to those of Centinela's ASU-Max] to be "atypical" and a "significant deprivation" as required under Sandin). [Centinela's period ...]

D. Comparative Housing Analysis:

Petitioner contends that no other inmate within Centinela's general population then and now bore the conditions that he suffered during the time he was confined within its ASU-Max, and there is no evidence in the record to contradict this fact nor has Respondent contended otherwise. (Answer, Resp. Memo., passim.) Since Petitioner's ASU-Max housing conditions for a 523 day stay worked an atypical and significant hardship against him in relation to the ordinary incidents of prison life, he has alleged cognizable claims for federal habeas corpus relief. Thus officials were required to afford him the due process protections as set forth under those regulations articulated in grounds 1, 5, 6, 9, and 12 adopted in recognition of Wolff's procedural guarantees, and those under Wolff and Hill, supra.

//

//

## II.

**EVEN ASSUMING THAT PETITIONER FAILED TO RAISE COGNIZABLE FEDERAL CLAIMS DEONSTRATING HE HAS A LIBERTY INTEREST PROTECTED BY DUE PROCESS, HIS CONTENTIONS ALLEGED IN GROUNDS 10 AND 11 ENTITLES HIM TO FEDERAL HABEAS CORPUS RELIEF**

Postulating that Petitioner has failed to allege cognizable claims demonstrating he has a protected liberty interest entitling him to habeas relief, his due process contentions under Hill, supra (Claims 10 and 11 --- not to be found guilty except on the basis of some evidence substantiating the charge and not to be found guilty except on the basis of evidence having an indicia of reliability) prevails. For this proposition, Petitioner relies on Burnsworth v. Gunderson (9th Cir. 1999) 179 F.3d 771, where the Ninth Circuit held that due process is violated when a prison disciplinary hearing board holds an inmate culpable of a disciplinary charge after such board carrys out a hearing at which no shred of evidence of the inmate's guilt is presented, even if the inmate has demonstrated no cognizable liberty interest. Id. at 774 n. 6.

Although the Burnsworth Court dealt with a record addressing a total devoid of evidence much less 'some evidence' that the complaining party attempted to escape. It is of no moment that Petitioner's claims of "no evidence" and "reliance on evidence without an indicia of reliability" (as to amount to 'some evidence') deals with an absence of evidence that "he" battered causing serious injury or battered with a weapon another inmate. Evenmoreso, where he was not held culpable and/or infracted under one or more of the CDCR's available accomplice liability theories but found guilty as being the actual perpetrating party as to support the Division "A-1" series offense finding. In each case (Petitioner's and the Burnswoth Court), the disciplinary hearing officers relied on a fact pattern of purported substantiating evidence for the guilt findings where none existed at all.

In CDCR term a culpability finding for a Division "A-1" series offense, is a decision by a disciplinary tribunal that some evidence substantiates the charge

and also that such evidence is reliable. Here, Petitioner's charge was classified as a category A-1 offense wherein he could only be held culpable legitimately if there was some evidence in the cumulative charging document (confidential or otherwise) evincing that he battered causing serious injury or battered with a weapon another inmate. Accord, Pet. Lodg. at Exh. H. Thus Respondent must demonstrate at least some evidence illustrating Petitioner as the DAVIS perpetrator (confidential or otherwise) as to sustain the tribunal's A-1 classified offense finding.

In confronting this burden, Respondent must objectively convince this Court that some evdience having an indicia of reliability exist that supports the A-1 offense finding. This is a burden that cannot be met on the record, because nothing in the charging documents (Pet. Lodg., Exhs F, G, and T) and/or in the litany of evdience relied on by the factfinder during the adjudication of the infraction report (Pet. Lodg., Exh. J at 3-5) supports this deduction.

Therefore, Petitioner's Hill claims (Grounds 10 and 11) in and of themselves, entitles him to the protections of due process, notwithstanding the failure to allege claims that engenders a state-created liberty interest that are safeguarded by the Due Process Clause. Thus, the petition should be reviewed and relief granted on these basis as well.

//

//

//

//

III.

PETITIONER'S DUE PROCESS WAS VIOLATED WHEN HE WAS FOUND GUILTY AND
RELEGATED TO 23 MONTHS DISCIPLINARY SEGREGATION AFTER A HEARING BASED
ON A MISCLASSIFIED OFFENSE REPORT IN CONTRAVENTION OF DISCIPLINARY
RULE 3323 BARRING AN "A-1" CATEGORIZATION OF THE CHARGE, VIOLATING
HIS STATE-CREATED LIBERTY INTEREST IN FREEDOM FROM PUNITIVE SEGREGATION
PER 3341.5(c)(1) (CLAIM I).

**A. Pertinent Facts:**

Following a reversal of a prison disciplinary guilty finding (Charge I), Peti-
tioner was ultimately retried and held culpable (Charge II). In refiling the
cumulative complaint, the charge was classified as a Division A-1 series offense
(which holds liable any inmate who batters/batters causing serious injury with/
without a weapon, see Pet. Lodg., Exh. H at 3323(b)(3)/(4)). (Pet. Lodg., Exhs F,
G, and T.)

The A-1 offense classification was improper, where nothing within the disciplinary
notice contended that he battered/attempted to/battered with a weapon another inmate,
evenmoreso where officials failed/neglected to infract Petitioner under one or
more of the Department's (CDCR) alternative accomplice liability theories. Ibid. e.g.,
at Exh. 3323(c)(8).

On August 7, 2004, Petitioner was found guilty of violating Regulation 3005(c)
'CONDUCT' and in breach of the A-1 categorized offense, and relegated to a residual
23 month Security Housing Unit (SHU) term within the prison's ASU-Max. The
conditions and Petitioner duration in Super-Max imposed an atypical and significant
hardship on him, not frequented by those Centinela inmates quartered in the prison's
general population. (Ante, Statement of Facts (Facts) ¶IV.)

**B. Applicable Law:**

A prison disciplinary-action inmate has a constitutional right to the protection
of procedural due process preceding his placement in a prison's restrictive
confinement unit, where the confinment subjects the prisoner to an atypical and
significant hardship in relation to the ordinary incidents of prison life. Sandin
v. Conner (1995) 515 U.S. 472.

9.

## C. Prejudicial Constitutional Violation:

On appeal, Petitioner alleged that the propriety of his 2004 disciplinary proceeding was inadequate, inter alia due to the misconduct hearing tribunal's guilty finding and the residual relegation of Petitioner to a 23 month punitive segregation term after a hearing based on a misclassified offense report in breach of disciplinary rule 3323 barring an A-1 categorization of his charge, thus his state-created liberty interest in freedom from disciplinary segregation per 3341.5(c)(1) was violated. The trial court the last reasoned opinion court rejected the claim, the California Appellate and Supreme Courts affirmed. Contrary to Respondent's claim, the state court's determination was an unreasonable application of United States Supreme Court law.

## MISCLASSIFICATION OF OFFENSE REPORT

Having shown that a liberty interest is at stake (ante, Argument I), Petitioner next demonstrates that he was not given all the process he was due. California Code of Regulations, Title 15 §3323(b)(3)/(4) provides that only inmates who have been noticed by infraction report with a descriptive language circumstances reporting that they have battered causing serious injury or battered with a weapon shall have their alleged misbehavior categorized as a Division "A-1" series offense.

Notwithing the A-1 offense classification, the classifying official's interpretation of Regulation 3323 was unreasonable and arbitrary where nothing within the cumulative charging document (Pet. Lodg. at Exhs F, G, and T) supported the deduction that Petitioner battered/battered with a weapon resident DAVIS to incur the 3323(b)(3)/(4) offense classification.

As the offense was categorized in this manner, it created a catalyst for a culpability finding and ASU-Max sentence for an alleged infracted that was never reported, as to violate Hill's, supra proscription against arbitrary deprivations. Id. at 455. Hence, Petitioner is entitled to federal relief on this ground.

## D. Nature of Error:

A prison disciplinary tribunal's culpability finding and residual relegation of an accused inmate to a 23 month punitive segregation term in a prison's ASU-Max after a rules infraction adjudication proceeding not comporting with fundamental procedural rights, such as the right not to be deprived arbitrarily of a protected liberty interest require reversal per se as structural error thus is not subject to harmless error analysis. Brecht v. Abrahamson (1995) 509 U.S. 619, 630.

## E. AEDPA's §2254(d) Does Not Bar Relief:

Because Petitioner's petition was filed after April 24, 1996, the Anti-Terrorism and Effective Death Penalty Act ('AEDPA') applies. Lindh v. Murphy (1997) 512 U.S 320, 327. AEDPA amended 28 USC §2254(d) to provide in relevant part that, "no federal relief shall be granted unless the state court's adjudication of the claim -- (1) resulted in a decision that involved an unreasonable application of clearly established federal law; or (2) was a unreasonable determination of the facts in light of the evidence presented to it." In applying this section, the United Stats Supreme Court has made it clear that relief is required whenever a state court decision is "objectively unreasonable." Lockyer v. Andrade (2003) 538 U.S. 63, 75.

A state court's decision is objectively unreasonable where the court fails to consider facts it should consider in deciding a constitutional claim, and §2254(d) will not bar relief. Williams v. Taylor (2000) 529 U.S. 362, 397-398. Acc'd Id. at 416. (O'Conner J. concurring); Taylor v. Maddox (9th Cir. 2004) 366 F.3d 1001; Bradley v. Duncan (9th Cir. 2002) 315 F.3d 1091; Brown v. Sternes, 304 F.3d 677, 692-694.

## Failure to Consider Facts Which Should Have Been Considered:

This is exactly what transpired here, in demonstrating that the state court decision is unreasonable Petitioner relies on the fact that, in denying relief, the state trial court failed to cogitate facts which were critical to resolving his assertion of a violation of his due process rights under Sandin, supra (federal

11.

grounds for relief, claim one). Petitioner's Petition (Pet.) at 6-7.

In this regard concerning Petitioner's claim, i.e., that he was denied due process when he was found guilty and relegated to 23 months punitive segregation after a disciplinary hearing based on a misclassified offense report in contra-wention of disciplinary rule 3323 barring an A-1 categorization of his charge, the state trial court found that the disciplinary tribunal's "findings clearly support the [A-1 offense] classification." (Pet. Lodg., Exh. A at 3 lns 17-20.) Although implicity finding that Petitioner's infraction report had been A-1 classified, the state court found such offense categorization to be clearly supported based solely on the culpability finding itself. Ibid. The State court even referenced Cal. Code of Regs., Tit. 15, §3323(b)(8) authority it relied on to support its decision. Ibid. However, in viewing the cited regulatory subdivision "(b)(8)" nothing within it remotely pertains to Petitioner, his charge, and/or the A-1 finding rendered by the disciplinary board.

As to the court's ruling, the state court ignored critical facts. There was evidence to support a finding that Petitioner could not be held liable for the charged infraction as written. Yet during its substantive analysis, the court did not consider any of it. Albeit referencing the propriety of the A-1 classification, the state court failed to evaluate the totality of the available evidence probative on the issue of whether the offense was properly categorized as A-1, thus non-violative --- both that adduced in the charging documents (evincing a non-correctional staff reporting that Petitioner had ever battered/battered with a weapon inmate DAVIS and/or that he had not been additionally charged under one or more of the CDC's alternative accomplice liability theories, i.e., conspiracy, aiding-and-abetting, and/or accessory (Pet. Lodg., Exhs F, G, and T)) and the evdience adduced in the 2004 disicplinary adjudication of the misconduct report (illustrating that Petitioner had only been held culpable of violating the A-1 series offense proscription against the specific act of "participation" in a

12.

stabbing battery) in reweighing it against the apparent fact that the participation finding could not be reconciled under the A-1 classification rubric, which only allows such offense classification and/or offense culpability finding where something in the charging document(s) is indicative of the accused being the actual perpetrator.

This was an actuality because in its substantive analysis, the state court had noted how the tribunal's disciplinary findings "clearly" supported the A-1 offense classification but failed to discuss the uncontrovertible fact that nothing within the findings/charging documents denoted Petitioner as the DAVIS perpetrator or that he had been held culpable of an alternative A-2 offense of conspiracy (the only way to support the state court's deduction that the A-1 classification was clearly supported). Accord, Cal. Code of Regs., Title 15 §3315(f)(3); Pet. Lodg., Exh. A at 3 lns 19-20. None of these facts were even mentioned by the state trial court. Ibid. passim. Accord Williams v. Taylor, supra 529 U.S. at 397-398, 416 (granting relief concluding that the state court decision was unreasonable by failing to consider totality of the available evidence).

Because the state court failed to evaluate importan[t] ~~~~ its substantive analysis calculus with regard to Petitioner's claim one, its decision denying said claim is objectively unreasoanble and section 2254(d) is no bar to relief.

//
//
//
//

13.

IV.

PETITIONER'S DUE PROCESS RIGHTS WERE VIOLATED BECAUSE HE DID NOT RECEIVE ADEQUATE SUBSTITUTE INVESTIGATIVE AID IN THE FORM OF GATHERING OF RELEVANT INFORMATION NECESSARY FOR AN ADEQUATE COMPREHENSION OF THE CASE FROM HIS ASSIGNED INVESTIGATIVE EMPLOYEE (CLAIMS II, III, AND IV)..

A. Pertinent Facts:

Prior to the adjudication of Petitioner's Charge II disciplinary charge, he sought and was assigned substitute investigative aid (SIA), Officer A. FLORES due to his segregation status inabling him from gathering information and evidence for construction of his defense. (Pet. Lodg., Exh. L at 1.)

Simultaneously while charging Petitioner, residents GOFFNEY and BISHOP were also infracted with connection to the DAVIS offense as his co-defendants. (Pet. Lodg., Exh. I.)

The cumulative disciplinary notice (CDCR forms 115, 1030, and 837) brought against each inmate was based entirely on what other inmates had alleged, inferring in relevant part that, (1) Petitioner had conversed with resident BISHOP on the recreation field on June 3, 2003 with instructions to assault DAVIS, and (2) that on June 5, 2003, the day before the DAVIS assault, Petitioner had ordered GOFFNEY and BISHOP to assist each other in assaulting DAVIS. (Pet. Lodg., Exhs G, I.)

Additionally, the disciplinary factfinder in ultimately holding Petitioner culpable relied on the inmate allegation [disclosed to him during his pre-hearing review] that, BISHOP after assaulting DAVIS was observed wiping his hands and body with a tee shirt then disposing of it near the cellblock's wall. (Pet. Lodg., Exh. J at 5.) Petitioner one of 31 inmates near the established DAVIS incident perimeter (Ibid., Exh. O) observed crime scene preservationalist evidence placard each item of "discarded/bloodied" clothing identified within the entire housing unit. No tee shirt was found by and/or collected near any wall by any Centinela staff.

In relation to the alleged June 3rd BISHOP and Petitiner recreation field

14.

intrigue, BISHOP was within the prison's education department during the hours of general recreational yard access. With Petitioner himself also attending vocational electronics on this same day, thus inabling either to collaborate with the other.

During the June, 2003 month, Petitioner resided in cellblock 4 and GOFFNEY and BISHOP in cellblock 3. (Pet. Lodg., Exh. F at 1.) Consistent with then existing facility operational procedure, units 3 and 4 were not allowed recreation field access together. Accord Pet. Statement of Facts, Ground 3 ¶¶IV-V.

In addition to being quartered in cellblock 4, for the entire day of June 5, 2003, Petitioner also attended vocational electronics and could not access the recreation field nor access it with cellblock 3 (GOFFNEY and BISHOP's housing unit). (Pet. Lodg., Exh. N.) Thus inabling him to collaborate with either resident with instructions to assist the other in assaulting DAVIS.

Aware that the allegations were the product of falsity, and as part of his defense to undermine the sources reliability/credibility and to refute and disprove the allegation of a June 3rd conversation with BISHOP, issuing of an order to GOFFNEY/ BISHOP to assualt DAVIS on June 5th, and a June 6th BISHOP hand-wiping/bloody tee shirt discarding, Petitioner requested his assigned SIA, FLORES to ascertain the existence of BISHOP's June 3, 2003 school attendance, to ascertain cellblock 3's recreation yard access scheduling protocol, and to determine the existence of any tee shirt/bloody tee shirt discarded and/or found, collected, photographed, itemized, and/or evidence placarded by any Centinela corrections staff. (Pet. Lodg., Exh. M at 5 Nos. #18, #20 at 6 No. #27.)

Notwithstanding Petitioner's request and its indispensiblness to his defense, on August 6, 2004 SIA, FLORES submitted his completed investigative report into evidence without carrying out the requested task. (Pet. Lodg., Exh. L passim.) The SIA assistance in these regards were deficient. Petitioner was subsequently found guilty and relegated to 23 months of punitive segregation in the prison's ASU-Max.

15.

## B. Applicable Law:

The Constitution provides a right to inmates undergoing a prison's disciplinary process to adequate substitute aid from an assigned invetsigative employee in the form of gathering evidence/information for a defense when a prisoner's confinement status makes it unlikely that he can do so on his own. Wolff v. McDonnell (1974) 418 U.S. 539.

## C. Prejudicial Constitutional Violation:

On appeal, Petitioner contended that his due process rights were violated, inter alia because his assigned SIA rendered inadequate aid. The state courts ruled otherwise, and Respondent maintains likewise. Contrary to their claim, the state court's determination was an unreasonable application of United States Supreme Court law.

## INADEQUATE SUBSTITUTE INVESTIGATIVE AID

Having shown that a liberty interest is at stake (ante, Argument I), here too Petitioner shows that he was not provided all the process he was due. The Due Process Clause furnishes inmates with two types of safeguards. The first consist of procedural protections and the second is composed of evidentiary protections. Wolff, Hill supra. Generally an inmate designated for placement in disciplinary segregation must receive, in relevant part, adequate substitute aid where his housing status precludes him from gathering evidence/information on his own. Due process provides that an inmate is entitled to "adequate aid" from an investigative employee in assisting him in preparation for a prison disciplinary hearing in cases where the inmate is illiterate or in cases in which a prisoner's confinement status makes it unlikely that the prisoner can collect and present the evidence necessary for an adequate comprehension of the case. Wolff v. McDonnell (1974) 418 U.S. 539, 570; Pen. Code §2932(c)(2). In recognition of Wolff's adequate aid precept, under Title 15 Cal. Code of Regs., §3318(a)(1)(B)-(C) an investigative employee shall gather information and question all staff who may

16.

have relevant information. Niether was done in Petitioner's case.

Investigative Employee, SIA FLORES failed to ascertain whether there was a bloody tee shirt that a confidential informant had said inmate BISHOP used to wipe his his hands and body after the assault on inmate DAVIS. (Pet. Lodg., Exh. J at 5; Exh. L passim.) FLORES also did not obtain cellblock 3's recreation yard access scheduling protocol. He further failed to obtain photographs of blood spatter that was documented in the charging document (Ibid. Exh. F at 1) as covering the walls and floor of cell 149 cellblock 3, where the stabbing of resident DAVIS occurred. (Ibid. Exh. L passim.)

Notwithstanding Respondent's claims to the contrary, without the SIA's ascertaining/gathering of the requested information, Petitioner could not show that he and resident BISHOP could not have conversed on June 3, 2003 with instructions to assault DVAIS, could not show that he had not ordered either GOFFNEY/BISHOP to assist the other in attacking DAVIS on June 5, 2003, and could not have shown that it was highly improbable for him to have been in/within the cell door as to prevent a blood-covered DAVIS from existing the cell on June 6, 2003 because upon securing     cellblock 3, every inmate was relegated to an unclothed body and clothing search (Pet. Lodg., Exh. Exh. S), with an absolute non-discovery of any blood/blood spatter on Petitioner, his clothing, and/or shoe soles. Nor was it alleged by any source inmate that he discarded any clothing item following the DAVIS incident or prior to responding staff's arrival.

For the foregoing reasons, Petitioner was thereby denied a meaningful opportunity at the hearing to impeach the statements of the confidential inmate informants which were the sole basis for infracting him and for the finding of his guilt. Thus his due process rights were violated on these points and he is entitled to habeas relief on these grounds as well.

D. Nature of Error:

The denial of a prison disciplinary-action inmate's 14th Amendment right to

adequate substitute aid require reversal per se as structural defect, thus is not amenable to harmless error analysis. Brecht v. Abrahamson (1993) 509 U.S. 619, 630.

## E. AEDPA's §2254(d) Does Not Bar Relief:

As noted above in part E Argument III (Claim I), because Petitioner's petition was filed after April 24, 1996, the provisions of AEDPA apply. Lindh, supra at 327.

Regarding when a petition can be granted where a petitioner challenges the state court's finding based on the state record, AEDPA §2254(d)(2) provides that "a habeas application shall not be granted with respect to any claim unless the state court adjudication resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." Thus section 2254(d) authorizes federal relief where the state court decision is not merely wrong, but unreasonable. Accord. Taylor v. Maddox, 366 F.3d at 999 n. 1.

In situations where a petitioner challenges a state court's findings based on the state record, 2254(d)(2)'s "unreasonable determination" clause applies most readily than section (e)(1). Challenges such as the finding is unsupported by sufficient evidence falls into this category, e.g., Ward v. Sternes, 334 F.3d 696, 705-708.

### Unsupported State Court Findings By Sufficient Evidence:

Petitioner maintains here that the state court factfinding process was defective because the findings it made were unsupported by sufficient evidence. Petitioner proceeds by summing the evidence before the state court during its review of his claim that his assigned investigative employee, SIA FLORES provided inadequate substitute aid due to his failure to gather information necessary for an adequate comprehension of the case and in assisting him in preparation of his defense.

In rejecting the claim, the state court during its substantive analysis evaluated whether Petitioner's assigned SIA's failure to gather requested

18.

information crucial to the construction of his defense violated his right to due process as to entitle him to relief by considering (1) whether Petitioner's inadequate opportunity to contest confidential evidence that he planned orchestrated the stabbing of resident DAVIS via conversations with inmate BISHOP, and (2) whether he was or was not the then most influential Crips (gang member) in facility C.

In answering the substantive question, the superior court (the last reasoned opinion court) in reviewing the prison disciplinary record although correctly summarizing Petitioner's position concerning how the SIA's failures could cripple his defense efforts (namely by inabling him to adequately contest confidential evidence) ultimately determined that the adequacies or alleged biases of the SIA were not violative of due process. (Pet. Lodg., Exh. A at 3 lns 21-22.) The court concluded this was so, by finding that even with the striking of the evidence, there remained more than suffcient evidence of accomplice liability at the time of the DAVIS offense itself. Ibid. lns 24-26. And therefore decided that the SIA's assistance was not prejudicial in failing to gather/ascertain information requested for preparation of Petitioner's defense. Ibid. at lns 21-22.

An independent review of the record (Pet. Lodg., Exhs F, G, and T) shows that this decision cannot be reconciled with the objective facts of this case. Sufficient evidence evines that the state court fidnings are unsupoorted. This is so because what the court analysis overlooked (albeit acknowledging that the entire case was based on confidential evidence) is that with an adequate refutation/ disproving of the confidential evidence, there remained absolutely no evidence, let alone sufficient evidence of Petitioner being the perpetrator in the DAVIS assault (the disciplinary finding he was held culpable of), nor of being an accomplice to the stabbing itself, a guilt finding never charged nor proved. There is nothing excluding the confidential source inmate allegations/evidence indicative of accomplice liability or being the actual DAVIS assailant. Ibid.

19.

As the evdience was sorted in this manner, it became essential, even dispositive for Petitioner's assigned SIA to carry out the requested investigative task as to enable him to refute, disprove, undermine, and/or impeach the source inmate allegations, since such evidence was the sole basis foundationing the charge and culpability finding. As the record reveals, the state court was required to decide that the SIA indeed had provided inadequate substitute aid contrary to Wolff's guarantee.

And more significantly it illustrates that the state court findings are unsupported by sufficient evidence. Since the state record goes against the state court's factual findings, its decision is fatally undermined and renders the resulting outcome objectively an unreasonable determination of the facts. Accord, Ward v. Sternes, 334 F.3d 696, 705-708. Therefore, section 2254(d) is no bar to relief.

//

//

//

//

20.

## V.

PETITIONER'S DUE PROCESS RIGHTS WERE VIOLATED BECAUSE HE WAS NOT PROVIDED WITH DISCLOSURE OF EVIDENCE/REPORTS RELIED ON BY THE FACTFINDER IN HOLDING HIM CULPABLE PRIOR TO HIS DISCIPLINARY HEARING CONVENING, INFERRING THAT HE WAS THE MOST INFLUENTIAL CRIPS GANG MEMBER AND HAD HAD SEVERAL CONVERSATIONS WITH RESIDENT DAVIS PRIOR TO HIS ASSAULT (CLAIM V).

### A. Pertinent Facts:

On August 7, 2004, Petitioner was summons before the prison disicplinary fact-

finder, Senior Hearing Officer (SHO), WHITE for adjudication of the DAVIS assault

infraction report and found guilty. (Pet. Lodg., Exh. J at 1, 3.)

Thereafter, Petitioner was provided a summary of evidence relied on by the SHO

to support the finding. In reviewing the summary, the SHO cited a litany of inmate

allegations inclusive of Petitioner having "talked to DAVIS on several occasions

on June 6, 2003 prior to the incident to stage the fight between BISHOP and him,

and that he is the most influential gang affiliate on facility C." Ibid. at 5.

In refiling the Charge II complaint, none of these evidentiary statements were

noticed on Petitioner. Petitioner was subsequently relegated to 23 months of ASU-

Max punitive segregation.

### B. Applicable Law:

Due process in the prison-disciplinary adjudication context guarantees inmates

the right to disclosure of all non-confidential evidence/reports to be relied upon

by the misconduct factfinder prior to the proceeding. Title 15, Cal. Code of Regs.,

§3320(c)(1).

### C. Prejudicial Constitutional Violation:

#### DISCIPLINARY GUILT FINDING WITHOUT EVIDENCE DISCLOSURE

Under Title 15 California Code of Regulations §3320(c), a prisoner is entitled

to copies of all non-confidential information at least 24 hours before the

hearing. Under section 3321(b) of CCR, a prisoner facing a disciplinary violation

is entitled to as much of the confidential information as possible without

without identifying the source.

21.

Here, Petitioner was not provided with disclosure of evidence of several conversations he was alleged to have had separately with inmate DAVIS prior to the June 6, 2003 assault in order to stage a fight between inmates DAVIS and BISHOP, as well as evidence that he was the most influential "Crip" in facility C. (Pet. Lodg., Exh. J at 5.)

The SHO's reliance on this evidence/information in holding Petitioner culpable without notice on him prior to and/or during the proceeding deprived him of the ability to adequately prepare his defense and to refute, disprove, and impeach the allegations given by confidential inmate informants which were the sole basis for the culpability finding.

**D. Nature of Error:**

Reversal per se as strutural error is required when a prison disciplinary-action inmate's hearing is convened without disclosure of the evidence/information relied on by the factfinder, thus the defense of harmless error is not available to Respondent. Brecht v. Abrahamson (1995) 509 U.S. 619, 630.

**E. AEDPA's §2254(d) Does Not Bar Relief:**

In applying this section, the Supreme Court has made clear that relief is required whenever a state decision is "objectively unreasonable." Lockyer v. Andrade (2003) 538 U.S. 63, 75. When a state court issues a decision which addresses a constitutional issue, the process of determining if that decision is "objectively unreasonable" is relatively easy.

However, where the state court fails to provide any reasoning for its decision, as where it rejects the constitutional claim in a summary fashion without explanation, the process of determining "objective" unreasonableness is more complicated.

In these situations, it is impossible to analyze the state court decision to determine if it is objectively reasonable. However, the Ninth Circuit has charted a middle course for those instances where the state court has failed to provide

22.

rationale for its decision. Thus an independent review of the record is required to determine whether the state court clearly erred in its application of controlling law. Accord, Pirtle v. Morgan (9th Cir. 2000) 313 F.3d 1160, 1167; Delgado v. Lewis, 223 F.3d at 982.

Here, the state court rejected Petitioner's claim that his federally protected liberty interest was violated in contravention of CDCR disciplinary rule 3320(c)(1) (by convening his hearing without disclosing all non-confidential evidence to be relied upon by the factfinder) without providing any reasoning whatsoever. See, In re Mark A. Harris, #EHC00647, Order of August 17, 2006, Pet. Lodg., Exh. A passim. Pursuant to the above authorities, an "independent review of the record is required to determine whether the state court clearly erred in its application of controlling law." Pirtle, supra at 1167. Because there is no state decision to analyze with regard to Petitioner's Claim V of the petition, relief is required if this independent review leaves the Court with a "firm conviction that the state court erred." Bradley, supra at 1100.

In rejecting Petitioner's claim five the state court without analysis, apparently found that his rights were not violated. For the same reasons discussed above, however, an independent review of the record shows that this decision cannot be reconciled with the objective facts of this case. Based exclusively on confidential source inmate information (inclusive of the allegations that (1) Petitioner on several occasions on the recreation field on June 6, 2003 prior to the incident talked to residents BISHOP and DAVIS separately to stage the fight between them, and (2) that he was the then most influential Crip gang member on facility C) the disciplinary factfinder found Petitioner guilty of the charged offense. The guilt finding was affirmed by the highest level of CDCR administrative review. And it was also found without impropriety by the last reasoned opinion state court.

However, based on the state court record, it is shown that none of the foregoing informant evidence relied on by the SHO in his culpability finding was ever

23.

disclosed to Petitioner prior to, during, and/or after adjudication of his rules infraction report. Based on an independent review of the record, it was objectively unreasonable for the state court to deny Petitioner's denial of disclosure of evidence relied on claim. For these reasons, Section 2254(d) is no bar to relief.

//

//

//

//

VI.

**PETITIONER'S DUE PROCESS RIGHTS WERE VIOLATED BECAUSE HE WAS NOT GRANTED A POSTPONEMENT OF HIS DISCIPLINARY HEARING IN ORDER TO INSPECT EVIDENCE (CLAIM VI).**

**A. Pertinent Facts:**

Upon commencing the Charge II adjudication, Petitioner sought a continuance to allow for further SIA gathering of information requested but never collected, which constituted a reasonable need attributable to substandard SIA aid. (Pet. Lodg., Exh. P.)

The information consisted of (1) blood spatter photos of the DAVIS incident area, (2) Unit C3's June, 2003 recreation field access schedule, (3) a determination of a June 3, 2003 school attendance by resident BISHOP, and (4) a determination of a June 6, 2003 White tee shirt discovery by any Centinela prison staff within or around the DAVIS crime scene, or anywhere in Unit C3 on June 6, 2003. (Pet. Lodg., Exh. M at 5, 6.)

The request was denied with the SHO adducing it as unnecessary, which notwithstanding did not undermine Petitioner's showing of a reasonable need for a postponement of the proceeding. (Pet. Lodg., Exh. J.) Petitioner was subsequently held culpable and relegated to 23 months of ASU-Max punitive segregation.

**B. Applicable Law:**

Under Title 15, CCR §3320(d) an inmate is conferred the right to postponement of a disciplinary hearing upon request and the showing of a reasonable need for a continuance.

**C. Prejudicial Constitutional Violation:**

DENIAL OF REQUEST FOR POSTPONEMENT AGAINST REASONABLE NEED SHOWING

Prison disciplinary hearings may be postponed for up to thirty days upon an inmate's written request showing a reasonable need for a postponement of the hearing. Title 15 California Code of Regulations (CCR) §3320(d). The Supreme Court of the United States held in Wolff, supra that due process requires that an

25.

inmate facing prison disciplinary proceedings, in relevant part, should be allowed to present documentary evidence at the hearing when permitting him to do so will not be unduly hazardous to institutional safety and correctional goals.

Here, Petitioner requested, and was denied, a postponement in order to inspect evidence of refutation and impeachment value. Namely photographs of blood spatter and to find out whether a bloody tee shirt allegedly used by inmate BISHOP to cleans himself after assaulting DAVIS had been collected by prison officials, and to obtain recreation yard schedules in order to prove that he could not have met with inmate BISHOP on June 3, 2003 as alleged by confidential sources to stage the stabbing of inmate DAVIS.

The denial of a continuance irreparably deprived Petitioner of a meaningful opportunity to prepare his defense and to refute and impeach the inmate allegations which were the sole basis for bringing the charge and upholding the guilt finding against him.

D. Nature of Error:

When a disciplinary-action inmate's right to a hearing continuance is truncated reversal per se as a strutural defect is mandated. Accord Brecht, supra 509 U.S at 630.

E. AEDPA's §2254(d) Does Not Bar Relief:

In applying AEDPA's 2254(d) to this case, it is clear that federal relief is warranted, evenmoreso in this instance notwithstanding the state court failure to furnish any rational for its ruling.

For this proposition, Petitioner relies on the Ninth Circuit's holding in Delgado v. Lewis (9thCir. 2000) 223 F.3d 976, where the Court held that where a state court rejects a claim without any analysis, review of the record independently is necessitated to determine whether the state court clearly erred in its resolution of the claim. Id. at 982.

The state court without analysis rejected Petitioner's improper denial of

26.

hearing postponement request claim on the seeingly basis of being non-violative of due process. Be that as it may, for the above articulated reasons, review of the record alone evinces that the state decision cannot be harmonized with the dispassionate case facts.

This is so because based solely on the disciplinary tribunal's finding of unnecessariness of the evidence sought by Petitioner, it denied the request. (Pet. Lodg., Exh. J at 1, 2.) On this record nevertheless, the information was crucial, even dispositive on the question of whether Petitioner (1) was in the cell-door of cell C3 #149 preventing DAVIS from existing the cell after being stabbed, (2) whether he was on the recreation field on June 3, 2003 conversing with inmate BISHOP about stabbing resident DAVIS, and (3) whether a white tee shirt was collected by prison officials anywhere within the DAVIS incident area or the entire Unit 3 cellblock.

The information/evidence or lack thereof would have shown that Petitioner could not have tussled with DAVIS or residents BISHOP/GOFFNEY in the cell-door of cell C3 #149 as to prevent DAVIS from exiting, that he could not have been on the recreation field with BISHOP on June 3, 2003, and could disproved the assertion that a tee shirt was discarded by BISHOP after allegedly assaulting DAVIS, as to cmpletely undermine the foundation of the disciplinary charge (confidential information from inmates). Based on an independent review of the record, it was objectively unreasonable for the state court to find that the disciplinary tribunal's denial of Petitioner's request for a postponement was non-violative of due process. Section 2254(d) is no bar to relief.

//

//

//

//

27.

VII.

**PETITIONER'S DUE PROCESS RIGHTS WERE VIOLATED BECAUSE HE WAS NOT ALLOWED TO PRESENT DOCUMENTARY EVIDENCE AT HIS PRISON DISCIPLINARY ADJUDICATION PROCEEDING (CLAIM VII).**

## A. Pertinent Facts:

The sole foundation supporting the charge against Petitioner were statements garnished by confidential inmate sources. (Pet. Lodg., Exhs F, G, and T passim.)

The disciplinary charge noitced on Petitioner alleged, inter alia, that he had blocked DAVIS' efforts to exit the cell during the attack and that this assertion was confirmed by the blood spatter and blood stains discovered over the cell floor. Petitioner's only defense was to disprove, and/or impeach the allegations. To this end, he sought presentation of documentary blood spatter photos under officials' control (i.e., photos of the walls, floor, cell #149 entrance way, the door interior and exterior, and cell fixtures of cell #149). Accord, Pet. Statement of Facts ¶I at 9d.

In this regard, nine 837 reports compounded by responding staff also documented DAVIS as being covered in blood, bloodied, and with blood on his chest. In connection with this, evidence preservationalist, ROMERO reported a bloody fingerprint and blood stains on the sink/toilet furnishing of cell #149. (Pet. Lodg., Exhs Q, R.)

Succeeding the discovery of DAVIS having been attacked, every inmate was relegated to an unclothed body and clothing search. (Pet. Lodg., Exh. S.) No blood was discovered on Petitioner, his clothing, shoes and/or shoe soles nor was it alleged by any source inmate that, he discarded any clothing item following the DAVIS incident or prior to responding staff's arrival.

## B. Applicable Law:

Under the precept of <u>Wolff v. McDonnell</u> (1974) 418 U.S. 539 an inmate is legally entitled to presentation of relevant documentary evidence in the prison disciplinary adjudication context.

28.

C. Prejudicial Constitutional Violation:

DENIAL OF DOCUMENTARY EVIDENCE PRESENTATION

The United States Supreme Court in <u>Wolff v. McDonnell</u> (1974) 418 U.S. 539 has found that due process in prison disciplinary proceedings requires that the inmate must be afforded an opportunity to present documentary evidence in his defense if consistent with institutional safety. <u>Id</u>. at 566.

Here, Petitioner requested, and was denied the opportunity to present documentary blood spatter photos at his disciplinary proceeding. (Pet. Lodg., Exh. J at 1.) Notwithstanding the tribunal's denial, the blood spatter evidence was relevant even detreminative on the question of whether the source allegation of Petitioner being at cell 149 and endeavoring to prevent resident DAVIS from exiting the cell was accurate. And due to the spatter circumference in connnection with the unclothed body and clothing search and the absence of an allegation that Petitioner discarded any clothing article and/or wiped his body after the assault it could have undermined the cources' credibility as to refute and impeach the inculpatory statements.

This is so because it would have shown a high improbability for Petitioner to do what was ascribed to him as having done in the DAVIS incident area, without incurring a spec of blood or blood somewhere on his persons. Therefore, Petitioner was deprived of a meaningful opportunity at the hearing to call into question the confidential inmate statements which were the only basis for bringing the charge against him and for the finding of his guilt. Thus on this point, his due process was violated.

D. Nature of Error:

The deprivation of an inmate's legal guarantee to presentation of documentary evidence is structural error that mandates reversal per se. Accord <u>Brecht</u>, supra at 630.

E. AEDPA's §2254(d) Does Not Bar Relief:

In conducting a substantive analysis under section 2254(d) where the state court has failed to provide an articulable basis for its ruling, the federal habeas court must conduct an independent review of the record, and grant relief if it is left with a firm conviction that the state judiciary erred.

In this case, without any analysis on Petitioner's denial of documentary evidence presentation claim, the state court denied him relief. As discussed in Petitioner's constitutional violation showing (part C above), notwithstanding, a review of the record shows that the state court decision is flawed.

For no reason at all the disciplinary adjudicator (SHO WHITE), denied Petitioner the opportunity to present the documentary blood spatter photos and thereafter held him culpable of the DAVIS attack. (Pet. Lodg., Exh. J at 3.) On this record, Petitioner's showing that the documentary evidence was probative and could have refuted and impeached the confidential inmate statements which were the only basis for finding him guilty of the DAVIS charge, completely undermines the prison's infraction report brought against him.

Based on an independent review of the record, it was objectively unreasonable for the state judiciary to deny Petitioner's claim. Section 2254(d) thus is no bar to relief.

//

//

//

//

30.

VIII.

**PETITIONER'S DUE PROCESS RIGHTS WERE VIOLATED BECAUSE HE WAS NOT PERMITTED TO CALL SEVERAL WITNESSES AT HIS PRISON DISCIPLINARY HEARING (CLAIM VIII).**

A. Pertinent Facts:

Having it been alleged that Petitioner instructed BISHOP to assault DAVIS on the recreation field just prior to the June 6, 2003 cellblock C3 incident.

And cognizant that other inmates had just walked into the cellblock with him upon closure of the exercise field, was themselves on the recreation yard during the time he was to have conversed with BISHOP, saw him over the span of the outdoor period, and could provide testimony that refuted the BISHOP/Petitioner conversation and conclave, Petitioner requested several inmates to be called telephonically during the hearing for questioning. (Pet. Lodg., Exh. L at 9.)

The witnesses also lived in cellblock 3, were known to Petitioner and DAVIS, knew the standing of their interaction, and were sought for further questioning of whether there was any animosity between them to warrant Petitioner's complicity in any form in the charged act. And could also have supported his defense that he had been mistakenly identified in one context and maliciously picked out in the other.

B. Applicable Law:

All prison disciplinary-action inmates has the right to call witnesses when doing so would not be unduly hazardous to prison safety or correctional goals. Wolff, supra 418 U.S. at 566.

C. Prejudicial Constitutional Violation:

DENIAL OF OPPORTUNITY TO CALL DEFENSE WITNESSES

The Supreme Court in Wolff v. McDonnell (1974) 418 U.S. 539 held that a prisoner facing a disciplinary proceeding should be allowed to call witnesses when doing so would not be unduly hazardous. Id. at 566; See also Title 15 CCR §3315(e).

Here, Petitioner requested, and was denied the opportunity to call witnesses. With

31.

regard to this claim, Respondent has distorted the facts presented in the Answer as well as the identities of the witnesses whom Petitioner ultimately sought. (Ans. at 14, lns 4-5.) Specifically the record shows that inmates DAVIS, DABNEY, CUNNIGAN, GRISSOM, MOORE, QUEZADA, DIXON, and SMITH were requested to be contacted telephonically to participate as defense witnesses. (Pet. Lodg., Exh. L at 9.) Respondent's inference that correctional officers BACH and DELGADILLO and inmate DAVIS were the sole witnesses who Petitioner sought as to support his witness denial claim is factually wrong. Accord, Ibid.

**D. Nature of Error:**

A prisoner denied his right at a prison disciplinary proceeding to call witnesses when it was consistent to do so is entitled to reversal per se of the culpability finding as structural defect. Brecht, supra at 630.

**E. AEDPA's §2254(d) Does Not Bar Relief:**

Under the rubric of AEDPA §2254(d), relief is required whenever a state court decision is "objectively unreasonable." Accord, Lockyer v. Andrade (2003) 538 U.S. 63, 75.

It is relatively minuscule in determining such unreasonableness when the state court issues a decision which addresses a constituional claim. However, where the state judiciary fails to provide any reasoning for its decision, as where it rejects the claim in summary fashion, the process of determining objective unreasonableness is more complicated. And requires the reviewing court to conduct an "independent review of the record to ascertain whether there was error in the application of federal law." Delgado, supra 223 F.3d at 982.

Here too, the state court rejected Petitioner's claim without mentioning it whatsoever. (Pet. Lodg., Exh. A passim.) Thus an independent review is required. Pirtle, supra 313 F.3d at 1167.

In rejecting the claim without any analysis, the state court ostensibly concluded that the disciplinary factfinder's denial of Petitioner's request for witnesses as

32.

a telephonical presentation was without error. For the same reasons set forth above, an independent record review evinces that the decision is defective.

Based exclusively on arbitrariness, the disciplinary adjudicator for no reason at all denied Petitioner the opportunity to telephonically present witnesses DABNEY, CUNNIGAN, GRISSOM, MOORE, QUEZADA, DIXON, and SMITH who were on the recreation field with him the entire outdoor period on June 6, 2003 prior to the DAVIS assault. And could have testified that Petitioner never conversed with either BISHOP or DAVIS which would have refuted and impeached the relevant statements tendered by confidential inmate sources (Pet. Lodg., Exhs F, G) as to undermine their credibility on these points as well. Which was the sole basis for charging him and holding him culpable.

Grounded on an independent review of the record, it was objectively unreasonable for the state court to conclude that Petitioner's due process had not been violated. For these reasons here too, section 2254(d) is no bar to relief.

//

//

//

//

IX.

PETITIONER'S DUE PROCESS RIGHTS WERE VIOLATED AT HIS PRISON MISCONDUCT ADJUDICATION PROCEEDING WHEN THE DISCIPLINARY TRIBUNAL DENIED HIS REQUESTED WITNESSES GIVEN TO HIS SIA WITHOUT SPECIFYING AND SPECIFIC REASON FOR DOING SO (CLAIM IX).

A. Pertinent Facts:

Before convening Petitioner's Charge II adjudication, his assigned SIA introduced into evidence an investigatory report for consideration by the disciplinary board per Regulation 3318(a)(1)(E), Title 15 CCR. (Pet. Lodg., Exh. L.)

The last page of the report unequivocally documented Petitioner's request and desire to call several defense witnesses (inmates DABNEY, CUNNIGAN, GRISSOM, MOORE, QUEZADA, DIXON, SMITH, and DAVIS). Ibid. at 9. At the proceeding the request was denied without the SHO giving any reason. (Pet. Lodg., Exh. J.) Thereafter, the hearing adjudication was summarized in a completed form 115 Rules Violation Report. Ibid.

In addressing the subject of witnesses requested by Petitioner, at page three of the written statement the SHO albeit specifying why two correctional officers, BACH and DELGADILLO and resident DAVIS were denied participation in the proceeding, again not only denoted no specific reason but gave no reason at all for refusing to call those inmates identified in the SIA's report as Petitioner's requested defense witnesses. Ibid. passim.

B. Applicable Law:

Title 15 CCR §3315(e)(2) confers the right upon all disciplinary-action inmates to be provided the specific reasons for the denial of his requested witnesses.

C. Prejudicial Constitutional Violation:

DENIAL OF WITNESSES WITHOUT SPECIFYING ANY REASON

Under Title 15 CCR 3315(e), a prisoner is entitled to call both friendly and adverse defense witnesses at his misconduct adjudication proceeding. Subchapter (1) of 3315(e) requires the tribunal to call the witness unless they would be endangered, they have no relevant additional information to provide, and/or they

34.

are unavailable. Additionally, subchapter (2) of 3315(e) specifically mandates that the reasons for the tribunal's denial of an inmate's request for a witness be documented on the finalized CDCR form 115 hearing summary. Accord, Cal. Penal Code, §2932(c)(3).

Here, the disciplinary factfinder, SHO WHITE although stating his reasons for denying correctional officers BACH, DELGADILLO and resident DAVIS (Pet. Lodg., Exh. J at 3), omitted providing any reason at all for his denial of Petitioner's inclusive defense witnesses inmates, DABNEY, CUNNIGAN, GRISSOM, MOORE, QUEZADA, DIXON, and SMITH. Ibid., passim. To this day, Petitioner has no ideal why the referenced witnesses were denied nor why all of his other rights articulated herein were truncated, though he surmises it as a product of arbitrariness, and the tribunal's inability to logically relate its denial to preventing undue hazards to institutional safety or correctional goals.

Petitioner was thereby denied his due process rights on this point.

**D. Nature of Error:**

The omission of a tribunal's specific reason(s) for denying a disciplinary inmate's requested defense witnesses compels reversal per se as structural error. Brecht v. Abrahamson (1993) 509 U.S. 619, 630.

**E. AEDPA's §2254(d) Does Not Bar Relief:**

Because the state court failed to provide any rationale for its ruling, this Court must conduct an independent review of the record to determine whether the state court erred. Pirtle v. Morgan (9th Cir. 2000) 313 F.3d 1160, 1167.

The state decision even without analysis signifies apparently that Petitioner's 2004 disciplinary proceeding was without impropriety. As discussed above, the record shows the decision cannot be squared with the facts of this claim. For no reason at all or for one known to Petitioner, the tribunal failed to provide any reason for its denial of inclusive requested defense witnesses documented in the SIA's investigatory report. (Pet. Lodg., Exh. L at 9.) Because the case facts are

35.

sorted in this fashion, based on an independent review of the state record, it was objectively unreasonable for the state judiciary to deny Petitioner's claim thus concluding his rights were not violated. As such, section 2254(d) is no hurdle to relief.

//

//

//

//

X.

**PETITIONER'S DUE PROCESS RIGHTS WERE VIOLATED BECAUSE THE DISCIPLINARY TRIBUNAL'S CULPABILITY HOLDING WAS BASED ON NO EVIDENCE THAT HE BATTERED CAUSING SERIOUS INJURY/BATTERED WITH A WEAPON INMATE DAVIS (CLAIM X).**

**A. Pertinent Facts:**

On August 7, 2004, Petitioner appeared before the prison's disciplinary board, who thereafter found him guilty and in breach of a Division A-1 series offense as classified. (Pet. Lodg., Exh. J at 3.)

Simultaneous to the finding, Petitioner unavailingly reasoned with the tribunal that the culpability holding as an "A-1" category infraction is unsupported as a matter of law.

Petitioner predicated this argument on the fact that nothing within the infracting documents of the cumulative complaint noticed on him and relied on by the fact-finder, depicted him as battering/battering with a weapon resident DAVIS. (Pet. Lodg., Exhs F, G, and T passim.)

**B. Applicable Law:**

In cases involving prison disciplinary culpability holdings, due process requires that the findings of the misconduct adjudication board be supported by 'some evidence' in the record. <u>Superintendent v. Hill</u> (1985) 472 U.S. 445.

**C. Prejudicial Constitutional Violation:**

<u>FINDING OF A DIVISION "A-1" OFFENSE BREACH ON THE BASIS OF NO EVIDENCE</u>

The standard of review for a finding of an inmate's guilt by a prison disciplinary board is the "some evidence" standard as set forth by the United States Supreme Court in <u>Superintendent v. Hill</u>, supra. However, where the tribunal's finding is clearly unsupported, arbitrary or capricious or has no reasonable basis, courts should not hesitate to reject it.

Notwithstanding the factfinder's guilt finding of Petitioner for violating Regulation 3005(c) 'CONDUCT', a "Division A-1 offense" per Regulation 3323(b)(3)/(4) (defined as the commission of a battery causing serious injury or battery with a

weapon by the accused), there is <u>no</u> evidence or nothing in the record evincing him as committing any form of battery against resident DAVIS as to legally sustain the A-1 series offense culpability finding. (Pet. Lodg., Exhs F, G, I, J, L, and T passim.)

Further, no evidence showing that Petitioner stabbed, physically restrained or in any way touched DAVIS was presented at the disciplinary proceeding, which could have remotely justified the tribunal's holding. (Pet. Lodg., Exh. J passim.) Additionally, nor was Petitioner infracted under one or more available CDCR accomplice liability theories (e.g., conspiracy, aid-and-abetting, and/or accessory) or found guilty thereof. Ibid. passim. In fact, in connection with this position, Petitioner was even told by the Senior Hearing Officer (SHO) that, "<u>he was 'not'</u> <u>charged with conspiracy to commit a stabbing.</u>" (Pet. Lodg., Exh. J at 3 'EVIDENCE'.)

The guilty finding insofar as it held Petitioner liable for misconduct in breach of a Division A-1 offense is therefore unsupported as a matter of law. Accord Regulation 3323(b)(3)/(4); <u>See</u> Exh. H, Pet. Lodg. This is so because no evidence was presented at the hearing in support of it. The Supreme Court's holding articulated in <u>Hill</u>, supra teaches that due process is not satisfied if there is <u>no</u> evidence in the record from which the decision could be deduced. <u>Id</u>. at 447.

For the foregoing reasons, Respondent's contention that Petitioner's 'no evidence' claim was properly rejected by the state court is without merit. Evenmoreso, the assertion that the state judiciary properly concluded that the prison tribunal's findings as to accomplice liability was supported by evidence is without merit for the same reasons cited above. (Ans. at 12 lns 17-18, 21; at 14 ln. 21.) Accordingly, Petitioner can maintain that the state court made an error warranting federal habeas corpus relief. To this extent, the petition should be granted on these points as well.

## D. Nature of Error:

A prison disciplinary misconduct culpability finding deduced on the basis of no

evidence that could support the conclusion compels vacation of that finding as structural error, and is not amenable to harmless error examination. Brecht, supra 509 U.S. at 630.

## E. AEDPA's §2254(d) Does Not Bar Relief:

As noted above in Argument III - E, because this petition has been filed after April 24, 1996, the provisions of AEDPA apply. Lindh v. Murphy, 521 U.S. at 327. As also observed above, in applying 28 U.S.C. §2254(d), the United States Supreme Court has made clear that releif is required whenever a state decision is objectively unreasonable. Lockyer v. Andrade, 538 U.S. at 75.

### (1) Failure to Consider Facts Which Should Have Been Considered:

A state court's decision is unreasonable where the state decision fails to consider facts it should consider in deciding a constitutional claim, that decision is objectively unreasonable and section 2254(d) will not bar relief. Williams v. Taylor (2000) 529 U.S. at 397-398; Taylor v. Maddox (9th Cir. 2004) 366 F.3d 992, 1001; Bradley v. Duncan, 315 F.3d 1091; Brown v. Sternes, 304 F.3d at 692-694. This is just what happened here, in denying relief, the state court failed to consider facts which are critical to resolving the claim.

In this regard, the state superior court (the last reasoned opinion court) found that since the prison disciplinary record indicated "more than some evidence" sufficient for imposition of discipline on Petitioner, his rights were not apparently violated during the 2004 adjudication proceeding. (Pet. Lodg., Exh. A at 4 lns 13-14.)

As to this ruling, however the state court ignored critical facts in its substantive analysis. The record is replete with dispositive indicia to support a finding that Petitioner was not culpable as the perpetrator in the DAVIS stabbing attack as to legally sustain the tribunal's finding that his alleged misconduct approximated a Division "A-1" offense (defined as the commission of any battery personally by the accused). Yet in deciding whether the disciplinary

39.

board's A-1 offense culpability finding was violative, the state court did not consider any of it.

Thus the state court did not cogitate the facts that: (1) the tribunal's Division A-1 offense finding could only be maintained where there was record evidence that evinced Petitioner as directly stabbing or in any way directly touching DAVIS causing serious injury, (2) nothing in the cumulative charging complaint (Exhs F, G, and/or T) alleged that Petitioner ever stabbed and/or touched DAVIS, (3) Petitioner was never charged with or held culpable of an alternative accomplice liability theory available to CDCR charging and factfinding officials, (4) Petitioner was in no uncertain terms told by the tribunal during the hearing that he was not charged with "conspiracy to stab" (Exh. J at 3 EVIDENCE) [thus by implication, he was being infracted as a DAVIS perpetrator], and (5) the governing regulation (3323(b)(3)/(4)) relevant to the disciplinary board's Division A-1 offense finding specifically compels an accused liability under category A-1 where he personally comits the battery causing serious injury or personally batters with a weapon the person of the assault. Not a single one of these facts were even considered. A rationale factfinder might discount these facts, but no rational factfinder would simply ignore them. Because the state court failed to consider important facts in its substantive analysis calculus, section 2254(d) does not bar relief on these points.

## (2) Unsupported State Court Findings By Sufficient Evidence:

Petitioner also maintains here that the state court fact finding process was defective because the findings it made were unsupported by sufficient evidence. For this proposition, Petitioner sums the evidence before the state judiciary whilst reviewing his contention that he was found guilty on the basis of no evidence that he comited a Division A-1 offense.

In rejecting the claim, the state court analyzed whether the tribunal's culpability finding was supported by its deduction that Division A-1 offense

category was breached as to violate Petitioner's due process by evaluating whether the record supplied by both parties (Respondent and Petitioner) indicated a sufficient indicia of evidence for the CDCR to impose the finding.

In answering the substantive question, the superior court in reviewing the prison adjudication record albeit accurately encapsulating the claim under review 'of why the tribunal's findings were untenable' (that is to say by holding him in breach of a Division "A-1" offense where no evidence supported it) in consummation concluded that "more than some evidence" was indicated in the record for the tribunal to impose the discipline. (Pet. Lodg., Exh. A at 4 lns 13-14.)

However, an independent review of the record (Pet. Lodg., Exhs F, G, and T) demonstrate that the state decision is flawed. Sufficient evidence shows that the state court findings are unsupported as a matter of law. Such is the case because the state court analysis overlooked (although understanding that Petitioner was found guilty of violating Title 15, Cal. Code of Regs., §3005(c) 'CONDUCT') the specific facts that: (1) the tribunal's A-1 offense finding was only correct where the evidence depicted Petitioner as directly stabbing or directly causing serious injury to DAVIS, (2) nothing within the cumulative charging complaint evinced that Petitioner ever stabbed or touched DAVIS, (3) Petitioner was never charged with or held culpable of an alternative accomplice liability therory (e.g., conspiracy, aiding-and-abetting, and/or accessory) available to CDCR misconduct charging and factfinding officials, (4) Petitioner was told by the SHO that he was not charged with "conspiracy to stab" (Ibid. Exh. J at 3 EVIDENCE), and (5) 15 CCR 3323(b)(3)/(4) only allows such A-1 offense finding where the accused personally committed the battery causing serious injury and/or personally battered with a weapon another inmate.

Since the case facts were arranged in this nature as the record reveals, the state court was required to decide that the SHO's culpability finding indeed was

contrary to Hill's proscription against guilt findings based upon no evidence. Significantly more, it shows that the state court deductions are unsupported by sufficient eveidence. Inasmuch as the state record calls into question the factual findings compounded by the state court of last reason, its decision is incurably impaired and as a result an objectively unreasonable determination of the facts. Accord, Ward v. Sternes, 334 F.3d 696, 705-708. Thus, section 2254(d) is no bar to relief.

//

//

//

//

42.

## XI.

PETITIONER'S DUE PROCESS RIGHTS WERE VIOLATED BECAUSE HE WAS HELD
CULPABLE ON THE BASIS OF EVIDENCE (INMATE DAVIS' STATEMENT ALLEG-
ING THAT PETITIONER WAS INVOLVED IN HIS STABBING ATTACK) LACKING
ANY INDICIA OF RELIABILITY (CLAIM XI).

**A. Pertinent Facts:**

Inclusive of the Charge II refiling notice, Petitioner was issued a  CDCR form

837 Crime/Incident Supplemental Report. (Pet. Lodg., Exh. T.)

Attached to this disciplinary notice was an amended 837 narrative that was not

furnished to Petitioner during his Charge I adjudication. The report's narration

revealed a DAVIS incrimination of Petitioner being involved in his assault. Ibid.

at 4.

To undermine the report's allegation and to refute and disprove its contention

provided by DAVIS that Petitioner was involved in the attack on him, he presented

documentary evidence of testimony proffered by DAVIS himself during the Charg I

adjudication. Where he participated as a defense witness and exculpated Petitioner.

(Pet. Lodg., Exh. U.)

The Charge I recorded testimony contravened the DAVIS identification and

allegation of Petitioner being involved. Ibid. at 1-2.

The factfinder informed Petitioner that the DAVIS inculpatory report was denoted

'inmate exclusionary' as confidential, thus he should not have been  noticed with

it and that it had been memorialized in the reporting employee's confidential

memorandum charging document.

The SHO thereafter found Petitioner guilty based on the reporting employee's

confidential memorandum of DAVIS' incrimination of him and a 1030 confidential

information disclosure form with information contained in the memorialized employee's

memo (taken together both relied on documents were foundationed on allegations

provided by DAVIS).

**B. Applicable Law:**

In all prison disciplinary proceedings where an accused has been held culpable,

43.

the information that forms the basis of such misconduct findings must have some indicia of reliability as to satisfy the Hill some evidence standard. Cato v. Rushen (9th Cir. 1987) 824 F.2d 703, 705.

C. **Prejudicial Constitutional Violation:**

RENDERING OF CULPABILITY FINDING ON THE BASIS OF EVIDENCE LACKING AN INDICIA OF RELIABILITY

The Ninth Circuit Court of Appeals has held that "there must be some indicia of reliability of the information that forms the basis for prison disciplinary actions."

The statement by inmate DAVIS in Lieutenant FALCONER's Amended Crime/Incident Report (which was relied upon by SHO WHITE in finding Petitioner guilty) that Petitioner was "involved" in the stabbing of him lacks reliability, because during the Charge I adjudication of August 19, 2003, DAVIS testified that Petitioner was not involved in the stabbing attack upon him on June 6, 2003. (Pet. Lodg., Exh. U passim.)

Notwithstanding the SHO's reliance on the DAVIS incupating confidential memorialization, the decision rested on the basis of unreliable and discredited evidence. The federal judiciary in Cato v. Rushen (9th Cir. 1987) 824 F.2d 703 addressed this same concern and held that there must be an indicia of reliability of the information relied on by the factfinder to constitute 'some evidence' to meet the Superintendent v. Hill standard (474 U.S. at 447). Id. at 705.

The information itself was refuted by DAVIS during the Charge I adjudication who participated as Petitioner's defense witness and exculpated him (Exh. U at 1-2), whose exonerating testimony was then presented at the Charge II adjudication as to impeach DAVIS' identification and allegation of Petitioner's involvement. Thus the DAVIS factual basis contained in the reporting employee's memorialized report and 1030 issued to Petitioner. Both relied by the SHO lacks the required indicia of reliability to satisfy the 'some evidence' dictates of Hill and should be rejected.

44.

The SHO also failed to ascertain whether any of the confidential informants had personal knowledge of the stabbing of DAVIS, as required by Cato, supra 824 F.2d at 705. In response to a question of Petitioner's, Lieutenant FALCONER had the following to say about whether the confidential informants had personal knowledge:

> Q 9) Was the information from each source first-hand account?
>
> A 9) I can't reveal anymore information about the source without jeopardizing the identity of the sources. I have answered as many questions as possible that pertain to this 115.

(Pet. Lodg., Exh. E at 5, 2nd Question.)

For the foregoing reasons, Petitioner was thereby deprived of his right not to be found guilty except on the basis of evidence having an indicia of reliability, and except where the confidential informants had first-hand knowledge of the alleged offense.

D. Nature of Error:

The dictates of Brecht v. Abrahamson, supra 509 U.S. at 630 does not apply where reversal is required per se as structural error as with the denial of an inmate's right to have the information/evidence that forms the basis of the disciplinary action supported by an indicia of reliability

E. AEDPA's §2254(d) Does Not Bar Relief:

The provisions of AEDPA applys to this case. Accord Lindh, supra 512 U.S. at 327.

In applying §2254(d), Petitioner maintains that relief is required because the state court ruling is objectively unreasonable.

For this premise, Petitioner demonstrates that because the state court failed to provide any rationale for its ruling, an independent review of the record clearly shows that the state court erred in its application of federal law. Acc'd, Delgado v. Lewis, 223 F.3d 976, 982.

Notwithstanding the state court's failure to provide any reasoning for the denial of Petitioner's claim, its decision expressly connotes that the tribunal's

45.

guilt finding was not violative of any of his federal rights. However, as articu-
lated in Petitioner's prejudicial constitutional violation showing, the history
of the instant matter conclusively illustrates that the state decision is
incorrect.

Based on confidential/non-confidential evidence provided by DAVIS alleging that
Petitioner "was involved in the assault on him." (Pet. Lodg., Exh. T at 4.) The
disciplinary board agreed with the cumulative charging complaint and held against
Petitioner. Grounded on the existing record, however, evidence showing that the
DAVIS inculpating evidence was unreliable (namely, the fact that during his
participation in Petitioner's Charge I adjudication, he proffered testimony to the
effect that Petitioner had no involvement in the attack upon him (Pet. Lodg., Exh.
U passim), completely undermines the tribunal's finding against him.

Based on an independent review of the record, it was objectively unreasonable
for the state court to find that Petitioner's 'reliance on evidence lacking an
indicia of reliability' claim did not undermine the disciplinary board's guilt
finding as to equate to no evidence at all, and be in direct conflict of Hill's
proscription against guilt findings based on less than "some evidence." Id. at
447. Such being the case, section 2254(d) bars no relief and the petition should
be granted on these points also.

//
//
//
//

46.

XII.

**PETITIONER'S DUE PROCESS RIGHTS WERE VIOLATED BECAUSE THE DISCIPLINARY TRIBUNAL FAILED TO PERSONALLY MAKE A FINDING REGARDING THE CONFIDENTIAL INMATE INFORMANTS' TRUTHFULNESS/CREDIBILITY WHERE CONFIDENTIAL EVIDENCE WAS THE SOLE BASIS FOR HOLDING HIM CULPABLE (CLAIM XII).**

**A. Pertinent Facts:**

In finding Petitioner guilty, the SHO compounded an inclusive summary indexed under 'CONFIDENTIAL INFORMATION.' (Pet. Lodg., Exh. J at 5.)

In itemizing the confidential evidence relied on to support the guilt finding against Petitioner, the SHO listed three documents consisting of one CDCR form 1030 dated June 16, 2003 and two confidential memorandums dated June 6 and 16, 2003. Ibid. passim.

Regarding the requirement to make a determination of the "source's reliability," the summary indicated that the factfinder found the confidential informants were reliable because (1) the source(s) has previously provided information which has proven to be true; (2) more than one source provided the same information; (3) part of the information had proven to be true. (Pet. Lodg., Exhs G, J at 5 passim respectively.)

Regarding the requirement to make a determination of the "source's credibility," however, the SHO documented no reason for believing why the confidential sources were truthful/credible. Regulation 3321(b)(1) allows two reasons to support a SHO's truthfulness determination (i.e., (1) the citing of specific documentation which corroborates information from the source, and/or (2) the citing of specific circumstances surrounding the event, plus the documented reliability of the source satisfies the decision maker). Niether was cited in this regard. See Exh. J Ibid.

**B. Applicable Law:**

A prison disciplinary board's determination derived from a statement(s) of an unidentified inmate informant satisfies due process when it personally makes a

reliability and credibility finding regarding the confidential source where such is the sole basis for imposing disciplinary action. Zimmerlee v. Keeney (9th Cir. 1987) 831 F.2d 183.

## C. Prejudicial Constitutional Violation:

Circuit precedent is unanimous in recognizing the need for a prison's use of confidential inmate evidence. Mendoza v. Miller (7th Cir. 1985) 779 F.2d 1287, 1293; Smith v. Rabalais (5th Cir. 1981) 659 F.2d 539, 544-545; Helms v. Hewitt (3rd Cir. 1981) 655 F.2d 487, 501-502. But it is also recognized that such information from confidential inmate sources be credible. Id.

The California Supreme Court also relying on Circuit precept has idenitified the importance of determining the truthfulness of a confidential informant when a disciplinary committee bases its decision upon information provided by such source. In re Jackson (1987) 43 Cal.3d 501, 507 (citing Kyle v. Hanberry (1982) 677 F.2d 1386, 1390).

In Jackson the State Supreme Court held that federal and state due process guarantees require that the record contain evidence demonstrating that the hearing officer personally detemined the credibility (in addition to the reliability) of the confidential informant it relies on. Id. at 504. Making such determination is crucial in safeguarding a prison disciplinary-action inmate. As California's First Appellate District court cautioned in People v. Estrada (1996) 47 Cal.App. 4th 1688, "[i]t is not unreasonable to envision a scenario where rivalries and animosities among individuals or groups of inmates could motivate one faction to concoct crimes or institutional rule violations as a form of payback or intimidation." Id. at 1698.

Here, the hearing summary of the SHO is devoid of any finding as to the truthfulness of the inmate informants whose statements were relied on to support the culpability holding. Notwithstanding the reliability determination, the SHO was under a legal obligation to  also make a truthfulness finding. The

48.

reliability and credibility determinations are a dual requirement and are not synonymous, and are in fact mutually exclusive. The SHO's failure in this regard violated Petitioner's due process rights as well as those found under Regualtion 3321(b)(1), and entitles him to federal habeas corpus relief.

## D. Nature of Error:

Where an accused has been denied his right to have the adjudication board make a truthfulness determination of an inmate informant where confidential information is the sole basis for rendering a culpability finding stemming from a charged offense, reversal is required per se as structural error. Accord Brecht, supra 509 U.S. at 630.

## E. AEDPA's §2254(d) Does Not Bar Relief:

Because the state judiciary failed to provide any reasoning with regard to the instant claim, a review of the record independently by this Court will unequivocally show that the state court decision is flawed. Accord Delgado, supra 223 F.3d at 982.

Without citing its rationale for denying Petitioner's claim, the state court's decision apparently equates that the hearing officer's failure to ascertain the truthfulness of the confidential source was not improper. This conclusion is belied by the reasons cited in the foregoing discussion. The record shows that the state decision cannot be harmonized with the facts of this case. Without even determining the credibility of the confidential inmate informants' assertions leveled against Petitioner, the tribunal held him culpable. However, the disciplinary board's failure invalidates its holding. Thus based on an independent review of the record, it was objectively unreasonable for the state court to deny Petitioner's claim. Section 2254(d) is no bar to relief.

//

//

//

## CONCLUSION

Petitioner hereby respectfully request that this Honorable Court grant him the federal relief that he has prayed for, and that which he may be entitled to.

DATED: *8-7-08*


                                                    Respectfully submitted,

                                                    *[signature]*

                                                    Counsel of Record Pro Se
                                                    MARK A. HARRIS

# Exhibit Cover Sheet

# EXHIBIT   A

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS

# RULES VIOLATION REPORT

| CDC NUMBER | INMATE'S NAME | | RELEASE/BOARD DATE | INST. | HOUSING NO. | LOG NO. |
|---|---|---|---|---|---|---|
| E-46944 | HARRIS | | | CEN IV | C4-135 | FC-03-06-02 |

| VIOLATED RULE NO(S). | SPECIFIC ACTS PARTICIPATION IN A STABBING | LOCATION | DATE | TIME |
|---|---|---|---|---|
| 3005 (c) FORCE AND VIOLENCE | BATTERY ON AN INMATE WITH SERIOUS INJURY | FACILITY "C" | JUNE 16, 2003 | 1100 HOUR |

**CIRCUMSTANCES**

On Monday, June 16, 2003, the Investigative Services Unit (ISU) at Centinela State Prison concluded the investigation into the stabbing assault of Inmate Davis, P-93441, C3-150, that occurred on June 6, 2003, in Building C3. The investigation, crime scene evidence, building schematic of inmates located on the dayroom floor and information provided through confidential inmate interviews has identified you as a suspect in the stabbing assault. Cell C3-149, was occupied with large amounts of blood splatter on the walls and floors. Additionally, the personal property, televisions and other appliances were placed in the upper bunk area of the cell, making this suspicious in that this area is not a design designated area for these types of appliances. Confidential information developed through inmate interviews, specifically reflect that you were observed initially at the cell door while inmates Bishop, K-27260, C3-112, Coffrey J-71938, C3-111, Dabney K-55296, C3-146 and Davis, P-93441, C3-150, were in the cell. While you were at the cell door, you observed inmate Dabney initially arranging or placing personal property (appliance, television) on the upper bunk of his cell, removing the personal properties from their designated areas of the cell, preventing damage to the property. Dabney's actions reflect you and the other inmates in the cell knew of the planned assault. The confidential source(s) have specifically identified you as the person who initially stood in the cell door of cell C3-149 and watched inmate Bishop K-27260, C3-112 walk up behind inmate Dabney who was already in the cell. The sources relate you observed

| REPORTING EMPLOYEE (Typed Name and Signature) | DATE | ASSIGNMENT | RDO'S |
|---|---|---|---|
| N.S. RODRIGUEZ | JUNE 16, 2003 | ISU SERGEANT | SAT-SUN-WIL |

| REVIEWING SUPERVISOR'S SIGNATURE | DATE | ☐ INMATE SEGREGATED PENDING HEARING | |
|---|---|---|---|
| LT. PARKS | | DATE ____ LOC. ____ | |

| CLASSIFIED | OFFENSE DIVISION: | DATE | CLASSIFIED BY (Typed Name and Signature) | HEARING REFERRED TO |
|---|---|---|---|---|
| ☐ ADMINISTRATIVE | | | | ☐ HO ☐ SHO ☐ SC ☐ FC |
| ☐ SERIOUS | | | | |

**COPIES GIVEN INMATE BEFORE HEARING**

| ☐ CDC-115 | BY: (STAFF'S SIGNATURE) ▶ | DATE | TIME | TITLE OF SUPPLEMENT |  | |
|---|---|---|---|---|---|---|
| ☐ INCIDENT REPORT LOG NUMBER: | BY: (STAFF'S SIGNATURE) ▶ | DATE | TIME | BY: (STAFF'S SIGNATURE) ▶ | DATE | TIME |

**HEARING**

| REFERRED TO ☐ CLASSIFICATION ☐ BPT/NAEA | | | | |
|---|---|---|---|---|
| ACTION BY: (TYPED NAME) | | SIGNATURE ▶ | DATE | TIME |
| REVIEWED BY: (SIGNATURE) ▶ | DATE | CHIEF DISCIPLINARY OFFICER'S SIGNATURE ▶ | DATE | |
| ☐ COPY OF CDC 115 GIVEN INMATE AFTER HEARING | | BY: (STAFF'S SIGNATURE) ▶ | DATE | TIME |

CDC 115 (7/88)

STATE OF CALIFORNIA

**RULES VIOLATION REPORT - PART C**

DEPARTMENT OF CORRECTIONS
PAGE___OF___

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| | | | | |

| ☐ SUPPLEMENTAL | ☐ CONTINUATION OF: | ☒ 115 CIRCUMSTANCES | ☐ HEARING | ☐ IE REPORT | ☐ OTHER_____ |

Bishop stab inmate Davis in the chest. The confidential sources observed you observe Bishop attempt to strike Davis with the weapon again. The sources have relayed Davis fought or pushed his way out of the cell, while you pushed inmate Gaffney, Bishop and Gaffney back into the cell, preventing Davis from exiting the cell. This can be confirmed by the blood splatter and blood stains discovered on the cell floor by ISU, Crime Scene Investigators. Davis was later observed bloodied and staggering to the Officer's podium, where in Custody Staff activated their personal alarms. You were later discovered from building schematic developed by custody staff sitting near the computer area of the 'C' section dayroom floor. Additional information provided by the sources have relayed you orchestrated the battery between Davis C3-150 and inmate Bishop K-27263, C3-112 and Gaffney J-71923, C3-112. The information has disclosed that the battery was supposed to have happened on the yard between inmate Davis and Bishop, per your instructions. Sources have specifically stated that your influence on the yard, military discipline, pretension and prior participation in gang and staff assaults throughout the state institutions has inmates intimidated and fearful of not refusing your request to participate in violent acts or behavior. The Confidential Information meets the criteria of California Code of Regulation Section 3321, "Confidential Information," (1), (2) and (c), (1), (2) and (4). The identity of the Confidential Source(s), and the Safety and Security of the Institution, Centinela State Prison.

| SIGNATURE OF WRITER | DATE SIGNED |
|---|---|
| | |

| ☐ COPY OF CDC 115-C GIVEN TO INMATE | GIVEN BY: (Staff's Signature) | DATE SIGNED 6/3/08 | TIME SIGNED 1015 HRS |
|---|---|---|---|

CDC 115-C (5/95)

OSP 99 25082

# Exhibit Cover Sheet

# EXHIBIT   B

DAVIS TESTIMONY SUBMITTED AS DOCUMENTARY EVIDENCE

STATE OF CALIFORNIA                    ('Per Director's Rule, §3320(1), CCR')    DEPARTMENT OF CORRECTIONS

**RULES VIOLATION REPORT - PART C**                                                          PAGE 2 OF 9

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| E-46844 | HARRIS | FC-03-06-026 | CENTINELA | 8/19/03 |

| ☐ SUPPLEMENTAL | ☒ CONTINUATION OF: | ☐ 115 CIRCUMSTANCES | ☒ HEARING | ☐ IE REPORT | ☐ OTHER_____ |
|---|---|---|---|---|---|

### (WITNESS C/O BACH CONTINUED)

The following questions were asked of Witness C/O BACH by Inmate HARRIS:

Witness C/O Bach, present at hearing.

Q. After considering this information, what was the usual outcome of these kites or allegations once allowed to run their course?

A. This incident occurred on 3/W. I'm assigned to 2/W. I have no knowledge of you being targeted for assault.

Q. During my stay at Centinela within the several months proceeding my segregational placement, was I occasionally targeted with allegations of one nature or another?

A. This incident occurred on 3/W. I'm assigned to 2/W. I have no knowledge of you being targeted for assault.

Q. Through your own research would you say that the allegations were of the most part an ongoing effort to get me removed from the yard, considering nothing was ever corroborated, how so or in what way?

A. This incident occurred on 3/W. I'm assigned to 2/W. I have no knowledge of you being targeted for assault.

The following questions were asked of Witness Inmate Davis, P-93441, by Inmate HARRIS:

Witness Davis, was questioned via speaker telephone, Inmate Harris stated this was acceptable. Inmate Davis is currently at LAC.

Q. What is the nature of my relationship with you?

A. None.

Q. For the time period that we have known each other have we ever had any dispute, misunderstanding or problems with one another?

A. A couple of times.

Q. On June 6, 2003, did I ever force or threaten you to fight another inmate?

A. No.

Q. Did I become aware that you had a dispute with another inmate when I got off of work on June 6?

A. No

Q. Based on your personal knowledge of the assault, did I order, participate and orchestrate the stabbing against you?

A. No

Q. At yard recall on June the 6th, did you ever see me at the cell door of cell 149, witnessing preparations for a fight or stabbing?

A. No.

Q. The 115 issued to me states, I stood at cell 149 and observed inmate Dabney move property. Is this what you observed?

A. Yes, Harris witnessed all.

Q. The 115 also states, that I stood in the cell door and watched you get stabbed in the chest, is this correct?

A. No.

Q. Did you ever see me push other inmates into you to keep you from getting out of cell 149?

A. No.

Q. Did I have any reason or desire to see you hurt or stabbed?

A. No.

Q. Did I have anything whatsoever to do with you being stabbed?

A. No.    ( testimony continued on next page )

LT. B.E. DAUENSPECK, Senior Hearing Officer

| SIGNATURE OF WRITER | | DATE SIGNED |
|---|---|---|
| | | 9-18-03 |
| GIVEN BY: (Staffs Signature) | DATE SIGNED | TIME SIGNED |
| | 10-14-03 | 1515 |

☐ COPY OF CDC 115-C GIVEN TO INMATE

STATE OF CALIFORNIA                                                                DEPARTMENT OF CORRECTIONS
**RULES VIOLATION REPORT - PART C**                                               PAGE 6 OF 7

| CDC NUMBER | INMATE'S NAME. | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| E-46844 | HARRIS | FC-03-06-026 | CENTINELA | 8/19/03 |

☐ SUPPLEMENTAL    ☒ CONTINUATION OF:    ☐ 115 CIRCUMSTANCES    ☒ HEARING    ☐ IE REPORT    ☐ OTHER_____

(CONTINUATION OF WITNESS DAVIS)

The following questions were asked of Witness Inmate Davis, P-93441, by Inmate HARRIS:

Witness Davis, was questioned via speaker telephone, Inmate Harris stated this was acceptable. Inmate Davis is currently at LAC.

Q. Do you consider me as your enemy?
A. No.
Q. Did any Prison staff tell you that I ordered, planned and orchestrated a stabbing against you, If so who?
A. ISU told me in here.
Q. What interest do I have in you or any of your immediate associates?
A. None.
Q. Is it in your personal knowledge that if I was aware of any bodily harm about to come to you, I would do anything to prevent it?
A. No.

_____ END OF TESTIMONY BY INMATE DAVIS _____

The following questions were asked of Witness Lieutenant (A) P. Falconer, Incident Commander.

Witness Lieutenant P. Falconer, present at hearing.

Q. If the surveillance video depicts the ingress and egress into a crime scene before it's occurrence, would this be considered relevant evidence?
A. If the camera showed or recorded the incident it would be evidence. I checked with Control the tape of 6/6/03 has been recorded over. The tape would only show ingress and regress, not the crime scene.
Q. Why wasn't the video additionally secured into evidence locker which could unequivocally depict the sequence time of each inmate who specifically entered the housing unit before or after or with inmate Davis?
A. The camera wasn't positioned towards Building C 3 and no relevant evidence was recorded.
Q. When acting as an incident commander, is it protocol for you to consider whether the facility surveillance tape is to be collected as evidence, where inmates are entering into and out of a potential crime scene or where a assailant is not detained?
A. It is my decision to consider the surveillance tape if only tape of the crime scene is placed in evidence, if it was pointed in the direction of the incident and shows anything relevant.
Q. What does the procedure require for evidence of this of this nature which could exonerate or implicate a charged inmate, relative to it's removal and storage?
A. If it shows any evidence it is to be removed from recorder labeled with time, date, and log # of incident, logged into evidence and secured in an evidence locker.
Q. How was the determination arrived at that the surveillance video of the Facility 'C' yard recall was not to be collected, where it's contents could possibly exonerate or implicate any inmate during the inception of the investigation?
A. The contents of the video did not show anything relevant to the incident. I viewed the video before a decision was made.
Q. Was there a determination made whether the source who had given information in the past did so, so it would be believed when the opportunity arose in the future to make allegations directed towards me?
A. Yes.
Q. Was there a determination made whether the source had a grudge against me or possibly wanted to shift blame for his involvement in the incident, if involved?
A. Yes

LT. B.E. DAHRENSPECK, SENIOR HEARING OFFICER

| SIGNATURE OF WRITER | | DATE SIGNED |
|---|---|---|
| | | 7-18-03 |
| GIVEN BY: (Staff's Signature) | DATE SIGNED | TIME SIGNED |
| ☐ COPY OF CDC 115-C GIVEN TO INMATE | 10-14-03 | 15-15 |

CDC 115-C (5/95)                                                        OSP 99 25082